The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN BOSHEARS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 2:21-cv-01222-MJP<br><br>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND MEMORANDUM IN SUPPORT<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

I.    Plaintiff Has Failed To State A Claim Under IRPA. ........................................................1

    A.    Plaintiff Fails To Plead A *Prima Facie* IRPA Claim. ............................................1

        1.    Plaintiff Fails To Plead A Violation Occurring Within Indiana. .................1

        2.    Plaintiff Fails To Plead Use For A "Commercial Purpose." .......................3

    B.    Plaintiff's Claim Falls Within IRPA's Exemptions. ...............................................5

        1.    The "Newsworthy Value" And "Public Interest" Exemptions Bar Plaintiff's Claim. ..........................................................................................5

        2.    The "Literary Works" Exemption Bars Plaintiff's Claim. ...........................6

II.    Plaintiff Has Failed To State A Claim For Common-Law Misappropriation. ...................6

III.    Plaintiff's Complaint Is Barred By The Washington Anti-SLAPP Statute. ........................7

IV.    Plaintiff Is Bound To Arbitrate His Claims. ......................................................................8

V.    Plaintiff's Claims Are Barred By Federal Law..................................................................11

    A.    The Copyright Act Preempts Plaintiff's Claims. ...................................................11

    B.    The First Amendment Bars Plaintiff's Claims........................................................11

    C.    The Communications Decency Act Bars Plaintiff's Claims..................................12

CONCLUSION..........................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACC Indus., Inc. v. Bart St. II, LLC*,
 No. 2:17-cv-00942, 2017 WL 7725262 (D. Nev. May 16, 2017) ............................................9

*Almeida v. Amazon.com, Inc.*,
 456 F.3d 1316 (11th Cir. 2006) ...............................................................................................4

*Beeman v. Mayorkas*,
 No. C21-235, 2021 WL 3207414 (W.D. Wash. July 29, 2021) ...............................................4

*Bonilla v. Ancestry.com Operations Inc.*,
 No. 20-C-07390, 2021 WL 5795306 (N.D. Ill. Dec. 7, 2021)............................................2, 5

*Bosley v. Wildwett.com*,
 310 F. Supp. 2d 914 (N.D. Ohio 2004)..................................................................................11

*Callahan v. PeopleConnect, Inc.*,
 No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............................................12

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
 447 U.S. 557 (1980)...............................................................................................................11

*Damon v. Ocean Hills Journalism Club*,
 85 Cal. App. 4th 468 (Cal. Ct. App. 2000) ..............................................................................7

*Daniels v. FanDuel, Inc.*,
 109 N.E.3d 390 (Ind. 2018) ..............................................................................1, 3, 5, 6, 12

*Daniels v. FanDuel, Inc.*,
 No. 16-cv-01230, 2017 WL 4340329 (S.D. Ind. Sept. 29, 2017)............................................6

*Dennis v. MyLife.Com, Inc.*,
 No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021)...................................................12

*Dillinger, LLC v. Elec. Arts Inc.*,
 795 F. Supp. 2d 829 (S.D. Ind. 2011) ......................................................................................6

*DKS, Inc. v. Corp. Bus. Sols., Inc.*,
 No. 15-cv-00132, 2016 WL 4248082 (E.D. Cal. Aug. 11, 2016)...................................... 9-10

*Dobrowolski v. Intelius, Inc.*,
 No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May, 21 2018).............................................4

*Doe v. Methodist Hospital*,
   690 N.E.2d 681 (Ind. 1997) ..................................................................................6, 7

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F. 3d 1157 (9th Cir. 2008) ..................................................................................12

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ........................................................................................12

*Grenier v. Taylor*,
   234 Cal. App. 4th 471 (Cal. Ct. App. 2015) ...............................................................7

*Guideone Ins. Co. v. U.S. Water Sys. Inc.*,
   950 N.E.2d 1236 (Ind. Ct. App. 2011) .......................................................................9

*Hall v. City of L.A.*,
   697 F.3d 1059 (9th Cir. 2012) ..................................................................................10

*Heinemann v. United Cont'l Airlines*,
   No. 11-CV-00002, 2011 WL 2144603 (W.D. Wash. May 31, 2011) ........................9

*Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*,
   773 N.E.2d 881 (Ind. Ct. App. 2002) .........................................................................9

*King Cnty., Wash. v. Merrill Lynch & Co.*,
   No. 10-cv-01156, 2012 WL 2389998 (W.D. Wash. June 25, 2012) ..........................9

*Knapke v. PeopleConnect Inc.*,
   No. C21-262, --- F. Supp. 3d ---, 2021 WL 3510350 (W.D. Wash. Aug. 10,
   2021) ....................................................................................................................1, 11

