UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN BOSHEARS, individually and
on behalf of all others similarly
situated,

                    Plaintiff,

          v.

PEOPLECONNECT, INC.,

                    Defendant.

CASE NO. C21-1222 MJP

ORDER ON DEFENDANT'S
MOTION TO DISMISS AND
MOTION TO STAY

       This matter comes before the Court on Defendant PeopleConnect, Inc.'s Motion to

Dismiss (Dkt. No. 25) and Motion to Stay (Dkt. No. 28). Having reviewed the Motions, Plaintiff

John Boshears' Oppositions (Dkt. Nos. 30, 33), the Replies (Dkt. Nos. 35, 36), the Notices of

Supplemental Authority (Dkt. Nos. 37, 41, 44), and all supporting materials, and having held oral

argument on March 18, 2022, the Court DENIES in part and GRANTS in part the Motion to

Dismiss and DENIES the Motion to Stay.

**BACKGROUND**

Defendant PeopleConnect, Inc. ("Classmates") is a Washington corporation that operates a website marketing access to and reprints of over 400,000 yearbooks spanning more sixty years. (First Amended Complaint ¶¶ 19, 23, 35 (Dkt. No. 17).) Classmates invites website visitors to buy a subscription service that offers the ability to "See the people who remembered you," "See all the visits to your Classmates® Guestbook," "Read and reply to messages in your Classmates Inbox," "Save 20% on all Yearbook Reprints," and "Find old friends on Classmates® Locations." (Id. ¶ 33.) Visitors encounter Classmates' offer to subscribe in two relevant ways. First, after a visitor searches for an individual and clicks on a photo of that person, they are directed through a "pop-up window" to sign up for a free account. (Id. ¶ 32.) Once a visitor obtains an account, they are then directed to a separate screen offering access to the subscription services for a fee ranging from $3/month to $1.50/month depending on the subscription term. (Id.) Second, visitors who have registered for a free account are presented with a "banner ad" adjacent to photographs of an individual for whom the user searched that tells the user "It's time to upgrade!" (Id. ¶ 35.) The "upgrade" offer is to buy a subscription, which includes the following "benefits": "See who visited your profile," "Send private messages," and "Discount yearbook reprints." (Id.)

Plaintiff Josh Boshears is a citizen of Indiana, where he resides and attended high school from 1995-1998. (FAC ¶¶ 22, 37.) Boshears has never used Classmates' website but learned that it uses pictures of him from his high school yearbooks to advertise subscription services and reprints of yearbooks. (Id. ¶ 24.) He has not consented to the use of his persona. (Id. ¶¶ 22, 24-26.) He also claims that he does not know how Classmates came into possession of the yearbooks with his likeness. (Id. ¶ 37.) He alleges that Classmates has stolen his intellectual

1   property and invaded his privacy. (Id. ¶ 40.) He claims that Classmates' use of his persona

2   "caused [him] mental injury and disturbed his peace of mind." (Id. ¶ 41.) He claims he "is deeply

3   uncomfortable in the knowledge that Classmates is distributing his name and photographs as a

4   minor child publicly on the Internet for a commercial purpose to a worldwide audience." (Id.)

5        Boshears brings two claims against Classmates arising out of its use of his persona to

6   advertise its subscription services: (1) a violation of the Indiana Right of Publicity Act, Ind.

7   Code. § 32-36-1-8 ("IRPA"); and (2) the common law tort of misappropriation of his name and

8   likeness. (FAC ¶¶ 50-61.) Boshears seeks to represent a class of similarly-situated Indianans.

9   And while Boshears' Amended Complaint attacks Classmates' use of his image to sell

10  yearbooks, he indicates his intention not to pursue those allegations. (See Pl. Opp. at 21 n.8 (Dkt.

11  No. 30).) The Court construes Boshears' statement as a knowing waiver and relinquishment of

12  any claims premised Classmates' use of his likeness to sell yearbooks.

13       Classmates asks the Court to dismiss the claims against it on several grounds: (1) failure

14  to satisfy the elements of the IRPA or avoid its exclusions; (2) Indiana does not recognize claims

15  of misappropriation of a person's likeness and image; (3) Boshears has violated Washington's

16  anti-SLAPP law; (4) Boshears must arbitrate his claims; (5) Boshears' claims are preempted by

17  the Copyright Act; (6) Boshears' IRPA claim violates the First Amendment; and (7) Classmates

18  is immune from suit under the Communications Decency Act. Classmates also asks the Court to

19  stay discovery pending the resolution of the motion to dismiss.

20                                    **ANALYSIS**

21  **A.    Motion to Dismiss Standard**

22       The Court may dismiss a complaint for "failure to state a claim upon which relief can be

23  granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by

24

1  lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

2  theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule

3  12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint

4  in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

5  135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,

6  accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

7  U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

8  **B.    IRPA Claim**

9      Classmates seeks dismissal of Boshears' IRPA claim for three reasons: (1) he has not

10  satisfied the claim elements; (2) the IRPA's newsworthy exception bars the claim; and (3) the

11  IRPA's literary works exception bars the claim. The Court reviews these arguments after briefly

12  reviewing the elements of the IRPA claim.

13      **1.    The IRPA's Elements**

14      The IRPA forbids the non-consensual "use [of] an aspect of a personality's right of

15  publicity for a commercial purpose during the personality's lifetime or for one hundred (100)

16  years after the date of the personality's death. . . ." Ind. Code Ann. § 32-36-1-8(a) (West). To

17  state a claim, the plaintiff must therefore allege a non-consensual, commercial use of their

18  personality. The plaintiff must also allege "an act or event that occurs within Indiana, regardless

19  of a personality's domicile, residence, or citizenship." Ind. Code Ann. § 32-36-1-1 (West).