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ....................................................................................4

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) ..........................................................................5

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (Cal. Ct. App. 1995) .................................................................5

*Namath v. Sports Illustrated*,
   363 N.Y.S.2d 276 (N.Y. Sup. Ct. 1975) .....................................................................5

*Nieman v. Versuslaw, Inc.*,
   No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ........................................4

*Obado v. Magedson*,
   No. 13-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) ..........................................4

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – iii
2:21-cv-01222-MJP

GORDON | 600 University Street
TILDEN | Suite 2915
THOMAS | Seattle, WA 98101
CORDELL | 206.467.6477

*Quality Foods, Inc. v. Holloway Assocs. Pro. Eng'rs & Land Surveyors, Inc.*,
   852 N.E.2d 27 (Ind. Ct. App. 2006)..................................................................................9

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...............................................................................2

*Ruiz v. Harbor View Cmty. Ass'n*,
   134 Cal. App. 4th 1456 (Cal. Ct. App. 2005) ....................................................................7

*Sessa v. Ancestry.com Operations Inc.*,
   No. 20-cv-02292, ---F. Supp. 3d ---, 2021 WL 4245359 (D. Nev. Sept. 16,
   2021) ..................................................................................................................................2

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) .............................................................................................9

*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ...........................................................................................8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .............................................................................................3

*Vance v. Int'l Bus. Machs. Corp.*,
   No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020).............................................3

**Statutes**

Ind. Code § 32-36-1-1(a) .........................................................................................................2

Ind. Code § 32-36-1-8(a) .........................................................................................................2

**Other Authorities**

*Endorse*, Merriam Webster Dictionary (2021), https://www.merriam-
   webster.com/dictionary/endorse ........................................................................................3

Fed. R. Civ. P. 12(f).................................................................................................................9

*Restatement (Second) of Contracts* § 9, Westlaw (1981 database updated Oct.
   2021) ..................................................................................................................................8

*Restatement (Third) of Unfair Competition* § 47 Comment A, Westlaw (1995
   database updated Oct. 2021) .............................................................................................5

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – iv
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

# INTRODUCTION

In its Motion to Dismiss, PeopleConnect showed that Plaintiff's Indiana Right of Publicity Act ("IRPA") suit is foreclosed by controlling precedent, *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 397 (Ind. 2018) ("*Daniels II*"). In response, Plaintiff concedes that his claims based on the sale of reprinted yearbooks must be dismissed because they are barred by Indiana and federal law. Plaintiff tries to save his claim with respect to Classmates.com subscriptions, however, by arguing that the Court decided that issue in *Knapke v. PeopleConnect Inc.*, No. C21-262, --- F. Supp. 3d ---, 2021 WL 3510350 (W.D. Wash. Aug. 10, 2021). But *Knapke* involves Ohio's right of publicity statute, not Indiana's. Moreover, *Knapke* was based solely on conclusory allegations in that complaint that cannot be credited here because PeopleConnect has shown they are refuted by the screenshots in Plaintiff's Complaint and Dkt. 26, Exhibit 1, which was not before the Court in *Knapke*. Plaintiff's Complaint also fails in other respects: his suit is barred by the Washington anti-SLAPP statute, he is bound to arbitrate his claims, and his suit is barred by the Copyright Act, the First Amendment, and the Communications Decency Act. The Court should grant the Motion.

# ARGUMENT

I. **Plaintiff Has Failed To State A Claim Under IRPA.**

    A. **Plaintiff Fails To Plead A *Prima Facie* IRPA Claim.**

        1. **Plaintiff Fails To Plead A Violation Occurring Within Indiana.**

Plaintiff admits that IRPA only "applies to 'an act or event that *occurs within Indiana*,'" and that his Indiana residency is insufficient. *See* Opp. 3 (emphasis added). None of his four alternative arguments suffice to show that he satisfies this requirement.

*First*, Plaintiff argues that PeopleConnect "misappropriat[ed] [] Plaintiff's … photographs from Indiana school yearbooks." Opp. 3–4. Plaintiff does not support this contention factually or legally. Factually, the Complaint refutes Plaintiff's bald assertions that the collection of his photos occurred in Indiana, as it admits that "Plaintiff does not know how Classmates obtained his photographs." FAC ¶12. Legally, his contention that where his photos were collected satisfies IRPA fails as a matter of law. As Plaintiff admits, for purposes of IRPA's "within Indiana" element, only acts that "give rise to [an] IRPA claim" qualify. Opp. 3. IRPA governs "the use" of

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 1
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

someone's likeness; it does not regulate the collection of information. Ind. Code § 32-36-1-8(a). That makes *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017), inapposite. *Rivera* involved a claim under the Illinois Biometric Information Privacy Act ("BIPA"), which forbids collecting information, whereas IRPA prohibits *publication* of certain information. So while the place where information was collected may be relevant under BIPA, it cannot satisfy IRPA's "within Indiana" requirement. Moreover, BIPA does not have any *statutory* territorial element like IRPA.