20      By statute, the "right of publicity" broadly includes "a personality's property interest in

21  the personality's: (1) name; (2) voice; (3) signature; (4) photograph; (5) image; (6) likeness; (7)

22  distinctive appearance; (8) gestures; or (9) mannerisms." Ind. Code Ann. § 32-36-1-7 (West); see

23  Ind. Code Ann. § 32-36-1-6 (defining "personality") (West). And "'commercial purpose' means

24

the use of an aspect of a personality's right of publicity as follows: (1) On or in connection with a product, merchandise, goods, services, or commercial activities[;] (2) For advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities[; or] (3) For the purpose of fundraising." Ind. Code Ann. § 32-36-1-2 (West).

### 2.   Prima Facie Claim

Classmates argues that Boshears has not adequately alleged facts satisfying IRPA's territoriality or commercial use requirements. The Court agrees in part.

#### a.   Territoriality

Absent any binding case law, the parties dispute the reach of the territoriality provision in the IRPA. Classmates argues that "Plaintiff must plead that the 'act or event' that allegedly violates the statute 'occur[red] within Indiana.'" (Mot. at 3 (Dkt. No. 25).) Boshears suggests a broader interpretation that reaches any act or event that "gave rise to [Boshears'] IRPA claim," including Classmates' failure to obtain his consent in Indiana. (Opp. at 3 (Dkt. No. 30).) Boshears further invokes personal jurisdiction jurisprudence and case law interpreting a territoriality provision in an unrelated Illinois law. (Id.) Classmates takes issue with this, asserting that "whether a court may have personal jurisdiction over a defendant due to certain minimum contacts with the state is not remotely the same inquiry as whether the plaintiff has pled that the specific 'act' prohibited by IRPA occurred 'within Indiana'—an express requirement of Plaintiff's cause of action." (Reply at 2 (citing Ind. Code § 32-36-1-1(a)) (Dkt. No. 36).)

The Court agrees with Classmates that the IRPA's territoriality provision requires the "act or event" occurring in Indiana to be the non-consensual commercial use of the personality. The Court begins its analysis with the territoriality provision itself, which states that the IRPA "applies to an act or event that occurs within Indiana, regardless of a personality's domicile,

1    residence, or citizenship." Ind. Code Ann. § 32-36-1-1 (West). To understand the terms "act or

2    event," the Court considers the IRPA's jurisdictional provision in Section 9. This provision states

3    that any person "submits to the jurisdiction of Indiana courts" if they do any of the following:

4    "(1) engages in conduct within Indiana that is prohibited under section 8 of this chapter[1]; (2)

5    creates or causes to be created within Indiana goods, merchandise, or other materials prohibited

6    under section 8 of this chapter; (3) transports or causes to be transported into Indiana goods,

7    merchandise, or other materials created or used in violation of section 8 of this chapter; or (4)

8    knowingly causes advertising or promotional material created or used in violation of section 8 of

9    this chapter to be published, distributed, exhibited, or disseminated within Indiana." Ind. Code

10   Ann. § 32-36-1-9. These jurisdictional requirements strongly suggest that the required "act or

11   event" occurring in Indiana must be a violation of Section 8's bar on the non-consensual,

12   commercial use of a personality. And because Section 8 requires evidence of both a non-

13   consensual and commercial use, it is not enough to allege that the defendant failed to obtain

14   consent in Indiana without also identifying a commercial use in Indiana.

15          Applying this definition, the Court finds that Boshears has not sufficiently alleged an act

16   or event that occurred in Indiana in violation of the IRPA. Boshears alleges that Classmates has

17   used his "photographs in advertisements displayed on Classmates' website to users in Indiana."

18   (FAC ¶ 54.) This allegation might be sufficient to satisfy the territoriality requirement because it

19   points to a non-consensual commercial use of his image in Indiana. But the allegation finds no

20   further factual support. Boshears admits he has never seen the website and he does not allege that

21   anyone else in Indiana has. Only Boshears' attorney has viewed the photo on Classmates, and

22   that occurred outside of Indiana. These facts render the allegation in the Amended Complaint too

23

24   _____
     [1] Section 8 refers to the bar on the non-consensual, commercial use of a personality.

ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY - 6

1    attenuated to satisfy Rule 8 under the <u>Iqbal</u>/<u>Twombly</u> standard. But the Court believes this

2    pleading deficiency can be overcome with additional allegations and/or supporting materials

3    such as an affidavit.

4        In reaching this decision, the Court rejects Boshears' reliance on the decision in a similar

5    case brought against Classmates: <u>Knapke v. PeopleConnect, Inc.</u>, C21-262 MJP (W.D. Wash.).

6    Boshears notes that in ruling a motion to dismiss in <u>Knapke</u>, the Court held that there was no

7    requirement to allege that anyone actually saw the image of the plaintiff. (Opp. at 4 (citing

8    <u>Knapke</u>, Order on Motion to Dismiss (Dkt. No. 25).) But in <u>Knapke</u>, the Court considered an

9    Ohio law that contains no territorial requirement. <u>See</u> <u>Knapke</u>, Dkt. No. 25 at 12. That makes the

10   decision in <u>Knapke</u> unhelpful in understanding the parameters of the IRPA's territoriality

11   requirement.

12       The Court is also unconvinced by Boshears' other alleged "acts or events" satisfy the

13   territoriality requirement. First, Boshears alleges that Classmates misappropriated his yearbooks

14   in Indiana. (Opp. at 3 (citing FAC ¶ 54).) But Boshears also alleges that he "does not know how

15   Classmates obtained his photographs as a child." (FAC ¶ 12.) That admission undermines his

16   argument, and the Court finds the allegations insufficient. Second, the Court is unpersuaded that

17   Classmates' failure to obtain Boshears' consent in Indiana satisfies the territoriality requirement.

18   As explained above, the act or event occurring in Indiana must also include the use of the image

19   in Indiana. And the Court is unconvinced that cases interpreting a different Illinois law are

20   relevant. (<u>See</u> Opp. at 5-6 (citing <u>Vance v. Int'l Bus. Machines Corp.</u>, 20-cv-577, 2020 WL

21   5530134, at *4 (N.D. Ill. Sept. 15, 2020); <u>Rivera v. Google Inc.</u>, 238 F. Supp. 3d 1088, 1102

22   (N.D. Ill. 2017)).) Not only are the statutes different, but neither case stands for the proposition

23   that the location of the plaintiff who did not consent is sufficient to state a claim under Illinois

24

law. See Vance, 2020 WL 5530134, at *3 (declining to rule on the extraterritoriality issue);

Rivera, 238 F. Supp. 3d at 1101-02 (finding territoriality satisfied where Google obtained the

images from the plaintiffs in Illinois and did so without consent). Third, Boshears suggests that

because the harm was "felt in Indiana" he has satisfied the territoriality requirement. (Opp. at 6.)