The Illinois "extraterritoriality" cases Plaintiff cites, including *Rivera*, also are irrelevant. Opp. 3, 5–6. Unlike those cases, which all involve another state's general presumption that statutes should not apply outside of the state's borders, Plaintiff's claim fails because he does not plead a statutory element of IRPA—that the prohibited act must take place in Indiana. Plaintiff's reliance on personal jurisdiction decisions is equally misplaced. *See Sessa v. Ancestry.com Operations Inc.*, No. 20-cv-02292, ---F. Supp. 3d ---, 2021 WL 4245359, at *7 (D. Nev. Sept. 16, 2021) and *Bonilla v. Ancestry.com Operations Inc.*, No. 20-C-07390, 2021 WL 5795306, at *3 (N.D. Ill. Dec. 7, 2021). The analysis of whether a court may have personal jurisdiction over a defendant due to certain minimum contacts with the state is not remotely the same inquiry as whether the plaintiff has pled that the specific "act" prohibited by IRPA occurred "within Indiana"—an express requirement of Plaintiff's cause of action. Ind. Code § 32-36-1-1(a).

**Second**, Plaintiff asserts that "PeopleConnect publicly displays Plaintiff's name and photograph in advertisements expressly directed to Indiana residents[.]" Opp. 5. This claim is refuted by the Complaint, which admits that the yearbook excerpts appear only in "search results" that a user "receive[s] in response" to a *user's* "*search* for Mr. Boshears." FAC ¶¶30, 35 (emphasis added). And the only alleged instance of any user searching for or viewing Plaintiff is "Plaintiff's counsel" who is not located in Indiana. FAC at 7 n.1; *see also* Dkt. 18 at 2. So while Plaintiff acknowledges that IRPA "liability hinges on PeopleConnect's *use and public display* of Plaintiff's photographs," Opp. 5, the Complaint does not allege a single use and public display of Plaintiff's photographs "occur[ring] within Indiana." Ind. Code § 32-36-1-1(a).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 2
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

*Third*, Plaintiff asserts that PeopleConnect "fail[ed] 'to obtain the required consent from Plaintiff . . . in Indiana.'" Opp. 5 (quoting FAC ¶54). But as the Motion explains, the non-occurrence of an event—*failure* to obtain consent—cannot be deemed to occur in any state. Moreover, the case Plaintiff relies upon, *Vance v. Int'l Bus. Machs. Corp.*, No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020), another irrelevant Illinois BIPA decision, does not address this consent argument at all.

*Fourth*, Plaintiff asserts that his injury was "felt in Indiana." Opp. 6. This too is irrelevant for the reasons discussed above, as it does not address where the violation occurred.

### 2. Plaintiff Fails To Plead Use For A "Commercial Purpose."

As demonstrated in the Motion, Plaintiff fails to plead that his identity was used for a commercial purpose. Plaintiff's arguments to the contrary fail.

*First*, although Plaintiff claims "nothing" in *Daniels II* "suggests IRPA claims are available exclusively in cases of false endorsement," Opp. 6, he is wrong. The Indiana Supreme Court held that the plaintiffs were not "endorsing any particular product such that there has been a violation of the right of publicity." 109 N.E.3d at 397. Cases addressing whether false endorsement is an element of other states' right of publicity laws thus are inapposite. *See* Opp. 6–8.

*Second*, none of the Complaint's screenshots can be construed as Plaintiff endorsing a Classmates.com membership. Mot. 5. All Plaintiff points to is a sentence in a single screenshot: "Tag them to let them know you found them!" which appears next to Plaintiff's yearbook photo. Opp. 7; FAC ¶28. No reasonable Classmates.com user, however, would believe that a person whom someone else searched for and tagged in a yearbook is "approv[ing]" or "recommend[ing]" the purchase of a Classmates.com membership. *See Endorse*, Merriam Webster Dictionary (2021), https://www.merriam-webster.com/dictionary/endorse.