But this does not identify a non-consensual, commercial use of the image in Indiana. Boshears

provides no authority for this proposition. He also misplaces reliance on a decision considering

the Illinois' Deceptive Trade Practices Act, which employs a different standard by which to

measure territoriality that has no apparent analog to the IRPA. (See Opp. at 6 (citing Specht v.

Google, Inc., 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009)).)

Given Boshears' failure to allege sufficient plausible allegations of a non-consensual

commercial use of his image in Indiana, the Court GRANTS the Motion to Dismiss as to this

claim. But the Court's dismissal is without prejudice and it will permit Boshears an opportunity

to amend his complaint.

**b.    Commercial Use**

Classmates argues that because Boshears has not alleged an unauthorized endorsement,

he has not satisfied the commercial use requirement of the IRPA claim. (Mot. at 4 (citing Daniels

v. FanDuel, Inc., 109 N.E.3d 390, 392, 396, 397 (Ind. 2018) ("Daniels II")).) This argument rests

on a faulty analysis of the Daniels II case and the Court rejects the argument.

The IRPA received its first in-depth analysis by both the Indiana Supreme Court and the

Seventh Circuit in the Daniels v. FanDuel litigation. In the Daniels matter, college football

players alleged that an internet-based fantasy football website violated the IRPA by using their

personalities without consent to attract participants to buy into a fantasy football league that

could yield cash prizes. See Daniels II, 109 N.E.3d at 392. The district court found that the

alleged use fell within the "newsworthy" exception under the IRPA, and the Seventh Circuit then

1  certified a question to the Indiana Supreme Court to determine "[w]hether online fantasy-sports

2  operators that condition entry on payment, and distribute cash prizes, need the consent of players

3  whose names, pictures, and statistics are used in the contests, in advertising the contests, or

4  both." Id. The Indiana Supreme Court found that consent was not necessary because the

5  statistics, images, and names of the players was sufficiently "newsworthy" to fit within the

6  "newsworthy" exception to the IRPA. See id. at 396-97.

7      Classmates incorrectly contends that Daniels II imposed a requirement that Boshears

8  allege Classmates used his image to make an endorsement. (See Mot. at 4 (quoting Daniels II

9  and arguing that the "commercial use" must be the use of "plaintiff's personality to depict an

10  'unauthorized endorsement'"). But the Court in Daniels II did not hold that there must be an

11  allegedly non-consensual endorsement. The question of what constitutes a "commercial use" was

12  not before the Court. Instead, the Court "answered the question [presented by the Seventh

13  Circuit] narrowly" and found only that the IRPA's newsworthy exception applied to "online

14  fantasy sports operators that condition entry to contests on payment and distribute cash prizes

15  [and who] . . . use the names, pictures, and statistics of players without their consent. . . ."

16  Daniels II, 109 N.E.3d at 392. The Court made no pronouncement that only endorsements are

17  actionable commercial uses, though it identified such uses as commercial.

18      Boshears has sufficiently alleged a commercial use of his personality. As alleged in the

19  Amended Complaint, the Classmates' website uses his image to advertise a paid subscription to

20  its services in at least two ways. That is sufficient to show a commercial use. Boshears has

21  alleged a violation of his "right to control one's identity from direct appropriation" which the

22  Court in Daniels II concluded "would seem central to the right of publicity recognized in

23  Indiana." Daniels II, 109 N.E.3d at 397. The Court rejects Classmates' Motion as to this issue.

24

### 3.   Newsworthy Exception

Classmates contends that even if Boshears has stated a claim under the IRPA, its conduct falls within the "newsworthy" exception. The Court disagrees.

The IRPA does not apply to "Material that has political or newsworthy value." Ind. Code Ann. § 32-36-1-1(1)(c)(1)(B). In Daniels II, the Indiana Supreme Court explained the contours of the "newsworthy" exception to the IRPA. First, the Court adopted the "expansive common law view of the term 'newsworthy.'" Daniels II, 109 N.E.3d at 396. The Court did so in part to avoid construing the statute to run afoul of the First Amendment. See id. Second, the Court cited an opinion from the District Court for the Southern District of Indiana interpreting the common law definition of "newsworthy." See id. (citing Time, Inc. v. Sand Creek Partners, L.P., 825 F. Supp. 210, 212 (S.D. Ind. 1993)). In Time, the court explained that "[t]he privilege of enlightening the public is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." Time, 825 F. Supp. at 212 (quoting Rogers v. Grimaldi, 695 F. Supp. 112, 117 (S.D.N.Y. 1988)). Third, while the Court embraced a broad definition of "newsworthy," it recognized that "the unauthorized use of a personality to advertise or promote a product likely lies outside the scope of what is considered newsworthy." Daniels II, 109 N.E.3d at 397. This is true even if the person at issue is a media personality or sports figure. See id. (noting that Kareem Abdul-Jabbar could sue for misappropriation of his identity even though he is a celebrity sports figure).

Classmates' use of Boshears' personality to advertise its subscription service is not newsworthy. As alleged, Classmates uses Boshears' image for the purpose selling a subscription to Classmates' website that allows users to communicate, view other users, see high-resolution

1    copies of yearbooks and buy yearbook reprints at a discount. The use of Boshears' likeness is not

2    alleged to be "enlightening" or newsworthy even if Boshears and his former classmates may

3    have interest in the historical subject matter. See Time, 825 F. Supp. at 212. During oral

4    argument Classmates suggested that essentially any use of a student's picture is newsworthy,

5    which strains credulity. (Hearing Transcript at 6:4-12 (Dkt. No. 43).) While a yearbook itself

6    may potentially have be newsworthy to the students involved, Classmates provides no cogent

7    explanation why its use of Boshears' yearbook photo to sell subscriptions is newsworthy.