*Third*, Plaintiff's IRPA claim rests on the disproven premise that his yearbook excerpts are used "to advertise and promote website subscriptions." Opp. 1. Plaintiff does not identify a single yearbook excerpt with his name or his image that contains any promotional language for a subscription or that offers a subscription for sale. Nor could he. Dkt. 26, Exhibit 1 definitively refutes that the excerpts are ever used to promote a Classmates.com subscription. Dkt. 26. Hoping

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 3
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

to avoid the conclusive evidence Exhibit 1 provides, Plaintiff cites *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003), to argue that PeopleConnect cannot introduce evidence "without giving Plaintiff the opportunity to respond." Opp. 11. But Plaintiff *did* have the chance to respond in his opposition—he chose not to. Moreover, Plaintiff does not distinguish *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005), *see* Mot. 2 n.2, where the Ninth Circuit held that, when ruling on a motion to dismiss, the court can consider additional web pages that were central to the claims alleged. *See also Beeman v. Mayorkas*, No. C21-235, 2021 WL 3207414, *3–4 (W.D. Wash. July 29, 2021) (in ruling on motion to dismiss, court considered documents that had been "incorporated by reference into the Amended Complaint" even though they were not attached thereto).

Plaintiff then argues that because "search results containing Plaintiff's name and likeness" are "linked to webpages and pop-ups soliciting subscriptions," they are actionable. Opp. 7. This is incorrect as a matter of fact and law. Although the Complaint makes it seem as though Plaintiff's enlarged yearbook photo (FAC ¶28) appears right before the subscription offer page (*id.* ¶33), this is misleading and incorrect: the enlarged yearbook photos do not lead to the subscription offer; the offer is accessible only *after* a person has become a registered user agreeing to the Terms of Service ("TOS"), like Plaintiff's counsel. *See* Dkt. 26 ¶6, Ex. 1 at 24; FAC 7. n.1. In any event, displaying an excerpt of a publication on one webpage that links to another webpage that allows users to purchase access to the complete publication does not violate the right of publicity. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding that Amazon's display of book cover with plaintiff's photo not "commercial purpose" under Florida right of publicity law); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4, *7 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635, 637–38 (7th Cir. 2013); *Obado v. Magedson*, No. 13-2382, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90, 93–94 (3d Cir. 2015); *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018).[1] To hold otherwise not only would conflict with this settled law, but also would render unlawful countless

---

[1] Plaintiff's attempt to distinguish *Obado* fails. Opp. 8 n.4. While *Obado* dismissed the plaintiff's claim on CDA immunity grounds, the court also expressly held that a right of publicity claim is not viable where plaintiff's theory of misappropriation is solely based on appearing "as part of the search results displayed in response to a user-generated query." *Obado*, 2014 WL 3778261, at *7.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 4
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

media websites, such as YouTube or Encyclopedia Britannica, which allow users to search and view content containing people's identities for free while simultaneously advertising premium subscription services.

Accordingly, the cases Plaintiff cites, *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760–61 (N.D. Ill. 2020), and *Bonilla v. Ancestry.com Operations Inc.*, No. 20-C-07390, 2021 WL 5795306, at *6–7 (N.D. Ill. Dec. 7, 2021), are inapplicable. Neither involves Classmates.com. Moreover, they were based on conclusory allegations that the plaintiffs' information was used as advertisements for subscriptions—a conclusion that cannot be drawn here because it is refuted by Exhibit 1. Dkt. 26, Ex. 1. Also, these cases conflict with long-standing precedent rejecting right-of-publicity claims against publishers for using a person's identity to sell a subscription to a publication that *includes* information about that person as well as other people. *See, e.g.*, *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796–97 (Cal. Ct. App. 1995); *Namath v. Sports Illustrated*, 363 N.Y.S.2d 276, 278–80 (N.Y. Sup. Ct. 1975) (collecting cases), *aff'd*, 352 N.E.2d 584 (N.Y. App. Div. 1976); *Restatement (Third) of Unfair Competition* § 47 cmt. A, Westlaw (1995 database updated Oct. 2021).

**B.     Plaintiff's Claim Falls Within IRPA's Exemptions.**

**1.     The "Newsworthy Value" And "Public Interest" Exemptions Bar Plaintiff's Claim.**

As explained in the Motion, the "broad[]" interpretation of IRPA's "newsworthy value" exemption in *Daniels II* also compels dismissal. Mot. 6–8. To try to avoid this, Plaintiff claims that *Daniels II* holds that information only fits within this exemption if it "'occup[ies] a large portion of public discourse.'" Opp. 9 (quoting *Daniels II*, 109 N.E.3d at 397). That is not the holding. What the Indiana Supreme Court held is that fantasy sports websites' use of student athletes' "names, pictures, and statistics" in advertising falls under the "far reaching" newsworthiness exemption *because* this content is "*factual data*" and the newsworthiness exemption covers "*all* types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." 109 N.E.3d at 394–96 (emphasis added and citations omitted). Furthermore, and contrary to *Knapke*'s interpretation of