8    Classmates' use of the photos to sell a subscription—the real focus of this case—has only

9    commercial, not newsworthy value. The Court is further unconvinced by Classmates' argument

10   that "there wouldn't be an industry for old yearbooks if there wasn't an interest in them."

11   (Hearing Tr. at 5:15-16.) Whether Classmates generates revenue from selling subscriptions its

12   yearbook-related services is not determinative of whether the use of Boshears' image here is

13   newsworthy.

14          In reply, Classmates cites to Daniels II and argues that because some of the information

15   here is factual, it falls within the newsworthy exception. (Reply at 5.) But the parties in Daniels

16   II agreed that statistics related to the football players were "newsworthy." Daniels II, 109 N.E.3d

17   at 397. Here, there are no similar concessions and no indication that the biographical information

18   about Boshears has any newsworthy character. Classmates' position appears ultimately to be that

19   any factual information is newsworthy. That cannot be squared with the Indiana Supreme

20   Court's express recognition that some uses of even famous personalities are not newsworthy. See

21   id. The Court therefore declines to adopt Classmates' position which would essentially cause the

22   newsworthy exception to eclipse the protections of IRPA.

23

24

1    The Court rejects Classmates' argument that its conduct falls within the newsworthy

2    exception to the IRPA.

3    **4.      Literary Work Exception**

4    Classmates argues that its use of Boshears' personality falls within the "literary work"

5    exception to the IRPA. The Court disagrees.

6    The IRPA does not apply to "Literary works, theatrical works, musical compositions,

7    film, radio, or television programs." Ind. Code Ann. § 32-36-1-1(1)(c)(1)(A). At least one court

8    has concluded that this reaches video games. See Dillinger, LLC v. Elec. Arts Inc., 795 F. Supp.

9    2d 829, 836 (S.D. Ind. 2011). Here, even if one accepts that yearbooks are literary works,

10   Classmates has not shown that its subscription service is a literary work. Boshears attacks only

11   the use of his likeness to sell the subscription service that lets users engage with each other, build

12   profiles, message each other, and view high resolution copies of yearbooks. He no longer attacks

13   Classmates' use of his likeness to sell yearbooks. Based on these narrowed allegations and the

14   procedural posture, the Court is unconvinced that the subscription service is a literary work. The

15   Court rejects Classmates' argument as to this exception.

16   **C.     Common Law Misappropriation Claim**

17   Classmates ask the Court to dismiss Boshears' common law misappropriation of a name

18   and likeness claim on the theory that it is unrecognized in Indiana. The Court disagrees.

19   Indiana has recognized a common law claim for misappropriation of a likeness or name.

20   See Felsher v. Univ. of Evansville, 727 N.E.2d 783, 787 (Ind. Ct. App.) overruled on other

21   grounds by Felsher v. Univ. of Evansville, 755 N.E.2d 589, 599-601 (Ind. 2001). In the context

22   of an "invasion of privacy" claim, Indiana courts consider "'four distinct injuries: (1) intrusion

23   upon seclusion, (2) appropriation of [name or] likeness, (3) public disclosure of private facts, and

24

1   (4) false-light publicity.'" <u>Felsher v. Univ. of Evansville</u>, 755 N.E.2d 589, 593 (Ind. 2001)

2   (quoting <u>Doe v. Methodist Hosp.</u>, 690 N.E.2d 681, 684 (Ind. 1997) (citing Restatement (Second)

3   of Torts, § 652A (1977))). In <u>Felsher</u>, the Court of Appeals recognized that there had been "no

4   Indiana cases regarding the strand of invasion of privacy involving appropriation of another's

5   name or likeness." 727 N.E.2d at 787. But, citing the Restatement Second of Torts § 652, the

6   Court favorably identified "the strand of invasion of privacy recognized in Indiana and known as

7   'appropriation of name or likeness.'" <u>Id.</u> The Court then upheld the trial court's preliminary

8   injunction that barred the defendant from "appropriating the names and likenesses" of three

9   individual plaintiffs. <u>Id.</u> 786, 787. As the Court explained, the defendant "ha[d] no right to

10  appropriate either a name or a likeness not his own. <u>Id.</u> at 787–88. On review, the Indiana

11  Supreme Court rejected the Court of Appeals' conclusion that a corporation could maintain a

12  claim for misappropriation of a likeness or name. <u>See</u> <u>Felsher</u>, 755 N.E.2d at 594. But the Court

13  affirmed the injunction entered in favor of the individual plaintiffs on this very same claim with

14  only one minor revision. <u>See id.</u> at 599-601. Had the Supreme Court believed the claim was not

15  cognizable it would not have upheld the trial court's preliminary injunction. Based on the

16  Court's review of the two opinions in <u>Felsher</u>, the Court concludes that Indiana recognizes a

17  claim for misappropriation of one's likeness and name.

18          Under Indiana law, "an appropriation and use of a plaintiff's name or likeness occurs

19  whenever the defendant 'makes use of the plaintiff's name or likeness for his own purposes or

20  benefit, even though the use is not a commercial one, and even though the benefit sought to be

21  obtained is not a pecuniary one." <u>Felsher</u>, 727 N.E.2d 783, 787 (citing Restatement (Second) of

22  Torts § 652I cmt. b (1977)). Classmates offers no argument why Boshears' complaint fails to

23  state a claim. Instead, Classmates relies on the Indiana Supreme Court's statement in <u>Daniels II</u>

24

1    that "no Indiana court has directly created a common law right of publicity in our state. . . ."

2    Daniels II, 109 N.E.3d at 395. But this statement does not stand for the proposition that a person

3    cannot bring a claim for misappropriation of a likeness or name or that Felsher is no longer good

4    law. Classmates' own briefing ignores Felsher entirely. At oral argument Classmates suggested

5    that the claim in Felsher was a "false light" claim and not a misappropriation claim. (Hearing Tr.