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 5
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Ohio law, *Daniels II* held that IRPA's newsworthiness exemption "is by no means limited to dissemination of news," or "media companies or news broadcasters." *Id.* at 394, 396 (citation omitted). Yet even if this exemption only covered topics that "occupy a large portion of public discourse," PeopleConnect's online library of over 400,000 school yearbooks clearly passes the "public fascination" test Plaintiff invents. FAC ¶¶4, 29, 44(a); *see* Opp. 9. Yearbooks occupy a prominent role in public discourse, *see* Mot. 8—a point Plaintiff does not even attempt to rebut.

For these same reasons, PeopleConnect's searchable collection of yearbooks also falls within IRPA's "public interest" exemption, which "overlap[s] with the 'newsworthiness exemption'" and must "be construed broadly." *Daniels v. FanDuel, Inc.*, No. 16-cv-01230, 2017 WL 4340329, at *7–9 (S.D. Ind. Sept. 29, 2017), *aff'd* 909 F.3d 876 (7th Cir. 2018) ("*Daniels I*"). Plaintiff's non-IRPA cases (Opp. 8–9), cannot contradict Indiana's application of its exemption.

### 2. The "Literary Works" Exemption Bars Plaintiff's Claim.

Plaintiff concedes his claim "based on the sale of reprinted yearbooks" is barred by this exemption. Opp. 9. While he argues that this exemption does not apply to his subscription claim, *id.*, he cites no Indiana authority, relying instead on *Knapke*. Regardless of how *Knapke* applied Ohio's exemption, IRPA's "literary works" exemption must be interpreted "broadly." *Dillinger, LLC v. Elec. Arts Inc.*, 795 F. Supp. 2d 829, 836 (S.D. Ind. 2011); *see also Daniels II*, 109 N.E.3d at 396 (citing *Dillinger* approvingly). Under a broad construction of IRPA's "literary works" exemption, there is no principled reason to distinguish between an advertisement for a yearbook and an advertisement for a subscription *to access* yearbooks. *See* FAC ¶¶4, 19; Dkt. No. 26, Ex. 1 at 1, 5. Moreover, the Court in *Knapke* relied on conclusory allegations that the plaintiff's information was used to advertise a subscription—but, as explained above, similar allegations cannot be credited here. Indeed, as the Complaint admits, there is no mention of any subscription in the "search results containing Mr. Boshears's [name and] photographs." FAC ¶35.

### II.   Plaintiff Has Failed To State A Claim For Common-Law Misappropriation.

Despite the Indiana Supreme Court's rejection of a common law misappropriation tort in *Daniels II*, Plaintiff argues that Indiana has "long recognized" one. Opp. 10. Yet the only Indiana Supreme Court case Plaintiff cites, *Doe v. Methodist Hospital*, 690 N.E.2d 681, 684 (Ind. 1997),

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 6
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

does *not* recognize this tort and pre-dates *Daniels II* by some 20 years. Further, in *Doe,* the "only branch of the privacy tort at issue" was the "disclosure of private facts," which is a different tort from "appropriation of likeness." *Id.* at 684–85. And the Indiana Supreme Court was clear that "recognizing one branch of the privacy tort does not entail recognizing all four." *Id*. So *Doe* does not overcome (or even contradict) *Daniels II*. There is no basis for this Court to recognize a misappropriation tort that the Indiana Supreme Court thus far has declined to embrace.

**III.     Plaintiff's Complaint Is Barred By The Washington Anti-SLAPP Statute.**

In response to PeopleConnect's showing that Washington's recently enacted Uniform Public Expression Protection Act ("UPEPA") also bars Plaintiff's claim, Plaintiff cites *Knapke* to argue that PeopleConnect's speech is unprotected commercial speech. Opp. 10. The Court in *Knapke*, however, did not address any anti-SLAPP issues. Indeed, UPEPA was not even enacted until after the briefing in *Knapke* was complete. In any event, the Court's determination in *Knapke* that the speech there was commercial is not dispositive here because the Court did not have the benefit of Exhibit 1, which conclusively shows that Plaintiff's name and photos were not used to "propose" a commercial transaction. Mot. 11; Dkt. 26, Ex. 1. Plaintiff's name and photos are not mentioned in any advertisements or pay screens on Classmates.com.