6    at 15.) That is incorrect. In analyzing the misappropriation claim, the Court of Appeals noted that

7    it was, in fact, distinct from plaintiffs' false light claim. Felsher, 727 N.E.2d at 787 n.1.

8            The Court DENIES the Motion as to this claim and finds the claim adequately pleaded.

9    **D.    Washington's Uniform Public Expression Protection Act**

10           Classmates argues that Boshears' claim is barred by Washington's Uniform Public

11   Expression Protection Act (UPEPA). The Court disagrees.

12           UPEPA requires a defendant to show (1) "that the [plaintiff] failed to state a cause of

13   action upon which relief can be granted," and (2) that the defendant exercised one of the

14   constitutionally protected rights "on a matter of public concern." RCW 4.105.060,

15   4.105.010(2)(c). But UPEPA does not apply to "a person primarily engaged in the business of

16   selling or leasing goods or services if the cause of action arises out of a communication related to

17   the person's sale or lease of the goods or services." RCW 4.105.010(3)(a)(iii).

18           Classmates' argument under UPEPA fails for two reasons. First, because Boshears has

19   stated a claim under Indiana common law, the UPEPA claim cannot be maintained. See RCW

20   4.105.060. Second, because Classmates speech at issue is "related to [Classmates'] sale . . . of . .

21   . services" it is excluded from the Act. RCW 4.105.010(3)(a)(iii). Classmates argues that its

22   conduct falls outside this exception because it is selling yearbooks and because it maintains a

23   database of yearbooks that courts have found to be protected non-commercial speech. But this

24

1    argument ignores the allegations in the Amended Complaint which attack Classmates' use of

2    Boshears' image to advertise its subscription services, which is purely commercial. And the

3    cases Classmates cites are factually distinguishable. (See Mot. at 10-11.) In the primary case on

4    which Classmates relies, the court held that a website's encyclopedic database containing

5    information about movies, casts, and crew members that did not "propose a commercial

6    transaction" contained non-commercial speech. See IMDb.com Inc. v. Becerra, 962 F.3d 1111,

7    1121–22 (9th Cir. 2020). But here, Boshears attacks Classmates' commercial use of his name

8    and likeness to sell subscription services. And unlike in IMDb, Classmates' speech "propose[s] a

9    commercial transaction." Id. at 1122.

10        The Court DENIES the Motion as to this claim. The Court also DENIES Boshears'

11   request for fees and costs incurred in opposing the UPEPA claim. UPEPA only compels the

12   Court to award of costs, fees, and expenses to the non-moving party if defendant's motion is "not

13   substantially justified," or if it is "filed solely with the intent to delay the proceeding." See RCW

14   4.105.090. Here, the Court finds sufficient justification for Classmates to have pursued the claim

15   and there is no clear basis to conclude it was done to delay the proceedings.

16   **E.    Arbitration**

17        Classmates argues that in filing his complaint, Boshears' agreed to arbitrate all of his

18   claims by ratifying his counsel's pre-existing agreement with Classmates to arbitrate any claims

19   related to counsel's use of Classmates' website. The Court finds no merit in this theory.

20        To understand Classmates' arguments, the Court reviews several relevant facts. In 2019,

21   Boshears' counsel created an account with Classmates and agreed to Classmates' Terms of

22   Service (TOS), including the requirement to arbitrate claims related to his use of the website. In

23   preparing the amended complaint in 2021, counsel created a new account with Classmates and

24

1    sent a letter to Classmates opting out of the arbitration requirement on his own and his client's

2    behalf, as permitted by the TOS. (See Declaration of Benjamin Osborn ¶ 4 (Dkt. No. 32).) He

3    then used this new account to do all of his research that forms the basis of the complaint,

4    including to take the screen shots of Classmates' website that show the use of Boshears' likeness

5    and name and the subscription purchase offers.

6         Effect of Opt-Out

7         Classmates first argues that counsel's opt-out is ineffective because of his pre-existing

8    agreement to arbitrate his claims. Classmates invokes the TOS and case law in support of is

9    argument, neither of which persuades the Court. First, Classmates cites the TOS which forbids

10   the creation of more than one personal membership. (See TOS § 3(A) (Ex. 2 to the Declaration

11   of Tara McGuane).) But the TOS do not state what the remedy is if one creates multiple accounts

12   or what impact that may have on a later opt-out request using a new account. The TOS could

13   have, but do not include a provision stating that any user who makes a new account is bound by

14   the original terms of their agreement, including as to the arbitration provision. Instead,

15   Classmates' website allowed counsel to create the new account and gather the content used in the

16   Amended Complaint. The Court is therefore unpersuaded that the TOS compel finding that

17   counsel's opt-out is ineffective. Second, Classmates cites to the Restatement Second of Contracts

18   proposition that there must be two parties to a contract and suggests that counsel remains bound

19   by his initial agreement. (Mot. at 15.) But that does not answer the question of whether counsel

20   may create a new account and validly opt out of arbitration related to his use of the new account.

21   Classmates' Reply invokes a Ninth Circuit decision in Stover v. Experian Holdings, Inc., 978

22   F.3d 1082, 1084, 1085-86 (9th Cir. 2020). (Reply at 8). But Stover is not particularly relevant

23   because it addressed a different legal question with a unique factual posture without announcing

24

1    any legal rule supporting Classmates' position here. Having considered all of Classmates'

2    arguments, the Court is left without sufficient basis to conclude that counsel's opt-out has no

3    effect. The Court also notes that counsel created the account expressly to investigate the claims

4    in this case pursuant to Rule 11 as an agent of his client, he used only this account to investigate

5    the claim and take the screen shots, and he timely submitted the opt-out request for him and his

6    client. (Osborn Decl. ¶¶ 2-4.)