Other than his improper reliance on *Knapke*, Plaintiff has little to say. He just asserts that the speech at issue is not of public concern because yearbooks do not concern a "substantial number of people." Opp. 12. But school alumni communities well exceed the size of communities that courts have found sufficient under this requirement. *See, e.g.*, *Ruiz v. Harbor View Cmty. Ass'n*, 134 Cal. App. 4th 1456, 1468–69 (Cal. Ct. App. 2005) (residents of 523 lots); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 482–83 (Cal. Ct. App. 2015) (550 to 1,000 church members); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (Cal. Ct. App. 2000) (3,000 homeowners' association members). So while Plaintiff maintains that PeopleConnect is seeking to "convert private information" into a matter of public interest by "communicating it to a large number of people," Opp. 12, there is nothing "private" about yearbooks—they are published to be enjoyed by and shared with the entire community, to say nothing of the fact that they are widely accessible at public libraries and used by historians, alumni committees, and others.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 7
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Plaintiff's suggestion that sanctions are appropriate is without merit. Plaintiff purports to ground his request on the decisions of other courts that have denied anti-SLAPP motions in other lawsuits. Opp. 13–14. The problem is that no other court has had the benefit of the full context of the website, as presented in Exhibit 1, nor has any court analyzed UPEPA yet, let alone in any analogous setting. Making an argument of first impression is not sanctionable conduct. Dkt. 26, Ex. 1.

## IV. Plaintiff Is Bound To Arbitrate His Claims.

As for PeopleConnect's motion to compel arbitration, Plaintiff makes two main arguments: (1) Mr. Osborn absolved himself from his agreement to arbitrate with PeopleConnect by creating and using a new Classmates.com account to obtain the screenshots incorporated into Plaintiff's Complaint; and (2) the instant facts make Plaintiff's ratification of Mr. Osborn's agreement to arbitrate impossible. Opp. 14–19. Plaintiff is wrong on both accounts.

***First***, contracts bind **parties**; they do not bind email addresses or user accounts as they have no legal rights, obligations, or status independent of the individuals who are responsible for them. *See Restatement (Second) of Contracts* § 9, Westlaw (1981 database updated Oct. 2021). Plaintiff cites nothing to the contrary. There is one operative contract between Mr. Osborn and PeopleConnect. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1088 (9th Cir. 2020) (holding plaintiff bound to arbitrate under initial contract despite termination of account). It was executed in 2019 when he first signed up and agreed to the TOS. While Mr. Osborn may regret not opting out of this agreement to arbitrate within the contractually agreed-upon timeframe, he cannot unilaterally change the terms by creating new, improper accounts.[2]

***Second***, Plaintiff argues he could not have ratified Mr. Osborn's agreement to arbitrate because he and Mr. Osborn did not enter into an agency relationship until *after* Mr. Osborn agreed to the Classmates.com TOS. Ratification, however, by definition occurs after the fact, and Plaintiff ratified his counsel's agreement to arbitrate upon accepting the benefits of that agreement. *See*

---

[2] Mr. Osborn's subsequent accounts violate the TOS Community Standards that prohibit users from: (1) creating accounts using false names; and (2) registering more than one personal membership. Dkt. 26 ¶14. Mr. Osborn created at least five subsequent accounts in violation of the TOS, which were registered under usernames, including "John Doe," "John Smith," and "Ben Whipple." *Id*. ¶¶19, 23–27.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 8
2:21-cv-01222-MJP

*Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 889–90 (Ind. Ct. App. 2002). Whether Mr. Osborn was Plaintiff's agent when he agreed to the TOS is irrelevant; he certainly was Plaintiff's agent when Plaintiff knowingly accepted the benefits of that agreement. *Guideone Ins. Co. v. U.S. Water Sys. Inc.*, 950 N.E.2d 1236, 1242 (Ind. Ct. App. 2011); *Quality Foods, Inc. v. Holloway Assocs. Pro. Eng'rs & Land Surveyors, Inc.*, 852 N.E.2d 27, 33–34 (Ind. Ct. App. 2006) (finding ratification where party accepted benefits). It is undeniable that the day before he filed this suit, Mr. Osborn obtained information used in the Complaint *on Plaintiff's behalf* and that Plaintiff *accepted the benefits* of that agreement. Decl. ¶27. Plaintiff notably cites no authority—not from any court, anywhere, let alone one applying Indiana law—holding that there can be no ratification unless an agency relationship pre-exists the contract.

Plaintiff's suggestion that he had no knowledge of Mr. Osborn's agreement to arbitrate is belied by the Complaint. FAC at 7 n.1. Either Plaintiff was willfully ignorant of the information included in his Complaint or Plaintiff is mischaracterizing his knowledge. Both scenarios bind Plaintiff to arbitrate. Mot. at 16–17. But to the extent there are open factual questions regarding Plaintiff's ratification, the Court should order limited discovery. Mot. 17.