7        Ratification

8        Even if the Court found that the opt-out was ineffective, the Court is unconvinced by

9    Classmates' ratification argument.

10       Under Indiana law, a principal may be bound by an agent through the theory of

11   ratification. "Ratification means the adoption of that which was done for and in the name of

12   another without authority." Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc., 773

13   N.E.2d 881, 889 (Ind. Ct. App. 2002) (citation and quotation omitted). "When a principal, with

14   full knowledge of the facts, appropriates the fruits of an agent's unauthorized act, the principal

15   may not complain later the agent acted without authority." Blairex Lab'ys, Inc. v. Clobes, 599

16   N.E.2d 233, 236 (Ind. Ct. App. 1992) So "[a] principal will be bound by a contract entered into

17   by the principal's agent on his behalf regardless of the agent's lack of authority if the principal

18   subsequently ratifies the contract as one to which he is bound." Heritage, 773 N.E.2d at 889

19   "Ratification may be express, where the principal explicitly approves the contract, or implied,

20   where the principal does not object to the contract and accepts the contract's benefits." Id.

21       Classmates has not advanced a compelling ratification argument. Counsel's original

22   agreement to the TOS's provision to arbitrate was accomplished two years before he began

23   representing his client. Counsel's 2019 agreement was not "done for an in the name of"

24

1  Boshears. See Heritage, 773 N.E.2d at 889. Nor do any facts suggest that Boshears had any

2  knowledge, let alone "full knowledge," that his counsel ever agreed to arbitrate claims related to

3  his use of the Classmates' website. See Hutter v. Weiss, 132 Ind. App. 244, 253, 177 N.E.2d

4  339, 344 (1961) (Under Indiana law, "[t]he general rule is that full knowledge by the principal of

5  all the material facts is indispensable to a ratification by him of the unauthorized act of his

6  agent."). Nor is there any evidence that Boshears received any "benefit" from his counsel's use

7  of the Classmates' website, as counsel's use merely aided in the filing of a complaint and

8  satisfying counsel's Rule 11 obligations. See Callahan v. PeopleConnect, Inc., No. 21-16040,

9  Memorandum at 3 (9th Cir. Mar. 18, 2022) (considering a similar ratification argument under

10  California law and finding "considerably doubt on this record that the Plaintiffs received any

11  'benefits' that would trigger ratification, such as a settlement or receipt of payment"). Even if the

12  filing of the complaint was a benefit and Boshears learned of his counsel's prior agreement when

13  Classmates filed its motion to dismiss, Boshears could not avoid accepting the benefit because

14  the complaint was already a matter of public record. See id.

15      At oral argument, Classmates suggested for the first time that the Court should apply

16  Washington law to analyze its ratification argument. (Hearing Tr. at 17-18.) The basis of this

17  request appears to stem from an agreement between Classmates and the plaintiff in the Knapke

18  matter as part of a pending appeal. (Id.) Classmates never advanced this argument in its motion

19  or reply. Although Classmates has waived any choice of law argument, the Court has

20  independently considered the issue and finds no material basis on which to distinguish

21  Washington law from Indiana law on this issue. See Riss v. Angel, 131 Wash. 2d 612, 636

22  (1997) ("To be charged by ratification with the unauthorized act of an agent, the principal must

23

24

1  act with full knowledge of the facts, accept the benefits of the acts, or without inquiry assume an

2  obligation imposed.")

3      The Court rejects Classmates' strained ratification argument and finds no basis on which

4  to permit any limited discovery. The Court also declines Boshears' suggestion that the Court

5  label Classmates' arbitration argument frivolous. The Court thus DENIES Classmates' request to

6  compel arbitration.

7  **F.**     **Copyright Act**

8      Classmates argues that the Copyright Act preempts Boshears' claims. The Court

9  disagrees.

10      The Copyright Act provides that "the owner of copyright . . . has the exclusive rights to

11  do and to authorize" others to display, perform, reproduce or distribute copies of the work and to

12  prepare derivative works. 17 U.S.C. § 106. "Section 301 of the Act provides for exclusive

13  jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope

14  of copyright as specified in the Act." Jules Jordan Video, Inc. v. 144942 Canada Inc., 617 F.3d

15  1146, 1152 (9th Cir. 2010). The Ninth Circuit employs a two-part test to measure preemption,

16  which asks: (1) does the subject matter of the state law claim fall within the subject matter of

17  copyright as described in 17 U.S.C. §§ 102 and 103; and (2) if so, are the rights asserted under

18  state law are equivalent to the rights contained in 17 U.S.C. § 106? See id. at 1153 (quoting Laws

19  v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137-38 (9th Cir. 2006)).

20      Section 102 explains that "[c]opyright protection subsists . . . in original works of

21  authorship fixed in any tangible medium of expression, now known or later developed, from

22  which they can be perceived, reproduced, or otherwise communicated, either directly or with the

23  aid of a machine or device [and w]orks of authorship include . . . pictorial, graphic, and

24

ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY - 19

1   sculptural works." 17 U.S.C. § 102. "Section 103 provides that the subject matter specified in §

2   102 also includes compilations and derivative works, 'but the copyright in a compilation or

3   derivative work extends only to the material contributed by the author of such works as

4   distinguished from the preexisting material employed in the work.'" Downing v. Abercrombie &

5   Fitch, 265 F.3d 994, 1003 (9th Cir. 2001) (quoting 17 U.S.C. § 103).

6          A "person's name or likeness is not a work of authorship within the meaning of 17

7   U.S.C. § 102." Downing, 265 F.3d at 1004. This is true even if the plaintiff's "names and

8   likenesses are embodied in a copyrightable photograph." Id. Thus, "a publicity-right claim is not

9   preempted when it targets non-consensual use of one's name or likeness on merchandise or in

10  advertising." Maloney v. T3Media, Inc., 853 F.3d 1004, 1010 (9th Cir. 2017). "But when a

11  likeness has been captured in a copyrighted artistic visual work and the work itself is being

12  distributed for personal use, a publicity-right claim interferes with the exclusive rights of the

13  copyright holder, and is preempted by section 301 of the Copyright Act." Id.