Plaintiff seeks to avoid the issue by arguing that the motion to compel arbitration should be stricken under Fed. R. Civ. P. 12(f). Rule 12(f), however, is inapplicable because it applies to *pleadings*, not motions. *ACC Indus., Inc. v. Bart St. II, LLC*, No. 2:17-cv-00942, 2017 WL 7725262, at *1 (D. Nev. May 16, 2017); *see Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Moreover, the Court has recognized, "[m]otions [to strike] are generally disfavored," *Heinemann v. United Cont'l Airlines*, No. 11-CV-00002, 2011 WL 2144603, at *2 (W.D. Wash. May 31, 2011), and "[u]nsurprisingly, courts tend to view Rule 12(f) motions as dilatory or harassing." *King Cnty., Wash. v. Merrill Lynch & Co.*, No. 10-cv-01156, 2012 WL 2389998, at *1 (W.D. Wash. June 25, 2012). That is why the only case Plaintiff cites is a factually distinguishable out of district case that does not address Rule 12(f), where the court struck the defendant's *second* motion to compel arbitration that was a "copy-and-paste" of the first motion to compel arbitration that had been denied and currently was on appeal. *DKS, Inc. v. Corp. Bus.*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 9
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL | 600 University Street Suite 2915 Seattle, WA 98101 206.467.6477

*Sols., Inc.*, No. 15-cv-00132, 2016 WL 4248082, at *1 (E.D. Cal. Aug. 11, 2016). Plaintiff cites no case where a court has stricken a motion to compel in a situation analogous to this case.

In all events, Plaintiff's arguments for striking the motion are specious. Contrary to Plaintiff's claims (Opp. 14–15), PeopleConnect's position regarding Mr. Osborn's agreement to arbitrate is the same now as it has always been including in the Ninth Circuit: Mr. Osborn—the individual—assented in 2019 to the TOS, which includes an agreement to arbitrate. He could have opted out of that agreement at that time. He failed to do so. If he had opted out at that time, he would not have bound his clients to arbitrate there or in subsequent disputes. He cannot, however, undo his failure to opt-out by creating subsequent accounts (including under false names) in violation of the TOS. As for Plaintiff's contention that PeopleConnect ignored controlling authority (Opp. 16–19), Plaintiff cites to none. In *Knapke*, this Court has held that when interpreting questions of agency, the law of the state where the plaintiff resides controls. That means that while Ohio law applied in that case, Indiana law applies here. Plaintiff's reliance on the law of the case doctrine (Opp. 16) thus is inapplicable because two cases involving two different states' laws are not "identical." *See Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012) (applying law of case requires "identical case[s]."). Indeed, in his opposition to the Motion to Stay, Plaintiff argues that his counsel's conduct in Callahan is inapposite because that is an "entirely separate case involving a different plaintiff, different arbitration facts and different state law claims." Stay Opp. 8.

Finally, even if the Court were inclined to deny PeopleConnect's motion to compel, there is no basis to preemptively find PeopleConnect's potential appeal of that decision to be frivolous. Plaintiff has not satisfied the high bar for doing so that is set forth in the cases he cites, as he does not dispute that the ratification issue presented here is one of first impression under Indiana law. So even if Callahan prevails under California law or Knapke prevails under Ohio law, that does not mean Plaintiff here is assured of victory. Also, significantly, Plaintiff's counsel has not argued in the *Callahan* appeal that PeopleConnect's appeal is frivolous nor has the Plaintiff in the *Knapke* appeal. Moreover, neither of these are binding final decisions that preclude PeopleConnect from

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 10
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

preserving its arbitration rights under each state's law, including in this case, which under the FAA requires that it raise those rights in its first filing to the Court.

## V. Plaintiff's Claims Are Barred By Federal Law.

### A. The Copyright Act Preempts Plaintiff's Claims.

Plaintiff essentially concedes his claim for the sale of reprinted yearbooks is preempted by the Copyright Act. *See* Opp. 21 & n.8. As for his claim regarding the sale of subscription services, Plaintiff again argues that the Court's decision in *Knapke* is controlling. Opp. 21. For the reasons set forth above, *Knapke* is not controlling because the Court did not make that ruling based on a review of the full website as set forth in Exhibit 1.