14         The Copyright Act does not preempt Boshears' claims. Classmates' alleged misuse of his

15  likeness to sell subscription services is not a work of authorship that falls under Section 102 of

16  the Copyright Act. See Downing, 265 F.3d at 1004. Copyright Act preemption therefore does not

17  apply. See Jules Jordan, 617 F.3d at 1153; see Daniels v. FanDuel, Inc., No.

18  116CV01230TWPDKL, 2017 WL 4340329, at *13 (S.D. Ind. Sept. 29, 2017) (concluding that

19  "Indiana's right-of-publicity statute is not preempted by the Copyright Act") aff'd, 909 F.3d 876

20  (7th Cir. 2018). Classmates suggests that the Court's analysis would change if it considered a

21  "review of the full website." (See Reply at 10.) But Classmates has not explained why

22  consideration of such materials would be appropriate on a motion to dismiss. And the Court's

23

24

1    review of those materials does not convince it that Classmates use of Boshears' likeness to

2    advertise its subscription services falls within Section 102 of the Copyright Act.

3         The Court rejects this argument and DENIES the Motion as to this issue.

4    **G.    First Amendment**

5         Classmates argues that Boshears' IRPA claim violates its rights under the First

6    Amendment. (Mot. at 18.) The Court disagrees.

7         The Court must first resolve whether the Classmates' use of Boshears' likeness to

8    advertise its subscription services is core First Amendment speech or commercial speech.

9    Commercial speech is "defined as speech that does no more than propose a commercial

10   transaction." United States v. United Foods, Inc., 533 U.S. 405, 409 (2001). The Supreme Court

11   has noted that "advertising which 'links a product to a current public debate' is not thereby

12   entitled to the constitutional protection afforded noncommercial speech." Bolger v. Youngs Drug

13   Prods. Corp., 463 U.S. 60, 67–68 (1983) (holding that "information pamphlets are properly

14   characterized as commercial speech"). "Where the facts present a close question, 'strong

15   support' that the speech should be characterized as commercial speech is found where the speech

16   is an advertisement, the speech refers to a particular product, and the speaker has an economic

17   motivation." Hunt v. City of Los Angeles, 638 F.3d 703, 715 (9th Cir. 2011) (citing Bolger, 463

18   U.S. at 66–67). But "[c]ommercial speech does not retain its commercial character 'when it is

19   inextricably intertwined with otherwise fully protected speech.'" Id. (quoting Riley v. Nat'l Fed.

20   of the Blind of N. Car., Inc., 487 U.S. 781, 796 (1988)).

21        As alleged, the advertisements at issue in this case are commercial speech. Classmates

22   attempts to avoid this conclusion by arguing that Boshears is attacking its "dissemination of

23   yearbook excerpts on a free, publicly accessible database." (Mot. at 18.) But what Boshears

24

1    seeks to stop is Classmates use of his likeness to advertise its subscription services that allows

2    user to connect and interact and access full resolution copies of the yearbooks. The

3    advertisements at issue that Classmates created are not intertwined with otherwise protected

4    speech. And the mere fact that Boshears' photos do not appear on the screens offering the sale of

5    the subscription is not dispositive. As alleged, a user is offered the subscription service after

6    clicking on Boshears' image or a user is offered the subscription on the page displaying

7    Boshears' image. (FAC ¶¶ 32, 35.)

8         Having concluded that the speech is commercial, the Court considers whether the IRPA

9    violates the First Amendment. "Commercial speech that is not false or deceptive and does not

10   concern unlawful activities, however, may be restricted only in the service of a substantial

11   governmental interest, and only through means that directly advance that interest." Zauderer v.

12   Off. of Disciplinary Couns. of Supreme Ct. of Ohio, 471 U.S. 626, 638 (1985). "The protection

13   available for particular commercial expression turns on the nature both of the expression and of

14   the governmental interests served by its regulation." Centr. Hudson Gas & Elec. Corp. v. Pub.

15   Serv. Comm'n, 447 U.S. 557, 563 (1980). The Court engages in a multi-step analysis. "First, we

16   determine whether the expression is constitutionally protected." Bolger, 463 U.S. at 68. "For

17   commercial speech to receive such protection, 'it at least must concern lawful activity and not be

18   misleading.'" Id. (quoting Centr. Hudson, 447 U.S. at 566). "Second, we ask whether the

19   governmental interest is substantial [and i]f so, we must then determine whether the regulation

20   directly advances the government interest asserted, and whether it is not more extensive than

21   necessary to serve that interest." Id. at 68-69.

22        The Court is skeptical that the commercial speech at issue is entitled to any protection,

23   given that it allegedly misappropriates Boshears' persona and potentially misleads the public.

24

ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STAY - 22

1    See Zauderer, 471 U.S. at 638. Even if it the speech is entitled to protection, the IRPA advances

2    Indiana's substantial interest in protecting its citizens from non-consensual commercial use of

3    their personality. As the Indiana Supreme Court has noted, "[t]he right to control one's identity

4    from direct appropriation would seem central to the right of publicity recognized in Indiana"

5    through the IRPA. Daniels II, 109 N.E.2d at 397. Indeed, the IRPA "reportedly came about after

6    concerns that profiteers were selling baseball-style cards of an AIDS victim without the consent

7    of his surviving family." Id. at 397 n.3. This affirms Indiana's substantial interest in protecting

8    its citizens right to publicity. And given the exceptions embedded in the law (two of which

9    Classmates has invoked), it does not appear more extensive than necessary to protect against

10   non-consensual commercial misuse of one's likeness or name.

11          The Court therefore rejects this as basis on which to dismiss the claims.

12   **H.      Communications Decency Act**

13          Classmates argues that it is entitled to immunity under the Communications Decency

14   Act, 47 U.S.C. § 230(c)(1). The Court is unpersuaded.

15          To be entitled to dismissal based on this affirmative defense, Classmates must show that

16   it is: (1) an interactive computer service provider; (2) publishing information "provided by

17   another information content provider." 47 U.S.C. § 230(c)(1). The CDA defines "information

18   content provider" as "any person or entity that is responsible, in whole or in part, for the creation

19   or development of information provided through the Internet or any other interactive computer

20   service." 47 U.S.C. § 230(c)(1). As to the first element, the Ninth Circuit interprets the term

21   "interactive computer service provider" expansively. See Dyroff v. Ultimate Software Grp., Inc.,

22   934 F.3d 1093, 1097 (9th Cir. 2019), cert. denied, 140 S. Ct. 2761, 206 L. Ed. 2d 936 (2020).