### B. The First Amendment Bars Plaintiff's Claims.

With respect to the First Amendment, virtually all Plaintiff argues is that PeopleConnect's First Amendment argument should be rejected here because the Court rejected it in *Knapke*. Opp. 22–23. But as discussed above, Exhibit 1 resolves that this is not a case about commercial speech and, even if the searchable yearbook records are viewed as commercial speech, the First Amendment still applies. Plaintiff never denies that an advertisement promoting First Amendment-protected speech must receive the same degree of protection as the underlying speech—here, yearbooks, which Plaintiff concedes are not actionable. Mot. 18–19; Opp. 9, 23 n.9.

Moreover, Plaintiff is wrong to suggest that the outcome of intermediate scrutiny here would be the same as it was in *Knapke*, Opp. 22–23, because *Knapke* relied on and "adopt[ed] th[e] reasoning" of a Northern District of Ohio decision that was limited to "the context of the Ohio Right of Publicity Law." 2021 WL 3510350, at *8 (adopting *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 929 (N.D. Ohio 2004)). Thus, *Knapke* does not address, and certainly does not dictate, the outcome of an "intermediate level of scrutiny" under *Central Hudson* as to IRPA. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564–66 (1980). And as the Motion demonstrates, Plaintiff's proposed application of IRPA does not satisfy the three-part *Central Hudson* test. *First*, Plaintiff has not alleged any facts to plausibly suggest that PeopleConnect's speech is "misleading [or] related to unlawful activity." *Central Hudson*, 447 U.S. at 564; Mot. 5. *Second*, Indiana has no "substantial interest," 447 U.S. at 563–66, in

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 11
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

barring members of the public from searching and viewing "information" and "records" from already-published yearbooks in which individuals agreed to be listed and depicted. FAC ¶¶42, 44(a). *Third*, there is no reasonable fit between IRPA's "central" focus—prohibiting "unauthorized endorsements"—and suppressing PeopleConnect's free "yearbook searching" function, which allows a "worldwide audience" "to find friends, family, coworkers or [] celebrities." *Daniels II*, 109 N.E.3d at 397; FAC ¶¶3, 29; Mot. 5–6.

      **C.**      **The Communications Decency Act Bars Plaintiff's Claims.**

Although Plaintiff argues that PeopleConnect is a "content creator," his allegations confirm that the yearbook excerpts were "originally printed in school yearbooks." FAC ¶12. Thus, Plaintiff "admittedly seek[s] to hold Defendant liable for information created by third parties." Mot. 19–20; *Dennis v. MyLife.Com, Inc.,* No. 20-cv-954, 2021 WL 6049830, at *6–7 (D.N.J. Dec. 20, 2021) (website had Section 230 immunity because it "gathers the information from other sources" to prepare background reports) (citation omitted).

Plaintiff's argument that this is of no moment is doomed under the Ninth Circuit's recent decision in *Gonzalez v. Google LLC*, 2 F.4th 871, 881, 894–95 (9th Cir. 2021) (immunizing results that were displayed based on user inputs). Mot. 19–20. And although Plaintiff points to *Callahan v. PeopleConnect, Inc.,* No. 20-cv-09203, 2021 WL 5050079, at *6–8 (N.D. Cal. Nov. 1, 2021), to argue that PeopleConnect must show that the original authors of the yearbooks intended for the yearbooks to be published online, Opp. 24, this reading has no basis in either the text or precedent regarding Section 230. As the Ninth Circuit explained in *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* Section 230 applies so long as the publisher "believe[d]" the material was "tendered to him for posting online." 521 F.3d 1157, 1171 (9th Cir. 2008). Requiring a party to *also* show that the publisher believed it was the intent of the *original* author would completely erode Section 230—websites would have to confirm with each individual user that he was the original author of all content before the user could post anything. That is not the law.

## CONCLUSION

For the foregoing reasons and those set out in the Motion, Plaintiff should be compelled to adjudicate his claim in arbitration or, in the alternative, the Complaint should be dismissed.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS – 12
2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

DATED this 21st day of January, 2022.

**GORDON TILDEN THOMAS & CORDELL LLP**

 */s/ Michael Rosenberger*
Michael Rosenberger, WSBA #17730
Mark Wilner, WSBA #31550
Samantha K. Pitsch, WSBA #54190
600 University Street, 2915
Seattle, Washington 98101
Telephone:  206-467-6477
mrosenberger@gordontilden.com
mwilner@gordontilden.com
spitsch@gordontilden.com

Brent Caslin, Washington State Bar No. 36145
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, California 90071-2246
Telephone:  213-239-5100
bcaslin@jenner.com

Debbie L. Berman (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, Illinois 60654
Telephone:  312-222-9350
dberman@jenner.com
wthomson@jenner.com

Attorneys for Defendant PeopleConnect, Inc.