23   And as to the second element, "what matters is whether the claims 'inherently require[ ] the court

24

1    to treat the defendant as the 'publisher or speaker' of content provided by another.'" Id. at 1098

2    (quoting Barnes v. Yahoo!, Inc., 570 F.3d 1096, (9th Cir. 2009)).

3           "The prototypical service qualifying for [CDA] immunity is an online messaging board

4    (or bulletin board) on which Internet subscribers post comments and respond to comments

5    posted by others." Kimzey v. Yelp! Inc., 836 F.3d 1263, 1266 (9th Cir. 2016) (internal

6    quotations omitted). "Taking the relevant statutory definitions and case law in account, it

7    becomes clear that, in general, Section 230(c)(1) 'protects websites from liability [under state or

8    local law] for material posted on the[ir] website[s] by someone else.'" Dyroff, 934 F.3d at 1097

9    (quoting Doe v. Internet Brands, Inc., 824 F.3d 846, 850 (9th Cir. 2016)). When the interactive

10   computer service provider creates the content itself it "is also a content provider" and not entitled

11   to protection under the CDA. See Fair Hous. Council of San Fernando Valley v.

12   Roommates.Com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008). In other words, the CDA's "grant

13   of immunity applies only if the interactive computer service provider is not also an information

14   content provider, which is defined as someone who is responsible, in whole or in part, for the

15   creation or development of the offending content." Id. (internal citations omitted).

16          The Court finds that Classmates is not entitled to protection under the CDA. The sole

17   issue in this case is whether Classmates' decision to create advertisements using Boshears'

18   persona to sell subscription services violates the IRPA and the common law. (FAC ¶¶ 1-10.)

19   That content is generated expressly by Classmates and the advertisement is not merely a passive

20   display of content created by another entity, even if it contains a picture from a school yearbook.

21   In this context, Classmates is the content creator and is not entitled to immunity under the CDA.

22   See Roomates.Com, 521 F.3d at 1162.

23

24

1    Classmates argues that it is a mere "publisher" and not a content provider because it

2    displays old yearbooks. (Mot. at 19-20.) But this argument ignores the allegations in the

3    Amended Complaint, which focus on Classmates' use Boshears' photos in unique

4    advertisements created by Classmates. These are the acts of a content creator, which causes them

5    to fall outside the CDA's grant of immunity. Classmates' reliance on Gonzalez v. Google LLC, 2

6    F.4th 871 (9th Cir. 2021) does not alter this conclusion. In that case, the Ninth Circuit concluded

7    that Google's algorithms suggesting related content was an act of publication because the

8    suggested related content was created by others and offered by Google merely as a response to

9    user queries and search histories. Here, Boshears is not challenging Classmates' return of

10   information in response to a search query. Rather, he attacks what happens next—Classmates'

11   use of his image to display advertisements to subscribe to Classmates' services. The

12   advertisements are of Classmates' own creation and are not the kind of "neutral tools" that are

13   shielded by the CDA's grant of immunity. See Gonzalez, 2 F.4d at 894.

14        The Court DENIES the Motion as to this argument.

15   **F.    Motion to Stay Discovery**

16        Classmates asks the Court to stay discovery pending a decision on the Motion to Dismiss.

17        As Classmates contends: "Courts determining whether to stay discovery pending

18   resolution of a motion to dismiss consider whether: '(1) the pending motion would be potentially

19   dispositive of the entire case or at least dispositive of the issue on which discovery is sought, and

20   (2) the pending potentially dispositive motion can be decided without additional discovery.'"

21   (See Mot to Stay at 4 (quoting Bosh v. United States, No. C19-5616, 2019 WL 5684162, at *1

22   (W.D. Wash. Nov. 1, 2019) (citation omitted)).)

23        Classmates cannot meet the standard it announces. Importantly, the Motion to Dismiss is

24   not dispositive of the entire case and the Court has granted leave to amend what appears to be a

1    curable defect in Boshears' IRPA claim. As such, a stay of discovery is unnecessary. In addition,

2    the Court finds no merit in Classmates' argument that a stay should issue because it may appeal

3    the denial of its request to compel arbitration. That issue is not before the Court and is not a basis

4    to stay discovery. The Parties must proceed to engage in discovery in good faith consistent with

5    all Court-ordered discovery. The Court is unpersuaded by any of the briefing submitted by

6    Classmates that doing so would impact its claimed right to arbitration. If Classmates believes

7    that it cannot engage in specific discovery without waiving its theoretical right to arbitrate, it

8    must promptly move for a protective order. The Court DENIES the Motion to Stay.

9                                        **CONCLUSION**

10           The Court agrees with Classmates that Boshears has not satisfied the prima facie

11    territoriality element of his IRPA claim. But the Court finds that this defect is likely curable

12    through amendment. The Court therefore GRANTS the Motion to Dismiss as to this claim

13    without prejudice and with leave to amend. Boshears shall file an amended complaint within 20

14    days of entry of this Order.

15           The Court otherwise rejects Classmates' other arguments as to Boshears' IRPA claim.

16    And the Court finds no merit in Classmates' attack to the common law misappropriation claim,

17    which is adequately pleaded. The Court also rejects Classmates' request to compel arbitration or

18    for dismissal under the Copyright Act, the CDA, or the First Amendment. The Court therefore

19    DENIES the remainder of the Motion to Dismiss. And the Court DENIES the Motion to Stay.

20           The clerk is ordered to provide copies of this order to all counsel.

21           Dated March 25, 2022.

22

23                                          Marsha J. Pechman
                                            United States Senior District Judge

24