UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN BOSHEARS, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br>     v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>                  Defendant. | Case No. 2:21-cv-01222-MJP<br><br>DECLARATION OF BENJAMIN T. HALBIG IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION |

I, Benjamin T. Halbig, hereby declare:

1.     I am a partner at the San Francisco, California office of the law firm Jenner & Block. I represent PeopleConnect, Inc. in the above-captioned matter.

2.     Plaintiff produced an October 11, 2021 letter from Sam Strauss addressed to Plaintiff John Boshears ("Plaintiff") as PL-BOSHEARS_000001–02, a true and accurate copy of which is attached as Exhibit 1.

3.     A true and accurate copy of the transcript of Plaintiff's deposition is attached as Exhibit 2.

4.     A true and accurate copy of Plaintiff John Boshears's Amended Answers And

DECLARATION OF BENJAMIN T. HALBIG IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION - 1
No. 2:21-cv-01222-MJP

GORDON TILDEN THOMAS CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

Objections To Defendant's First Set of Interrogatories is attached as Exhibit 3.

5.  Plaintiff produced an October 18, 2021 email exchange between Plaintiff and Mr. Strauss as PL-BOSHEARS_000034–36, a true and accurate copy of which is attached as Exhibit 4.

6.  Plaintiff produced an October 18–21, 2021 email exchange between Plaintiff and Mr. Strauss as PL-BOSHEARS_000037–40, a true and accurate copy of which is attached as Exhibit 5.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that I executed this declaration on April 8, 2024 in San Franciso, California.


 _/s/ Benjamin T. Halbig_____

Benjamin T. Halbig

DECLARATION OF BENJAMIN T. HALBIG IN SUPPORT OF
DEFENDANT'S MOTION TO COMPEL ARBITRATION - 2
No. 2:21-cv-01222-MJP

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

# EXHIBIT 1

# Turke & Strauss LLP

Advertising Material

Samuel J. Strauss
sam@turkestrauss.com

October 11, 2021

*Via U.S. Mail*

John Boshears
2006 S Sussex Dr
Bloomington, IN 47401

Re:     **Classmates.com | Privacy Class Action Investigation**

Dear John:

My name is Sam Strauss, and I am an attorney at the law firm of Turke & Strauss LLP. Our firm provides a variety of legal services, including litigating consumer privacy cases. We are currently investigating Classmates.com ("Classmates") regarding its Yearbook Collection. We believe Classmates' Yearbook Collection contains information related to former students of Bedford North Lawrence High School who were in attendance in the years 1995-1998.

As you may know, Classmates' business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. Users may search by name and location for the photograph of any student in the Yearbook Collection. Additionally, Classmates uses student names and photographs to advertise and promote website subscriptions costing $3 per month, and reprinted yearbook copies costing $99.95.

Classmates' website states that its Yearbook Collection contains records copied from over 400,000 yearbooks. While Classmates does not publish figures about the total number of records in its Yearbook Collection, it likely contains millions of records with people's personal information.

We believe Classmates' Yearbook Collection may violate the privacy and intellectual property rights of individuals who did not consent to the use and dissemination of their personal information. We are specifically investigating whether Classmates.com violated Indiana's Right of Publicity Law, Ind. Code § 32-36-1. Indiana's Right of Publicity Law forbids the commercial use of an individual's personality without consent, including the commercial use of a name,

PL-BOSHEARS_000001

photograph, image, or likeness. The statute provides for statutory damages of $1,000 per violation.

If you are willing, we would like to speak with you regarding our Classmates.com investigation. Please contact me at **(608) 237-1775** or **sam@turkestrauss.com**.

If you would like more information about me or our firm, please visit www.turkestrauss.com.

Very Truly Yours,
TURKE & STRAUSS LLP

Samuel J. Strauss

Turke & Strauss LLP is a Wisconsin Limited Liability Partnership, with a principal office in Madison, Wisconsin. Turke & Strauss lawyers represent clients in class action lawsuits in federal courts across the country. Turke & Strauss co-counsels with experienced attorneys in states in which our attorneys are not licensed to practice. Samuel J. Strauss is only licensed in Washington and Wisconsin. Receipt of this letter does not create an attorney-client relationship. Prior results do not guarantee a similar outcome. If you received this letter in error, please disregard it.

Advertising Material

PL-BOSHEARS_000002

# EXHIBIT 2

**Page 1**

1      UNITED STATES DISTRICT COURT

2      WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3

4   JOHN BOSHEARS, on behalf  )

5   of himself and all others )

6   similarly situated,       )

7        Plaintiff,   )

8      v.            ) No. 2:21-cv-01222-MJP

9   PEOPLECONNECT, INC., a   )

10  Delaware Corporation,    )

11       Defendant.   )

12

13       The videotaped deposition of JOHN

14  BOSHEARS, called for examination, taken pursuant to

15  the Federal Rules of Civil Procedure of the United

16  States District Courts pertaining to the taking of

17  depositions, taken before KRISTIN C. BRAJKOVICH, a

18  Certified Shorthand Reporter, CSR. No. 84-3810, of

19  said state, at Suite 4500-P, Chicago, Illinois, on

20  the 10th day of January, A.D. 2024, at 9:04 a.m.

21

22

23

24

**Page 2**

1  PRESENT:

2

3      TURKE & STRAUSS LLP,
       (613 Williamson Street, Suite 201,

4      Madison, Wisconsin 53703,
       1-608-237-1775), by:

5      MS. BRITTANY RESCH,
       brittanyr@turkestrauss.com,

6         appeared on behalf of Plaintiffs;

7      JENNER & BLOCK LLP,
       (455 Market Street, Suite 2100,

8      San Francisco, California 94105,
       1-628-267-6800), by:

9      MR. BENJAMIN T. HALBIG,
       bhalbig@jenner.com,

10     -and-
       (353 North Clark Street,

11     Chicago, Illinois 60654,
       1-312-840-7286), by:

12     MS. HOPE H. TONE-O'KEEFE,
       HToneOKeefe@jenner.com,

13        appeared on behalf of Defendant.

14

15  ALSO PRESENT: MR. CHRISTOPHER MESSER,

16        Videographer.

17

18

19

20

21

22

23  REPORTED BY:  KRISTIN C. BRAJKOVICH,

24        CSR No. 84-3810.

**Page 3**

1      THE VIDEOGRAPHER:  We are now on the record.

2   This is Tape No. 1 to the videotaped deposition of

3   John Boshears in the matter of John Boshears versus

4   PeopleConnect, Incorporated, being heard before the

5   U.S. District Court, Western District of Washington

6   at Seattle, Case No. 2:21-cv-01222-MJP.  This

7   deposition is being held at 353 North Clark Street

8   in Chicago on January 10, 2024, at approximately

9   9:04 a.m.

10       My name is Christopher Messer.  I'm the

11  videographer.  The court reporter is Kristin

12  Brajkovich.  At this time, counsel please introduce

13  yourselves for the record, and then our court

14  reporter will swear in the witness.

15      MR. HALBIG:  Ben Halbig and Hope Tone-O'Keefe

16  on behalf of Defendant PeopleConnect.

17      MS. RESCH:  And Brittany Resch from Turke &

18  Strauss on behalf of the plaintiff and the class.

19       (WHEREUPON, the witness was duly

20       sworn.)

21

22

23

24

**Page 4**

1       JOHN BOSHEARS,

2   called as a witness herein, having been first duly

3   sworn, was examined and testified as follows:

4       EXAMINATION

5   BY MR. HALBIG:

6      Q.  Good morning, Mr. Boshears.  As I just

7   said on the record, my name is Ben Halbig.  I

8   represent defendant, PeopleConnect, in this matter.

9       First of all, I want to ask you, have

10  you been deposed before?

11     A.  No.

12     Q.  So since this is your first deposition,

13  I want to go over a few ground rules before we

14  start, if that is okay.

15     A.  Okay.

16     Q.  So you understand that we are here today

17  for your deposition?

18     A.  Yes.

19     Q.  Which means that I'll be asking the

20  questions and then you'll be providing the answers?

21     A.  Yes.

22     Q.  And that in answering my questions, you

23  have to answer them to the best of your ability?

24     A.  Yes.

Page 5

1   Q.   And then you are under oath today, so
2   you also have to answer my questions truthfully?
3   A.   Yes.
4   Q.   So as the court reporter just noted,
5   today's deposition is being transcribed, so it's
6   important that we try to talk over each other.
7   So I just ask if you can let me finish asking my
8   question before you begin to answer, and then I'll
9   extend you the same courtesy by waiting until you
10  answer -- finish answering your question before I
11  ask my next question.  If that is okay?
12  A.   Yes.
13  Q.   Okay.  Also, because it's being
14  transcribed, that means that you need to answer my
15  questions verbally, so any kind of hand gestures or
16  head nodding won't get picked up by the transcript.
17  Does that make sense?
18  A.   Yes.
19  Q.   So if you don't understand any of my
20  questions, please say so, and I'll try to rephrase,
21  or we can -- I can repeat it to see if that
22  clarifies the question.
23  A.   Okay.
24  Q.   Your attorney, Ms. Resch, may object to

Page 6

1   some of my questions.  You still need to answer
2   them unless she instructs you not to answer.  Does
3   that make sense?
4   A.   Yes.
5   Q.   Finally, we can take a break at any
6   point, but I would just ask that if I have a
7   question pending, that you answer the question
8   before we go on break.
9   A.   Okay.
10  Q.   Mr. Boshears, you attended high school,
11  correct?
12  A.   That's correct.
13  Q.   And you went to high school in Bedford,
14  Indiana?
15  A.   Yes.
16  Q.   And the name of that high school was
17  Bedford New Lawrence High School?
18  A.   North Lawrence.
19  Q.   North Lawrence.  So Bedford North
20  Lawrence High School?
21  A.   That's correct.
22  Q.   And you attended Bedford North Lawrence
23  High School between 1995 and 1998?
24  A.   1994 and 1998.

Page 7

1   Q.   Did you graduate in 1998?
2   A.   Yes.
3   Q.   Did you attend any other high schools?
4   A.   No.
5   Q.   Did you attend college?
6   A.   Yes.
7   Q.   Where did you attend college?
8   A.   Purdue University.
9   Q.   And what years did you attend Purdue?
10  A.   1998 through 2002.
11  Q.   Mr. Boshears, who are your lawyers in
12  this case?
13  A.   Turke & Strauss.
14  Q.   And who specifically at Turke & Strauss?
15  A.   My initial contact was with Sam Strauss.
16  Q.   Anyone else?
17  A.   No, not to my knowledge.
18  Q.   Ms. Resch is one of the other lawyers --
19  one of your other lawyers in this case, correct?
20  A.   Correct.
21  Q.   There are a number of other law firms
22  that are also representing you in this matter,
23  correct?
24       MR. PATTERSON:  Objection, form.

Page 8

1   BY THE WITNESS:
2   A.   Not to my knowledge.  I'm not aware.
3   BY MR. HALBIG:
4   Q.   Why did you hire lawyers for this case?
5   A.   I agreed to the case that they outlined.
6   Q.   And what was the case that they
7   outlined?
8        MS. RESCH:  Counsel, I'm going to object that
9   this deposition is limited in scope to the
10  arbitration questions and the Court's order.  And I
11  have allowed some leeway here to get into merits
12  questions, but I think we all know if you continue
13  into the merits questions, we get into waiver
14  territory, so let's stick to the issues at hand.
15       MR. HALBIG:  So unless you are objecting to
16  him not to answer a question, Ms. Resch, I'm going
17  to have Mr. Boshears answer the questions, and this
18  is going directly to the scope of his authority
19  that he gave to his lawyers.  So this is squarely
20  within what the Court authorized.
21       If you want to engage in these lengthy
22  types of objections throughout the deposition, we
23  are going to be here very long.  I'm trying to get
24  through this as quickly as possible, so if we can

Page 9

1  just proceed with this line of questioning, which,
2  again, is squarely within what the Court
3  authorized, that would be very much appreciated.  I
4  think that we would all like to make this as
5  efficient as possible.
6        So with that being said, the court
7  reporter can read back my question, and,
8  Mr. Boshears can answer, unless Ms. Resch is
9  instructing him not to answer.
10          (WHEREUPON, the record was read by
11           the reporter.)
12  BY THE WITNESS:
13      A.   They outlined the case of use of my
14  image that was not with my permission.
15  BY MR. HALBIG:
16      Q.   How did you find these lawyers?
17      A.   I received a letter from Turke &
18  Strauss.
19      Q.   Did you have any prior knowledge of
20  Turke & Strauss before you received that letter?
21      A.   I did not.
22      Q.   Any prior knowledge of Sam Strauss?
23      A.   No, I did not.
24      Q.   Any prior knowledge of anyone else at

Page 10

1  his firm?
2      A.   No, I did not.
3      Q.   And after receiving that letter, you
4  decided to retain those lawyers as your counsel?
5      A.   Yes, I did.
6      Q.   And what did you ask them to do?
7      MS. RESCH:  Objection.  I'm going to instruct
8  you not to reveal any communications that you had
9  with your counsel.  If you can answer otherwise, go
10  ahead, but if you can't, just say, I can't.
11  BY THE WITNESS:
12      A.   I can't.
13      MR. HALBIG:  Sorry.  Are you instructing the
14  witness not to answer that question?
15      MS. RESCH:  Can you repeat the question back?
16          (WHEREUPON, the record was read by
17           the reporter.)
18      MS. RESCH:  If you can clarify that question
19  and ask it a different way perhaps, but I think
20  that wades into attorney-client privilege.
21      MR. HALBIG:  Okay.  I'll come back to that
22  question.  I don't think that that is privileged,
23  but there is maybe an appropriate time to ask that
24  question later on in the deposition.

Page 11

1  BY MR. HALBIG:
2      Q.   What was your understanding of what your
3  lawyers would be doing for you in this case?
4      A.   Can you rephrase that?  I don't --
5      Q.   Well, you testified that you hired --
6  you retained your attorneys, correct?
7      A.   Correct.
8      Q.   And what was your expectation of what
9  your attorneys would be doing for you?
10      MS. RESCH:  Objection, form.  You can answer.
11  BY THE WITNESS:
12      A.   I'm sorry.  Can you repeat the question
13  one more time?
14      MR. HALBIG:  Can the court reporter repeat my
15  question?
16          (WHEREUPON, the record was read by
17           the reporter.)
18  BY THE WITNESS:
19      A.   That they would be reviewing any claim
20  pursuant to a class action lawsuit in federal
21  court.
22  BY MR. HALBIG:
23      Q.   And you said previously that the case
24  that they were putting together was the use of your

Page 12

1  image without your permission?
2      A.   That's correct.
3      Q.   So part of what they would be looking at
4  was reviewing the use of your image without your
5  permission?
6      MS. RESCH:  Objection, form.
7  BY THE WITNESS:
8      A.   I would assume that.  How they managed
9  to review the case was up to them.
10  BY MR. HALBIG:
11      Q.   And the use of your image, that was on
12  my client's website, Classmates.com, correct?
13      A.   Correct.
14      Q.   Prior to receiving the letter from
15  Mr. Strauss, had you heard of Classmates.com?
16      A.   I had not.
17      Q.   Have you ever visited Classmates.com?
18      A.   I have not.
19      Q.   How frequently -- sorry.  Strike that
20  question.
21        To the best of your recollection, when
22  was the letter that you received from Sam Strauss?
23  When did you receive that?
24      A.   To my best -- my recollection it was

Page 13

1   approximately two years ago.
2       Q.   Does October 2021 sound about right?
3       MS. RESCH:  Objection, form.
4   BY THE WITNESS:
5       A.   That sounds approximately correct.
6   BY MR. HALBIG:
7       Q.   Okay.  Since October 2021, approximately
8   how many times have you communicated with your
9   counsel?
10      A.   I don't know.
11      Q.   More than ten times?
12      A.   I don't have an exact number in front of
13  me.
14      Q.   How have you communicated with your
15  counsel?  And I mean, like, via phone, e-mail, the
16  like.
17      A.   Phone and e-mail.
18      Q.   In-person meetings?
19      A.   No.
20      Q.   Prior to today have you met any of your
21  counsel in person?
22      A.   No.
23      Q.   So phone and e-mail.  Any other methods
24  of communication with your counsel that you can

Page 14

1   recall?
2       A.   No.
3       Q.   How many phone calls do you think that
4   you have had with your counsel since October of
5   2021?
6       MS. RESCH:  Objection, form.
7   BY THE WITNESS:
8       A.   I can't provide you that number.
9   BY MR. HALBIG:
10      Q.   How frequently have you been talking
11  with your counsel over the phone?
12      A.   Maybe a couple times a year.
13      Q.   Do you think that you have had more than
14  five phone calls with your counsel total?
15      MS. RESCH:  Objection, form.
16  BY THE WITNESS:
17      A.   Yes.
18  BY MR. HALBIG:
19      Q.   More than ten phone calls?
20      MS. RESCH:  Objection, form.
21  BY THE WITNESS:
22      A.   I don't think so.
23  BY MR. HALBIG:
24      Q.   And who specifically has been involved

Page 15

1   in those phone calls with you?
2       A.   Sam Strauss and Brittany Resch.
3       Q.   Anyone else?
4       A.   Not that I can recollect.
5       Q.   And how many e-mails approximately do
6   you think that you have exchanged with your
7   counsel?
8       MS. RESCH:  Objection, form.
9   BY THE WITNESS:
10      A.   I would say somewhere between 10 and 20.
11  BY MR. HALBIG:
12      Q.   And who have those e-mails been with?
13      A.   Again, Sam Strauss and Brittany Resch.
14      Q.   What did you do to prepare for today's
15  deposition?
16      A.   I had a phone call with Sam and
17  Brittany.
18      Q.   When was that phone call?
19      A.   It was on Monday afternoon.
20      Q.   Approximately how long was that phone
21  call?
22      A.   Under an hour.
23      Q.   Was anyone else involved in that phone
24  call besides you, Sam, and Brittany?

Page 16

1       A.   Not that I know of.
2       Q.   And where were you when you had that
3   phone call?
4       A.   I was at my home.
5       Q.   Was there anyone else in the room with
6   you?
7       A.   No, there was not.
8       Q.   And going back to the phone calls, the
9   other phone calls that you have had, besides you,
10  Sam, and/or Brittany, was anyone else involved in
11  those phone calls?
12      MS. RESCH:  Objection to form.
13  BY THE WITNESS:
14      A.   Not to my knowledge.
15  BY MR. HALBIG:
16      Q.   And for each of those phone calls, was
17  anyone else in the room with you when you had those
18  phone calls?
19      A.   No.
20      MS. RESCH:  Objection to form.
21  BY MR. HALBIG:
22      Q.   Besides that phone call on Monday
23  afternoon, any other meetings that you had to
24  prepare for today's deposition?

Page 17

1    A.    No.
2    Q.    Did you review any documents to prepare
3  for today's deposition?
4    A.    Yes.
5    Q.    Which documents did you review?
6    A.    The discovery document.
7    Q.    Can you be more specific?
8    A.    That might not actually be the correct
9  term for it.  Maybe it was the complaint form.  I
10  don't -- I don't know the exact name.  I'm not a
11  lawyer.
12    Q.    Was it a copy of your claims against
13  PeopleConnect?
14    A.    Yes.
15    Q.    And did you review any e-mails?
16    A.    No.
17    Q.    Did Ms. Resch or Mr. Strauss send you
18  any documents that you previously didn't have to
19  prepare for today's deposition?
20    A.    No.
21    Q.    Have you spoken to anyone besides your
22  attorneys about today's deposition?
23    A.    My spouse.
24    Q.    And what did you discuss with your

Page 18

1  spouse about the deposition?
2    A.    Just a high-level overview and general
3  feelings of nervousness.  No details.
4    Q.    So you did not discuss any of the
5  substance of what you thought you would be --
6    A.    No.
7    Q.    -- testifying about?
8    A.    (Shaking head.)
9    Q.    Just as a reminder, to let me finish
10  asking my question before you begin answering.
11    A.    Sorry.
12    Q.    I know we can kind of get into this
13  pattern, but...
14        Mr. Boshears, you are aware that
15  PeopleConnect sent you some discovery requests in
16  this matter?
17    MS. RESCH:  Objection, form.
18  BY THE WITNESS:
19    A.    I'm not aware of that.
20  BY MR. HALBIG:
21    Q.    Are you aware that PeopleConnect asked
22  you to provide information?
23    A.    I'm not aware of that.
24    MR. HALBIG:  I'm going to introduce a document

Page 19

1  that I'll ask the court reporter to mark as
2  Defendant's Exhibit 1.
3        (WHEREUPON, a certain document was
4        marked Defendant's Deposition
5        Exhibit No. 1, for identification.)
6  BY MR. HALBIG:
7    Q.    Then, Mr. Boshears, if you could just
8  let me know when you have that in front of you.
9    A.    I have the document in front of me.
10    Q.    Mr. Boshears, do you recognize the
11  document that the court reporter has just placed in
12  front of you as Defendant's Exhibit 1?
13    A.    Yes.
14    Q.    What is it?
15    A.    I'm not a lawyer, so I could not tell
16  you the exact name of this document.
17    Q.    Do you see that there's some bold about
18  halfway through the page that says, Plaintiff John
19  Boshears' Answers and Objections to Defendant's
20  First Set of Interrogatories?
21    A.    Yes.
22    Q.    So you understand that these are your
23  responses to interrogatories?
24    A.    Yes.

Page 20

1    Q.    And you said that you have seen this
2  before.  When have you seen this?
3    A.    I believe Sam Strauss shared this with
4  me.
5    Q.    And if you go through -- there's a
6  series of objections on the first couple of pages,
7  but if you go to page 5, you'll see that there's a
8  bolded title that says Answers to Interrogatories?
9    A.    Yes.
10    Q.    Beginning with Interrogatory No. 1?
11    A.    I see that.
12    Q.    And you understand that these
13  interrogatories are questions that PeopleConnect is
14  posing to you?
15    A.    Yes, I recall answering these questions.
16    Q.    And then your answer is provided below
17  for each one?
18    A.    Uh-huh.
19    Q.    What did you do to answer these
20  interrogatories or questions that PeopleConnect
21  sent?
22    MS. RESCH:  Objection, form.
23  BY THE WITNESS:
24    A.    I think it probably depends on the

Page 21

1   question, how I research the answer.
2   BY MR. HALBIG:
3       Q.   But you provided information to your
4   counsel to answer these interrogatories?
5       A.   That's correct.
6       Q.   And who provided -- who prepared the
7   actual written responses in here, you or your
8   attorneys?
9       A.   My attorneys.
10      Q.   And then you verified that these
11  interrogatories were correct in the last page,
12  correct?
13      A.   That's correct.
14      Q.   And if you want to turn to the last page
15  of this document.  That is your signature on that
16  page that says, Verification, correct?
17      A.   Yes, that's correct.
18      Q.   So before these were submitted to
19  PeopleConnect, you reviewed all of the information
20  in this document and confirmed that it was correct?
21      A.   Yes.
22      Q.   You can set that one aside for now.  I'm
23  going to hand you another document that I'll have
24  the court reporter mark as Defendant's Exhibit 2.

Page 22

1            (WHEREUPON, a certain document was
2            marked Defendant's Deposition
3            Exhibit No. 2, for identification.)
4   BY MR. HALBIG:
5       Q.   Let me know when you have Exhibit 2 in
6   front of you.
7       A.   I have it in front of me.
8       Q.   So, Mr. Boshears, do you recognize the
9   document that is in front of you as Exhibit 2?
10      A.   Yes.
11      Q.   These are amended answers to the
12  interrogatories that we were just looking at,
13  correct?
14      A.   Yes.
15      Q.   And you have seen this document before?
16      A.   I have.
17      Q.   And when did you see it?
18      A.   I couldn't provide an exact date.
19      Q.   You reviewed these amended answers
20  before they were provided to PeopleConnect?
21      A.   Yes.
22      Q.   And if you look at the last page of this
23  document, there's also a verification that you
24  signed?

Page 23

1       A.   Yes, I see that.
2       Q.   So you verified all of the information
3   in this amended answer document before it was
4   submitted to PeopleConnect?
5       A.   That's correct.
6       Q.   Your attorneys prepared the written
7   responses to these amended answers as well?
8       A.   Yes.
9       Q.   And that was based on information that
10  you had provided to them?
11      A.   Correct.
12      Q.   Mr. Boshears, if you could turn to
13  page 8 of this document.  Do you see about midway
14  through the page on page 8, there's an
15  Interrogatory No. 5?
16      A.   Yes.
17      Q.   And that interrogatory asks you to
18  identify each of your attorneys?
19      A.   I see that.
20      Q.   You previously testified that Turke &
21  Strauss is the firm that you are aware of that is
22  representing you in this matter, right?
23      A.   That's correct.
24      Q.   If you look at your responses beginning

Page 24

1   on line 24 here.  Can you just read me that line
2   beginning on line 24 that says, Subject to and
3   without waiving?
4       A.   Subject to and without waiving these
5   objections, Plaintiff is represented by attorneys
6   at the law firms of Turke & Strauss LLP, Bursor &
7   Fisher P.A., Edelson PC, Morgan & Morgan, and the
8   Law Office of Benjamin R. Osborn.
9       Q.   So there are more law firms than just
10  Turke & Strauss that are representing you in this
11  matter, right?
12      A.   It appears so.
13      Q.   And you verified that the response to
14  this interrogatory was true and correct before you
15  submitted it, right?
16      A.   Correct.
17      Q.   Okay.  You can set that exhibit aside.
18           I'm going to hand you another document
19  that I'll have introduced as Defendant's Exhibit
20  No. 3, and let me know when you have that in front
21  of you.
22           (WHEREUPON, a certain document was
23           marked Defendant's Deposition
24           Exhibit No. 3, for identification.)

Page 25

1    BY THE WITNESS:
2        A.   I have it in front of me.
3    BY MR. HALBIG:
4        Q.   Mr. Boshears, do you recognize the
5    document that has been placed in front of you as
6    Defendant's Exhibit 3?
7        A.   I do.
8        Q.   And you have seen this before?
9        A.   Yes.
10       Q.   These are your responses to defendant's
11   first set of requests for production?
12       A.   Okay.
13       Q.   Correct?
14       A.   Yes.
15       Q.   And if you go to page 7, about
16   three-quarters of the page down, you see a heading
17   that says, Responses to Requests for Production?
18       A.   Yes.
19       Q.   And beginning with Request No. 1?
20       A.   I see that.
21       Q.   And you understand that those requests
22   are asking you to produce certain documents to
23   PeopleConnect?
24       MS. RESCH:  Objection, form.

Page 26

1    BY THE WITNESS:
2        A.   I understand the request.
3    BY MR. HALBIG:
4        Q.   Did you search for documents in response
5    to these requests?
6        A.   Can you rephrase that, please?
7        Q.   So if you look at the requests beginning
8    on Page No. 1 -- or, sorry, Page No. 7, rather,
9    beginning with Request No. 1, and on the sequential
10   pages you see that there's a number of requests in
11   bold with your responses to each.
12           My question to you is, did you search
13   for documents in response to these requests?
14       MS. RESCH:  Objection to form.
15   BY THE WITNESS:
16       A.   I reviewed the correspondences and my
17   e-mail.
18   BY MR. HALBIG:
19       Q.   So I don't think that I got an answer to
20   my question.  Did you search for documents in
21   response to these requests?
22       A.   Yes.
23       Q.   And then what did you do to search for
24   documents in these requests?

Page 27

1        A.   I searched through my e-mail.
2        Q.   Any other places that you searched?
3        A.   All my documents I have been sent via
4    e-mail.
5        Q.   Did you provide any documents to your
6    counsel?
7        A.   No.  They had all of the documents.
8        Q.   So can you explain what you mean by
9    that, they had all of the documents?
10       A.   They have produced all of these
11   documents.  I didn't -- I have produced none of
12   them.
13       Q.   Did you review the production that your
14   counsel made on your behalf?
15       A.   I have reviewed the documents that sit
16   in front of me.
17       Q.   Sorry.  I just did not hear that answer.
18       A.   I reviewed the documents Turke & Strauss
19   have prepared on my behalf, yes.
20       Q.   So did you -- did you review the
21   specific documents that Turke & Strauss provided to
22   my client?  Do you know which documents Turke &
23   Strauss provided to my client?
24       MS. RESCH:  Objection, form.

Page 28

1    BY THE WITNESS:
2        A.   I'm not aware of the document that you
3    are referring to.
4    BY MR. HALBIG:
5        Q.   So is it your testimony that you are not
6    aware of the specific documents that Turke &
7    Strauss produced to PeopleConnect on your behalf in
8    this matter?
9        MS. RESCH:  Objection to form.
10   BY THE WITNESS:
11       A.   I'm aware of the documents that I have
12   reviewed and signed.
13   BY MR. HALBIG:
14       Q.   I want to go back to Defendant's
15   Exhibit 2 for just a moment, so you can set
16   Exhibit 3 aside.  And if you would not mind going
17   to page 5 of Exhibit 2, Interrogatory No. 1.
18       A.   Okay.
19       Q.   You see that Interrogatory No. 1 is
20   asking you to identify every e-mail address that
21   you have used at any point in time?
22       A.   That's correct.
23       Q.   And these are the -- if you look at --
24   beginning at line 21, you list out several

Page 29

1  different e-mail addresses?
2      A.   I see that.
3      Q.   Besides the e-mail addresses listed on
4  this page, are there any other e-mail addresses
5  that you have ever used at any point in time?
6      MS. RESCH:  Objection, form.
7  BY THE WITNESS:
8      A.   No.
9  BY MR. HALBIG:
10     Q.   And on line 24, do you see that there's
11 a jbosh@perdue, p-e-r-d-u-e, .edu?
12     A.   Yes, I do.
13     Q.   Is that the correct spelling?
14     A.   No, it is not.
15     Q.   Would that be -- would the correct
16 spelling be jbosh@p-u-r-d-u-e.edu?
17     A.   That would be correct.
18     Q.   And on line 27, I just wanted to confirm
19 that that john.boshears@alumni.purdue.edu, that is
20 the correct spelling?
21     A.   Yeah, it is.
22     Q.   So to the best of your recollection,
23 there's no other e-mail addresses that you have
24 ever used besides the ones that are listed here?

Page 30

1      A.   No.
2      Q.   You can set that one aside.  I'm going
3  to hand you another document that I'll ask the
4  court reporter to mark as Defendant's Exhibit 4.
5          (WHEREUPON, a certain document was
6           marked Defendant's Deposition
7           Exhibit No. 4, for identification.)
8  BY MR. HALBIG:
9      Q.   Mr. Boshears, do you have Exhibit 4 in
10 front of you?
11     A.   I do.
12     Q.   Do you recognize this document?
13     A.   I do.
14     Q.   You understand that these are your
15 answers and objections to defendant's first set of
16 requests for admission to you?
17     A.   I do.
18     Q.   And you have seen this before today?
19     A.   That's correct.
20     Q.   When did you see it?
21     A.   I couldn't provide an exact date.
22     Q.   Did you see it before the document was
23 submitted to PeopleConnect?
24     A.   I did.

Page 31

1      Q.   And if you go to page 7 of this
2  document, you'll see that, starting on the bottom
3  of page 7, and on the pages that follow
4  sequentially, there are some questions posed by
5  PeopleConnect to you?
6      A.   I see that.
7      Q.   And those questions are asking you to
8  admit certain things?
9      A.   I see that.
10     Q.   What did you do to prepare your
11 responses to these requests to admit?
12     A.   I received counsel from Sam Strauss.
13     Q.   So who prepared your responses to these
14 admissions, you or your attorney?
15     A.   My attorneys.
16     Q.   Did you provide information to your
17 attorneys on how to answer these requests to admit?
18     A.   Can you rephrase that, please?
19     Q.   What input did you provide for -- to
20 your counsel for how to respond to these requests
21 to admit -- for admission?
22     MS. RESCH:  You are not to reveal
23 communications that you have had between your
24 lawyers.

Page 32

1  BY THE WITNESS:
2      A.   I can't answer the question.
3  BY MR. HALBIG:
4      Q.   So I'm asking you to identify what facts
5  you provided to respond to these?
6      MS. RESCH:  Do you want him to go line by
7  line?
8  BY MR. HALBIG:
9      Q.   Just generally, did you provide -- did
10 you provide facts to your attorney to respond to
11 these requests for production?
12     MS. RESCH:  Objection, form.
13 BY THE WITNESS:
14     A.   I feel like it's hard to make a general
15 answer for all of the requests.
16 BY MR. HALBIG:
17     Q.   Did you provide any facts to your
18 attorneys for the responses to these requests to
19 admit?
20     MS. RESCH:  Objection, form.
21 BY THE WITNESS:
22     A.   I don't know the answer to that
23 question.
24

Page 33

1  BY MR. HALBIG:

2     Q.   So sitting here and reviewing these

3  documents, there's not any -- you can't say one way

4  or the other if you provided any facts to respond

5  to these requests to admit?

6     MS. RESCH:  Objection, form.

7  BY THE WITNESS:

8     A.   I provided input to the responses based

9  on counsel.

10  BY MR. HALBIG:

11     Q.   Okay.  What input did you provide?

12     MS. RESCH:  Objection to form.

13  BY THE WITNESS:

14     A.   I can't recollect at this time.

15  BY MR. HALBIG:

16     Q.   So did you review each of the responses

17  to these requests to admit before they were

18  submitted?

19     A.   Yes.

20     Q.   Did you verify that your responses were

21  accurate and true?

22     MS. RESCH:  Objection, form.

23  BY THE WITNESS:

24     A.   To my knowledge, I did.

Page 34

1  BY MR. HALBIG:

2     Q.   You can set that exhibit aside for now.

3  I'll be coming back to those through the day, so

4  you can just keep them there.

5        You said before that you haven't visited

6  Classmates.com, right?

7     A.   That's correct.

8     Q.   Do you know anyone besides your

9  attorneys that have visited Classmates.com?

10     A.   I'm not aware of it.

11     MS. RESCH:  Objection, form.

12  BY MR. HALBIG:

13     Q.   Besides your discussions with your

14  counsel, have you ever talked about Classmates.com

15  with anyone else?

16     A.   I have not.

17     Q.   Mr. Boshears, do you understand that you

18  are attempting to serve as a class representative?

19     A.   I do.

20     Q.   And you understand that there are

21  certain responsibilities and obligations in serving

22  as a class representative?

23     A.   I am.

24     MS. RESCH:  Counsel, again, object.  This is

Page 35

1  wading into merits testimony, and he will have

2  another opportunity to be deposed.  This is based

3  on the limited scope of discovery at this point.

4     MR. HALBIG:  So, again, unless you are

5  instructing Mr. Boshears not to answer, he's going

6  to have to answer the questions, and this is

7  foundational for whether he gave his counsel

8  authority or ratified his counsel's actions.  So

9  this is squarely permissible.

10        If you want to engage in these lengthy

11  types of meritless objections, we can do that.  I'm

12  happy to be here all day, but, again, unless you

13  are instructing him not to answer, this is sort of

14  not a productive exercise.  So I'm going to ask the

15  court reporter to re-read my question and then

16  Mr. Boshears can answer it.

17     MS. RESCH:  I believe he did answer.  Right?

18     THE WITNESS:  I believe so.

19     MR. HALBIG:  Can you read --

20        (WHEREUPON, the record was read by

21        the reporter.)

22  BY MR. HALBIG:

23     Q.   Sorry.  The question that I had is, what

24  is your understanding of what the responsibilities

Page 36

1  and obligations of serving as a class

2  representative are?  So that is the question.

3     A.   I understand.  The responsibilities were

4  reviewed with me, and I can't recollect all of

5  them.  I'm not a lawyer.

6     Q.   Do you understand that one of your

7  responsibilities is acting in the interest of the

8  class?

9     A.   I do.

10     Q.   And another one of your responsibilities

11  is staying up to date on the progress of the case?

12     A.   I am.

13     Q.   And another one of those

14  responsibilities is reviewing materials that your

15  counsel prepares and submits to the Court on your

16  behalf?

17     A.   Correct.

18     Q.   And you signed an agreement with your

19  counsel acknowledging those duties, right?

20     A.   That's correct.

21     MR. HALBIG:  I'm going to hand another

22  document to the court reporter that I'll ask to

23  have marked as Defendant's Exhibit 5.

24

Page 37

1        (WHEREUPON, a certain document was
2    marked Defendant's Deposition
3        Exhibit No. 5, for identification.)
4    BY MR. HALBIG:
5        Q.    Mr. Boshears, do you recognize the
6    document that has been placed in front of you as
7    Exhibit 5?
8        A.    I do.
9        Q.    And what is this?
10       A.    This is the class representative
11   agreement.
12       Q.    And this agreement was signed by you,
13   correct?
14       A.    That's correct.
15       Q.    And your signature is on what is marked
16   as page 5 here?
17       A.    That's correct.
18       Q.    And it was also signed by Sam Strauss?
19       A.    I see that, yes.
20       Q.    Again, on page 5 -- and it was signed
21   by, on page 6, Michael Ram?
22       A.    Yes.
23       Q.    And it was also signed by Benjamin
24   Osborn?

Page 38

1        A.    That's correct.
2        Q.    And you understand that this is an
3    agreement between you and your attorneys?
4        A.    I do.
5        Q.    And those attorneys are Sam Strauss,
6    Michael Ram, and Benjamin Osborn, correct?
7        A.    That's correct.
8        Q.    And then if you want to turn to page 8,
9    the last page of Exhibit 5.  Let me know when you
10   are there.
11       A.    I am.
12       Q.    These outline some of the duties that we
13   were just discussing in serving as a class
14   representative, correct?
15       A.    That's correct.
16       Q.    And at the bottom, you stated that you
17   had reviewed, acknowledge, and agree to perform
18   those duties?
19       A.    That's correct.
20       Q.    And if you would not mind just taking a
21   look at Duty No. 4 listed out here.
22       A.    I see that.
23       Q.    And that duty required you to keep
24   generally aware of the status and progress of the

Page 39

1    lawsuit --
2        A.    That's correct.
3        Q.    -- as we discussed?
4        Again, if you would not mind just
5    letting me answer -- finish asking my question
6    before you begin to answer, I would appreciate it.
7        If you would not mind taking a look at
8    Duty No. 6.
9        A.    Okay.
10       Q.    And you see that that duty required you
11   to be interested on a continuous basis in the
12   progress of the lawsuit?
13       MS. RESCH:  Objection, form.
14   BY MR. HALBIG:
15       Q.    Correct?
16       A.    That's correct.  I see No. 6.
17       Q.    Okay.  You can set that aside for now.
18       So as we -- as you just testified, part
19   of your responsibilities as a class representative
20   included staying up to date with materials filed
21   with the Court, right?
22       A.    That's correct.
23       Q.    And that includes materials that the
24   Court files -- sorry -- that your lawyer -- let me

Page 40

1    rephrase that question.
2        That includes staying up to date with
3    materials that your lawyers filed on your behalf,
4    right?
5        MS. RESCH:  Objection, form.
6    BY THE WITNESS:
7        A.    That's correct.
8    BY MR. HALBIG:
9        Q.    And also staying up to date with court
10   orders?
11       MS. RESCH:  Objection, form.
12   BY THE WITNESS:
13       A.    That's correct.
14   BY MR. HALBIG:
15       Q.    And also materials that my client,
16   PeopleConnect, files?
17       MS. RESCH:  Objection, form.
18   BY THE WITNESS:
19       A.    That's correct.
20   BY MR. HALBIG:
21       Q.    And you fulfilled those responsibilities
22   to date, correct?
23       A.    To the best of my knowledge.
24       Q.    So you have reviewed materials that have

Page 41

1 been filed with the Court in this case?

2    A.   Yes.

3    Q.   Do you remember which specific ones you

4 have reviewed?

5    A.   I have reviewed all of the documents

6 that my counsel provided to me.

7    Q.   Do you know -- can you recall what

8 specific documents those were?

9    A.   I cannot recollect the specific

10 documents.

11   Q.   Do you know approximately how many court

12 filings your counsel has shared with you?

13   MS. RESCH:  Objection to form.

14 BY THE WITNESS:

15   A.   I can't recollect the exact number.

16 BY MR. HALBIG:

17   Q.   But to the best of your knowledge, you

18 are staying up to date on the documents that are

19 being filed with the Court?

20   A.   I believe so.

21   Q.   Are you aware of any documents filed

22 with the Court that you have not reviewed?

23   MS. RESCH:  Objection, form.

24

Page 42

1 BY THE WITNESS:

2    A.   Not to my knowledge.

3 BY MR. HALBIG:

4    Q.   Have you asked for particular documents

5 from your counsel in terms of court filings?  Have

6 you asked your counsel to provide that to you?

7    MS. RESCH:  Objection to form.  I'm going to

8 instruct you not to reveal the communications that

9 you have had with your lawyers.

10   THE WITNESS:  So do I answer the question?

11   MS. RESCH:  You can answer, if you can.

12 BY THE WITNESS:

13   A.   Can you rephrase the question one more

14 time, please?

15 BY MR. HALBIG:

16   Q.   Have you asked your counsel to provide

17 you with any specific documents?

18   A.   No.  I have relied on them to provide

19 the documents to me.

20   Q.   Okay.  Mr. Boshears, I want to talk to

21 you about the specific communications you have had

22 with your lawyers in this case.  You testified

23 earlier that the first interaction that you had was

24 a letter that you received from Mr. Strauss?

Page 43

1    A.   To the best of my recollection, that is

2 correct.

3    Q.   And that letter was sent to you how?

4    A.   U.S. Postal Service, I believe.

5    Q.   Do you have any understanding of how

6 Mr. Strauss found you?

7    A.   I am not aware.

8    Q.   So you didn't see any sort of

9 advertisements for this lawsuit or anything like

10 that?

11   A.   I did not.

12   Q.   I hand you another document that I'll

13 ask the court reporter to mark as Defendant's

14 Exhibit 6.

15        (WHEREUPON, a certain document was

16        marked Defendant's Deposition

17        Exhibit No. 6, for identification.)

18 BY MR. HALBIG:

19   Q.   Mr. Boshears, do you have Exhibit 6 in

20 front of you?

21   A.   I do.

22   Q.   Do you recognize this document?

23   A.   I do.

24   Q.   What is it?

Page 44

1    A.   It's the initial solicitation that I

2 received.

3    Q.   And this is the letter that Mr. Strauss

4 sent you that you were just testifying about?

5    A.   That is correct.

6    Q.   What is the date of this letter?

7    A.   October 11, 2021.

8    Q.   If you want to take a moment to just

9 review this document and let me know when you are

10 done.

11   A.   I have read the document.

12   Q.   So this letter was the first instance in

13 which you became aware of Classmates.com?

14   A.   That is correct.

15   Q.   So prior to receiving this letter, you

16 had no idea what that website was or that that

17 website existed?

18   A.   I did not.

19   Q.   In the first paragraph, the last

20 sentence, you see that Mr. Strauss writes, We

21 believe Classmates' Yearbook Collection contains

22 information related to former students of Bedford

23 North Lawrence High School?

24   A.   I see that.

Page 45

1    Q.   Based on this letter, you did not know
2  what that information was, correct?
3    A.   I did not.
4    Q.   And you also did not know whether the
5  information on Classmates.com included your
6  information?
7    MS. RESCH:  Objection, form.
8  BY THE WITNESS:
9    A.   I was not aware of the extent, that's
10 correct.
11 BY MR. HALBIG:
12   Q.   What did you do after receiving this
13 letter?
14   MS. RESCH:  Objection to form.
15 BY THE WITNESS:
16   A.   I spoke with Sam Strauss about the
17 letter.
18 BY MR. HALBIG:
19   Q.   And how did you speak with Mr. Strauss?
20   A.   Telephone.
21   Q.   Did you e-mail him before you had a
22 telephone call?
23   A.   I might have.  I don't recollect.
24   Q.   But you reached out to Mr. Strauss?

Page 46

1    A.   That's correct.
2    Q.   And why did you reach out to
3  Mr. Strauss?
4    A.   He made a compelling case in his letter
5  that I had an agreement with.
6    Q.   And what was that compelling case that
7  you had an agreement with?
8    MS. RESCH:  Objection to form.
9  BY THE WITNESS:
10   A.   I was concerned with the overuse of
11 personal information.
12 BY MR. HALBIG:
13   Q.   But you didn't know whether your
14 personal information was actually being used, based
15 on this letter, right?
16   A.   Not at this time, no.
17   MR. HALBIG:  We have been going for about an
18 hour, so why don't we take a five-minute break.
19   THE VIDEOGRAPHER:  The time is 10:00 a.m., and
20 we are going off the record.
21     (WHEREUPON, a recess was had.)
22   THE VIDEOGRAPHER:  The time is 10:14 a.m., and
23 we are back on the record.
24

Page 47

1  BY MR. HALBIG:
2    Q.   Mr. Boshears, before the break we were
3  looking at the letter that Mr. Strauss had sent to
4  you, which was Exhibit 6, and then you testified
5  that you reached out to him after you received that
6  letter?
7    A.   Yes.
8    Q.   And that based on his letter, you agreed
9  with his case but did not know whether your
10 personal information actually appeared on the
11 Classmates website?
12   A.   That's correct.
13   Q.   I'm going to hand you another document
14 that I'll have marked as Defendant's Exhibit 7.
15     (WHEREUPON, a certain document was
16     marked Defendant's Deposition
17     Exhibit No. 7, for identification.)
18 BY MR. HALBIG:
19   Q.   Mr. Boshears, do you have Defendant's
20 Exhibit 7 in front of you?
21   A.   I do.
22   Q.   And you see this is a series of e-mail
23 exchanges between you and Mr. Strauss?
24   A.   That's correct.

Page 48

1    Q.   And just to sort of orient you to this
2  document, it's in reverse chronological order, so
3  the first in time e-mail is at the end of the
4  document and the most recent e-mail is at the
5  beginning of the document.
6     So if you would not mind going to the
7  end of this document and looking at the first
8  e-mail there, and let me know when you are there.
9    A.   I'm there.
10   Q.   So you see that the first e-mail in the
11 document is an e-mail that you sent to Mr. Strauss
12 on October 18, 2021, at 7:59 a.m.?
13   A.   I see that.
14   Q.   And was this e-mail the first
15 interaction that you had with Mr. Strauss after he
16 sent you that letter?
17   A.   Yes, it is.
18   Q.   And you said in that e-mail response
19 that you had received Mr. Strauss' letter regarding
20 the Classmates privacy class action investigation?
21   A.   That is correct.
22   Q.   And at that point in time, you had no
23 knowledge about what that privacy class action
24 investigation entailed besides the information that

Page 49

1   was in Mr. Strauss' letter, which we looked at as
2   Defendant's Exhibit 6, correct?
3       A.   That is correct.
4       Q.   And then Mr. Strauss responded to you at
5   9:16 a.m., correct?
6       MS. RESCH:  Objection, form.
7   BY THE WITNESS:
8       A.   I see that.
9   BY MR. HALBIG:
10      Q.   And Mr. Strauss asked you for a
11  telephone call?
12      A.   That's correct.
13      Q.   And the next response from you -- I
14  think this may be different time zones -- I think
15  is at 8:19 a.m.  You said that you -- we can
16  arrange a time for a phone call and that you were
17  free for the next 30 minutes?
18      A.   I see that.
19      Q.   Then Mr. Strauss responded at 9:28 a.m.?
20      MS. RESCH:  Objection to form.
21  BY THE WITNESS:
22      A.   That is correct.  I see that.
23  BY MR. HALBIG:
24      Q.   And then the e-mail at the top,

Page 50

1   October 18, 2021, at 9:42 a.m., Mr. Strauss
2   responds, Thanks again for speaking with me today?
3       A.   I see that.
4       Q.   So in between the e-mail that was sent
5   at 8:30 a.m. and the one at 9:42 a.m., you
6   understand that you had a telephone call with
7   Mr. Strauss?
8       A.   I did.
9       Q.   And during that telephone call, you
10  discussed his investigation of the Classmates.com
11  website?
12      A.   That is correct.
13      Q.   What did you discuss with Mr. Strauss
14  about the investigation of the Classmates.com
15  website?
16      MS. RESCH:  I'm going to instruct you not to
17  reveal any communications that you have had with
18  your counsel.
19  BY THE WITNESS:
20      A.   I can't answer that question.
21      MR. HALBIG:  Brittany, what is the basis of
22  your objection?
23      MS. RESCH:  That it is a privileged
24  communication.  We were ordered by the Court to

Page 51

1   produce this e-mail, so you can ask about things
2   that are in this e-mail.
3       MR. HALBIG:  So, first of all, I want to make
4   a couple points for the record.  That not all
5   communications with counsel are privileged.  Facts
6   are not privileged.  The attorney-client privilege
7   only protects communications that are made
8   requesting or providing legal advice.
9       So what I'm asking about has nothing to
10  do with legal advice.  It's factual information
11  about the investigation.  And even if there was
12  some privilege that applied, the Court already
13  ordered that discussions with Mr. Boshears about
14  the investigation, Mr. Boshears has waived
15  privilege as to.
16      So I can read into the record Judge
17  Pechman's ruling on this exact issue, but I would
18  strongly encourage you to reconsider your
19  instruction because if you are going to continue to
20  insist on this, we are going to certify the
21  question, we'll bring it to the Court's attention,
22  and then we'll have Mr. Boshears come right back
23  here, retake the deposition, and we'll be asking
24  for our costs.

Page 52

1       So if you want to take a break and
2   reconsider your objection to this question, we can
3   do that, but this is squarely within what the Court
4   already ordered that Mr. Boshears waived privilege
5   as to, so --
6       MS. RESCH:  Can you re-read the question,
7   please.
8       (WHEREUPON, the record was read by
9       the reporter.)
10      MS. RESCH:  I think you can reask that
11  question in a way that is limited in time and
12  context, and then we can see.  That question, as
13  it's phrased, is too broad and could possibly lead
14  into attorney-client privileged communications.
15      MR. HALBIG:  Okay.  Do you want to go off the
16  record for a second?
17      MS. RESCH:  Sure.
18      THE VIDEOGRAPHER:  The time is 10:22 a.m.  We
19  are going off the record.
20      (WHEREUPON, discussion was had off
21      the record.)
22      THE VIDEOGRAPHER:  The time is 10:23 a.m., and
23  we are back on the record.
24

Page 53

1 BY MR. HALBIG:
2    Q.    Mr. Boshears, what did Mr. Strauss tell
3 you on this telephone call on October 18, 2021,
4 about his firm's investigation of the Classmates
5 website?
6    A.    To the best of my recollection, he
7 outlined Turke & Strauss' case and gave me a
8 high-level overview of the Classmates website and
9 its business practices.
10    Q.    So Mr. Strauss explained to you how the
11 Classmates website works?
12    A.    That is correct.
13    Q.    And what did he tell you about how the
14 Classmates website works?
15    A.    He gave me some broad information about
16 how it used high school yearbook photographs to
17 sell subscriptions to a social media-like platform.
18    Q.    Did Mr. Strauss tell you if your
19 personal information appeared on Classmates'
20 website?
21    MS. RESCH:  Objection, form.
22 BY THE WITNESS:
23    A.    I don't recall.
24

Page 54

1 BY MR. HALBIG:
2    Q.    Mr. Boshears, do you think that you
3 could proceed as a plaintiff in this case if your
4 information did not appear on the Classmates
5 website?
6    MS. RESCH:  Objection, form.
7 BY THE WITNESS:
8    A.    As a non-lawyer, I don't think that I
9 can answer that question.
10 BY MR. HALBIG:
11    Q.    So you understand that you -- your
12 claims in this case are that PeopleConnect, my
13 client, uses your personal information without your
14 consent on the Classmates.com website, right?
15    A.    That is correct.
16    Q.    So you would not have a claim though if
17 your information was not on the website at all,
18 right?
19    MS. RESCH:  Objection, form.
20 BY THE WITNESS:
21    A.    That seems reasonable, yes.
22 BY MR. HALBIG:
23    Q.    So after the -- during the phone call
24 with Mr. Strauss, did that make you want to proceed

Page 55

1 with potentially appearing as a plaintiff in this
2 case, based on the information that he provided to
3 you?
4    A.    I believe so.
5    Q.    Did you -- did you discuss with
6 Mr. Strauss having him confirm whether you actually
7 appeared on the Classmates website --
8    MS. RESCH:  Objection to form.
9 BY MR. HALBIG:
10    Q.    -- during your phone call with him?
11    A.    I don't believe we discussed that on the
12 phone call.
13    Q.    What were the next steps that you
14 discussed with Mr. Strauss on the phone call?  He
15 gave you information about the investigation, and
16 what was your understanding of the next steps?
17    MS. RESCH:  Objection, form.  Can you reask
18 that to be one question?
19 BY MR. HALBIG:
20    Q.    Yeah.  What was your understanding of
21 the next steps after your phone call with
22 Mr. Strauss?
23    A.    I don't recollect what my thoughts were
24 at that time.

Page 56

1    Q.    It's your understanding that you would
2 have to have someone check the website to make sure
3 you actually -- your information actually appeared
4 on there, right?
5    MS. RESCH:  Objection to form.
6 BY THE WITNESS:
7    A.    I would assume so.
8 BY MR. HALBIG:
9    Q.    And if you'd go back to the e-mail chain
10 that we were just looking at, the top e-mail which
11 is Defendant's Exhibit 7.
12    A.    I have that in front of me.
13    Q.    You see in Mr. Strauss' 9:42 a.m. e-mail
14 to you, he writes, Attached please find your high
15 school screenshots that are currently published on
16 the Classmates.com website?
17    A.    I see that.
18    Q.    And do you see at the top, this e-mail
19 indicates that there's some attachments to
20 Mr. Strauss' e-mail?
21    A.    That's correct.  I see those
22 attachments.
23    Q.    And you understand that Mr. Strauss --
24 the screenshots that Mr. Strauss sent you were from

Page 57

1  the Classmates.com website?

2      A.    That was my understanding.

3      Q.    So you understand that someone went on

4  the Classmates website to get those screenshots?

5      MS. RESCH:  Objection to form.

6  BY THE WITNESS:

7      A.    That is the only way they could have

8  been collected.

9  BY MR. HALBIG:

10     Q.    Did you give permission to Mr. Strauss

11 to get those screenshots from the Classmates

12 website?

13     A.    I didn't direct anyone to collect these

14 images.

15     Q.    But you didn't have any objection to him

16 collecting those images, correct?

17     MS. RESCH:  Objection to form.

18 BY THE WITNESS:

19     A.    I wasn't consulted in the collection.

20 BY MR. HALBIG:

21     Q.    Did you tell Mr. Strauss that he

22 shouldn't be using any information that he or his

23 firm got from the Classmates website?

24     MS. RESCH:  Objection, form.

Page 58

1  BY THE WITNESS:

2      A.    I told Mr. Strauss he could review the

3  information with regards to pursuing a federal

4  lawsuit.

5  BY MR. HALBIG:

6      Q.    So he could use those images and use

7  them in support of your claim?

8      MS. RESCH:  Objection, form.

9  BY THE WITNESS:

10     A.    I did tell him that.

11 BY MR. HALBIG:

12     Q.    I'm going to hand you -- I guess we are

13 on Exhibit 8, so this will be -- the next document

14 that I will hand you is Defendant's Exhibit 8.

15         (WHEREUPON, a certain document was

16          marked Defendant's Deposition

17          Exhibit No. 8, for identification.)

18 BY MR. HALBIG:

19     Q.    Mr. Strauss, do you have -- sorry.

20         Mr. Boshears, do you have the document

21 that is marked as Defendant's Exhibit 8 in front of

22 you?

23     A.    I do.

24     Q.    Do you recognize what this exhibit is?

Page 59

1      A.    Those are photographs of my high school

2  yearbooks.

3      Q.    Are these the screenshots that

4  Mr. Strauss sent to you as the attachments to the

5  October 18, 2021, 9:42 a.m. e-mail?

6      A.    Yes, they are.

7      Q.    And when Mr. Strauss sent you those

8  screenshots, you reviewed those?

9      A.    That is correct.

10     Q.    And you confirmed that those were your

11 high school yearbook photographs for him?

12     A.    That is correct.

13     Q.    I'm going to hand another document to

14 you, which is -- will be Defendant's Exhibit 9.

15         (WHEREUPON, a certain document was

16          marked Defendant's Deposition

17          Exhibit No. 9, for identification.)

18 BY MR. HALBIG:

19     Q.    And just take a second to review

20 Exhibit 9 and let me know when you are done.

21     A.    Okay.

22     Q.    Do you see that Exhibit 9 is a

23 continuation of the other earlier e-mail chain that

24 we were looking at as Defendant's Exhibit 7?

Page 60

1      A.    Yes, that is correct.

2      Q.    So as you just testified, that e-mail

3  chain shows that you confirmed that those were your

4  high school yearbooks, right?

5      A.    That is correct.

6      Q.    And then Mr. Strauss asks you about your

7  potential willingness to serve as a class

8  representative in this case, right?

9      A.    Yes, I see that.

10     Q.    So Mr. Strauss had asked you to confirm

11 that the screenshots were your photos before he

12 asked you to serve as a class representative?

13     MS. RESCH:  Objection, form.

14 BY THE WITNESS:

15     A.    I can't recall the exact order of those

16 two events.

17 BY MR. HALBIG:

18     Q.    Well, I mean, it's reflected in this

19 e-mail chain, isn't it?

20     A.    Within the e-mail, it is, yes.

21     Q.    And as you testified before, you had to

22 confirm that you actually appeared on the

23 Classmates website -- your information appeared on

24 the Classmates website in order to serve as a

Page 61

1  plaintiff in this case?
2      MS. RESCH:  Objection, form.
3  BY THE WITNESS:
4      A.   I provided -- I relied on the
5  information provided by Turke & Strauss, and I did
6  not verify their claims independently.
7  BY MR. HALBIG:
8      Q.   But you could not have served as a
9  plaintiff in a lawsuit alleging unauthorized use of
10  your photograph on the Classmates website if your
11  photograph didn't appear there at all?
12     MS. RESCH:  Objection, form.
13  BY THE WITNESS:
14     A.   I would agree.  Mr. Strauss informed me
15  that they were being used.
16  BY MR. HALBIG:
17     Q.   And you yourself confirmed that the
18  photographs that he provided to you were, in fact,
19  your photographs?
20     A.   That's correct.  I verified the images
21  on the screenshots.
22     Q.   At any point in time, did you ask
23  Mr. Strauss how the screenshots had been obtained?
24     MS. RESCH:  Objection, form.  I think we dealt

Page 62

1  with this issue in the Loendorf deposition, but if
2  you ask that question differently, he can answer
3  it.
4      MR. HALBIG:  I think what I'm asking him is a
5  yes or no question.  It's not getting into
6  privileged advice, so I think that is --
7      MS. RESCH:  Well, I think you can ask it
8  more -- you can ask if anyone and you would get the
9  same answer, and that was the agreement that we
10  came to in the other case and that would avoid
11  additional privilege objections.
12     MR. HALBIG:  Brittany, I don't think that we
13  are getting into anything that is privileged, but
14  if it will help expedite here, I can ask that
15  question differently.
16  BY MR. HALBIG:
17     Q.   Mr. Boshears, did anyone tell you how
18  the screenshots that Mr. Strauss sent you were
19  obtained?
20     A.   I don't believe so.
21     Q.   Did you ask how the screenshots were
22  obtained?
23     A.   I did not.
24     Q.   Why not?

Page 63

1      A.   It was not an issue that I was concerned
2  with.
3      Q.   But, at a minimum, you knew that they
4  had come from the Classmates.com website?
5      A.   I was told that much.
6      Q.   So following the October 2021 e-mail at
7  the top of Exhibit 9, you signed the class
8  representative agreement that we previously took a
9  look at, correct?
10     A.   I believe so.
11     Q.   Why don't we go back.  If you would not
12  mind just turning back to Exhibit 5, and if you
13  take a look at page 5 of that.  It's the one that
14  has a little 5 in the bottom right-hand corner.
15     A.   Okay.
16     Q.   What is the date of your signature on
17  page 5?
18     A.   It's October 21st, 2021.
19     Q.   And that is the same date as the e-mail
20  with Mr. Strauss that we were just looking at as
21  Exhibit 9, correct?
22     A.   That's correct.
23     Q.   So subsequent to your e-mail exchange
24  with Mr. Strauss, you agreed on October 21, 2021,

Page 64

1  to serve as the class -- as a class representative
2  in this case?
3      A.   That's correct.
4      Q.   Did you have any questions about this
5  agreement before you signed it?
6      A.   I don't recall any specific questions
7  that I might have had.
8      Q.   So your testimony is that you don't
9  recall any specific questions that you had about
10  this document before you signed it?
11     A.   I don't.
12     Q.   Any concerns?
13     A.   I don't recall having any concerns.
14     Q.   You discussed this agreement with
15  Mr. Strauss.  Did you have a telephone call --
16  sorry.  Let me strike my earlier question.
17         Did you have a telephone call to discuss
18  this earlier agreement with Mr. Strauss?
19     A.   Yes.  I believe that we went through the
20  agreement and the responsibilities.
21     Q.   And based on that phone call, what is
22  your understanding of what you were authorizing
23  your counsel to do on your behalf?
24     A.   To research the use of my personal

Page 65

1  information pursuant to a class action lawsuit in
2  federal court.
3      Q.   And research the information, including
4  by going on the Classmates website?
5      MS. RESCH:  Objection, form.
6  BY THE WITNESS:
7      A.   I didn't provide any input on how they
8  should conduct their investigations.
9  BY MR. HALBIG:
10     Q.   So you were relying on your counsel to
11  do what was necessary to do that investigation in
12  order to bring your claims?
13     MS. RESCH:  Objection, form.
14  BY THE WITNESS:
15     A.   That is correct.
16  BY MR. HALBIG:
17     Q.   Mr. Boshears, your counsel eventually
18  filed a complaint on your behalf in federal court
19  naming you as the plaintiff, right?
20     MS. RESCH:  Objection, form.
21  BY THE WITNESS:
22     A.   I believe that is correct.
23  BY MR. HALBIG:
24     Q.   Mr. Boshears, you said you are not a

Page 66

1  lawyer, right?
2      A.   That is correct.
3      Q.   Do you have an understanding of federal
4  court versus state court or differences between
5  various courts?
6      A.   I do not.
7      Q.   Did you -- when you signed the agreement
8  with Mr. Strauss that we were just looking at, did
9  you have any understanding of where Mr. Strauss
10  would be potentially pursuing any of your claims?
11     A.   I don't recall.
12     Q.   Your understanding was that he would be
13  researching your claim and then pursuing a
14  potential claim for you though, correct?
15     MS. RESCH:  Objection, form.
16  BY THE WITNESS:
17     A.   Yes, that is correct.
18  BY MR. HALBIG:
19     Q.   But you didn't give him any direction as
20  to where -- which court or, you know, what venue to
21  bring that?
22     A.   No, I did not.
23     MS. RESCH:  Objection, form.
24

Page 67

1  BY MR. HALBIG:
2      Q.   So turning back to the complaint that
3  was filed on your behalf.  You reviewed that before
4  your counsel filed it, right?
5      A.   Yes, I believe so.
6      Q.   Do you recall how much time you spent
7  reviewing it?
8      A.   Can you remind me which exhibit it was?
9      Q.   I have not introduced it yet, so just
10  generally your recollection.
11     A.   I can't recall.
12     Q.   Do you remember how many drafts you
13  reviewed?
14     A.   No, I can't recall.
15     Q.   Was it more than one draft?
16     A.   I can't recall.
17     Q.   You did review it and you gave your
18  counsel permission to file it on your behalf?
19     A.   That is correct.
20     Q.   So I'm going to introduce Exhibit 10,
21  and let me know when you have it in front of you.
22         (WHEREUPON, a certain document was
23         marked Defendant's Deposition
24         Exhibit No. 10, for identification.)

Page 68

1  BY THE WITNESS:
2      A.   I have it in front of me.
3  BY MR. HALBIG:
4      Q.   Mr. Boshears, could you tell me what
5  this document is?  This is the complaint that your
6  counsel filed on your behalf, right?
7      A.   I believe so, yes.  It appears to be the
8  complaint document.
9      Q.   And it was -- if you look at the top, do
10  you see the date indicating when it was filed?
11     A.   Yes, October 29th.
12     Q.   And that was of 2021, correct?
13     A.   Yes.
14     Q.   Did the version you reviewed look like
15  this?
16     A.   Yes.
17     Q.   And just generally speaking, do you
18  recall any comments that you provided or input that
19  you provided on the draft complaint that you
20  reviewed?
21     MS. RESCH:  Object to form.
22  BY THE WITNESS:
23     A.   I can't recall any specific input I
24  might have provided.

Page 69

1  BY MR. HALBIG:
2      Q.   So as we looked at previously,
3  Mr. Strauss had sent you certain screenshots or
4  photographs of your high school yearbooks from the
5  Classmates website.  If you turn to page 7 of this,
6  starting on page 7 and the pages that follow, do
7  you see that there are screenshots depicted there?
8      A.   I do.
9      Q.   Do you recall whether these screenshots
10 were included in the draft complaint that you
11 reviewed prior to this being filed?
12     A.   To the best of my knowledge, they were.
13     Q.   And these are all screenshots from the
14 Classmates website, right?
15     A.   That is my understanding.
16     MS. RESCH:  Object to form.
17 BY MR. HALBIG:
18     Q.   After reviewing the draft complaint, did
19 you tell your counsel not to use any of these
20 screenshots?
21     A.   No, I did not.
22     Q.   At any point have you told your counsel
23 that they can't use these screenshots for your
24 case?

Page 70

1      A.   I have not.
2      Q.   I want you to turn to paragraph 2 of the
3  complaint.  It's on page 1.  You see that paragraph
4  says, Plaintiff, meaning -- and you understand that
5  plaintiff in this instance refers to you?
6      A.   I do.
7      Q.   So, Plaintiff was seriously distressed
8  to discover that Classmates is using decades-old
9  photographs of Plaintiff and the Class as minor
10 children to advertise paid subscriptions to
11 Classmates.com.
12         That was an allegation in the draft
13 complaint that you reviewed?
14     A.   It was.
15     Q.   And you discovered this from your
16 interactions with Mr. Strauss?
17     MS. RESCH:  Object to form.
18 BY THE WITNESS:
19     A.   Yes, that is how I discovered it.
20 BY MR. HALBIG:
21     Q.   And that included by Mr. Strauss sending
22 you the screenshots of the Classmates.com website
23 that we previously looked at, correct?
24     MS. RESCH:  Object to form.

Page 71

1  BY THE WITNESS:
2      A.   I can't recall if I saw the screenshots
3  prior or the images of my high school yearbooks.
4  BY MR. HALBIG:
5      Q.   But the images of your high school
6  yearbooks that we were looking at before, those
7  were all taken from the Classmates.com website,
8  right?
9      A.   That was my understanding.
10     Q.   And you were relying on your counsel to
11 do the investigation that was necessary in order to
12 substantiate this allegation in your complaint,
13 right?
14     MS. RESCH:  Object to form.
15 BY THE WITNESS:
16     A.   That is correct.
17 BY MR. HALBIG:
18     Q.   So by the time this complaint had been
19 filed, you had given them the authorization to do
20 whatever steps that were necessary to make sure
21 that this information was accurate, right?
22     MS. RESCH:  Object to form.
23 BY THE WITNESS:
24     A.   Yes, that is correct.

Page 72

1  BY MR. HALBIG:
2      Q.   And just to go back to the screenshots
3  on page 7, you'll see in paragraph 28, that
4  paragraph says, Plaintiff's counsel used
5  image-editing software to obscure plaintiff's face
6  and the faces of other students.  Do you see that
7  allegation?
8      A.   I do.
9      Q.   And then do you see the screenshot
10 directly below that?
11     A.   I do.
12     Q.   That is one of the pictures of you that
13 we were just looking at but with your face
14 obscured?
15     A.   That is correct.
16     MS. RESCH:  Object to form.
17 BY MR. HALBIG:
18     Q.   And you have seen all of these
19 screenshots prior to today, right?
20     A.   That is --
21     MS. RESCH:  Object to form.
22 BY THE WITNESS:
23     A.   That is correct.
24

Page 73

1 BY MR. HALBIG:
2    Q.   And that included -- you don't recall
3 specifically whether those were in the draft
4 complaint that you reviewed?
5    MS. RESCH:  Object to form.
6 BY MR. HALBIG:
7    Q.   Sorry.  Let me rephrase that.
8       Do you recall whether these screenshots
9 were in the draft complaint that you reviewed prior
10 to filing?
11    A.   I don't recall them not being there.
12    Q.   They were not there?
13    A.   No, I don't recall them being absent.
14    Q.   Okay.  Did you review the final version
15 of this after it was filed?
16    A.   Yes, I believe so.
17    MS. RESCH:  Object to form.
18 BY MR. HALBIG:
19    Q.   And did you review that shortly after
20 the complaint had been filed?
21    MS. RESCH:  Object to form.
22 BY THE WITNESS:
23    A.   I can't recall the exact timeline.
24

Page 74

1 BY MR. HALBIG:
2    Q.   Do you recall receiving an e-mail from
3 your counsel on November 12th, 2021?
4    A.   That is very possible, but I don't
5 recall.
6    Q.   Yeah.  Let me show you a document that
7 might help with that.  So put that aside.
8    A.   Sure.
9    Q.   So this is going to be Defendant's
10 Exhibit 11.
11       (WHEREUPON, a certain document was
12       marked Defendant's Deposition
13       Exhibit No. 11, for identification.)
14 BY MR. HALBIG:
15    Q.   Mr. Boshears, let me know when you have
16 that exhibit in front of you.
17    A.   I do.
18    Q.   So, Mr. Boshears, this is a document
19 that your counsel produced to us as your privilege
20 log.  Have you seen this document before?
21    A.   I don't believe so.
22    Q.   So just to explain this, if they are --
23 if your counsel is withholding certain information
24 or documents on your behalf on the basis of a

Page 75

1 privilege, they provide a document like this to
2 identify what those documents are and the basis for
3 withholding it.
4       So you'll see that there's a number of
5 different communications logged on here.  Do you
6 see that there's identifiers on the left-hand
7 column of this?
8    A.   I do.
9    Q.   And do you see that there's a number of
10 different e-mails and phone calls that are
11 reflected on this log in the different rows?
12    A.   I do.
13    Q.   Okay.  I want to direct your attention
14 to Log Identifier No. 7.
15    A.   Okay.
16    Q.   And do you see that that log entry
17 appears to reflect a November 12th, 2021, e-mail
18 chain?
19    A.   I do.
20    Q.   And if you go over to the right-hand
21 column, you see that there's sort of a description
22 or basis there?
23    A.   I see that.
24    Q.   And you see that that appears to be an

Page 76

1 e-mail among counsel and client attaching a copy of
2 the amended complaint?
3    A.   I see that.
4    Q.   So looking at -- taking a look at this
5 log, appreciating that you have not seen this
6 before, does that refresh your recollection as to
7 receiving an e-mail from your counsel on
8 November 12, 2021?
9    A.   This is over two years ago.  I can't
10 recall the specifics of what that e-mail might have
11 contained.
12    Q.   Do you have any reason to believe that
13 you did not receive that e-mail on November 12,
14 2021?
15    A.   I don't have any reason to believe that
16 I didn't.
17    Q.   Does this refresh your recollection of
18 receiving a copy of the amended complaint on
19 November 12, 2021?
20    A.   I don't have a recollection of receiving
21 an amended complaint on that date.
22    Q.   Mr. Boshears, you testified before that
23 you had looked for documents in response to
24 PeopleConnect's request for production to you?

Page 77

1    A.   That's correct.
2    Q.   And you said that you looked through
3 your e-mails on that.  Did you recall looking at
4 this e-mail?
5    MS. RESCH:  Object to form.
6 BY THE WITNESS:
7    A.   I don't recall looking at this specific
8 e-mail.
9 BY MR. HALBIG:
10    Q.   Did you provide this e-mail to your
11 counsel?
12    MS. RESCH:  Object to form.
13 BY THE WITNESS:
14    A.   My counsel has this e-mail.  It's
15 between me and my counsel.
16 BY MR. HALBIG:
17    Q.   So you don't know whether the
18 information on this is -- in this privilege log is
19 accurate or not?
20    MS. RESCH:  Object to form.
21 BY THE WITNESS:
22    A.   I don't have any reason to believe it's
23 not accurate.
24

Page 78

1 BY MR. HALBIG:
2    Q.   If you don't have any reason to believe
3 that it's not accurate, then you also don't have
4 any reason to believe that you didn't receive a
5 copy of the final complaint on November 12, 2021?
6    MS. RESCH:  Object to form.
7 BY THE WITNESS:
8    A.   I don't recall the e-mails that I
9 received on that specific date.
10 BY MR. HALBIG:
11    Q.   But, generally speaking, do you recall
12 your counsel sending you a copy of the final
13 as-filed complaint?
14    A.   I do recall receiving that document.
15    Q.   And around this time, shortly after it
16 was filed on October 29, 2021?
17    A.   I believe that is the correct time
18 frame.
19    Q.   And you didn't -- after receiving the
20 final copy of that, did you ask your counsel to
21 remove any information in the complaint?
22    MS. RESCH:  Object to form.
23 BY THE WITNESS:
24    A.   I can't recall making that request.

Page 79

1 BY MR. HALBIG:
2    Q.   Do you recall asking your counsel to
3 remove the screenshots from the complaint?
4    A.   No, I don't recall making that request.
5    MR. HALBIG:  We are at the hour again, so
6 maybe it's time to take a short break.
7    MS. RESCH:  Sure.
8    MR. HALBIG:  So if we can go off the record.
9    THE VIDEOGRAPHER:  The time is 11:00 a.m., and
10 we are going off the record.
11         (WHEREUPON, a recess was had.)
12    THE VIDEOGRAPHER:  The time is 11:21 a.m., and
13 we are back on the record.
14 BY MR. HALBIG:
15    Q.   Mr. Boshears, you are aware that my
16 client, PeopleConnect, filed a motion to dismiss
17 your complaint in this case?
18    A.   Yes.
19    Q.   And you received a copy of that motion
20 to dismiss, right?
21    A.   Yes, that's correct.
22    MR. HALBIG:  Okay.  I'm going to introduce
23 another exhibit that will be Exhibit No. 12.
24

Page 80

1         (WHEREUPON, a certain document was
2          marked Defendant's Deposition
3          Exhibit No. 12, for identification.)
4 BY MR. HALBIG:
5    Q.   Mr. Boshears, the document that I have
6 just handed you as Exhibit No. 12 is a copy of that
7 motion to dismiss, right?
8    A.   It appears to be so.
9    Q.   Did you have any discussions with anyone
10 after -- about that motion to dismiss after you
11 received it?
12    A.   I don't recall.
13    Q.   So you can't recall any specific
14 discussions that you had with anyone about this
15 motion to dismiss?
16    A.   That is correct.
17    Q.   And after receiving a copy of that
18 motion to dismiss, you didn't instruct your lawyers
19 not to use any of the screenshots that we were just
20 looking at in this case, right?
21    MS. RESCH:  Object to form.
22 BY THE WITNESS:
23    A.   Can you rephrase that, please?
24

Page 81

1 BY MR. HALBIG:
2    Q.    Yes.  You previously testified that you
3 have never asked your lawyers to not use any of the
4 screenshots from the Classmates website in this
5 case, and my question to you is, after receiving
6 this copy of the motion to dismiss, that remained
7 the same, you did not ask your lawyers to stop
8 using any information or your screenshots from
9 Classmates.com?
10    A.    That is correct.
11    Q.    You can put that to the side.
12         You are aware that your counsel also
13 filed an opposition to that motion to dismiss on
14 your behalf?
15    A.    Yes, I am.
16    Q.    And you reviewed a copy of that
17 opposition?
18    A.    Yes.
19    Q.    Sorry.  I have to hit up the court
20 reporter first, which is going to be Exhibit
21 No. 13, and let me know when you have Exhibit
22 No. 13.
23
24

Page 82

1         (WHEREUPON, a certain document was
2          marked Defendant's Deposition
3          Exhibit No. 13, for identification.)
4 BY THE WITNESS:
5    A.    It's in front of me.
6 BY MR. HALBIG:
7    Q.    And Exhibit No. 13 is a copy of that
8 opposition, correct?
9    A.    That is correct.
10    Q.    Have you discussed that opposition with
11 anyone?
12    A.    Can you clarify if by "anyone," you mean
13 with my counsel?
14    Q.    Yes.
15    A.    I don't recall any specific
16 conversations that we might have had about this
17 document.
18    Q.    And the same question as before.  After
19 receiving a copy of that opposition, you did not
20 instruct your counsel not to go onto the Classmates
21 website and you also didn't -- sorry.  Let me stop
22 that question there.  So let me rephrase.
23         After receiving a copy of the opposition
24 to the motion to dismiss, you did not instruct your

Page 83

1 counsel to stop going onto the Classmate website?
2    A.    I didn't make that explicit demand, no.
3    Q.    Did you instruct your counsel not to use
4 any of the screenshots or other information that
5 they had gathered from the Classmates website?
6    A.    No, I did not make that request.
7    Q.    You can set that one to the side.
8         You are aware that PeopleConnect filed a
9 reply in further support of its motion to dismiss?
10    MS. RESCH:  Object to form.
11 BY THE WITNESS:
12    A.    I don't recall the specifics of that
13 filing.
14 BY MR. HALBIG:
15    Q.    So do you recall, you know, being aware
16 that PeopleConnect had filed a response to that
17 opposition that we were just looking at?
18    MS. RESCH:  Object to form.
19 BY THE WITNESS:
20    A.    I most likely saw the document.
21 BY MR. HALBIG:
22    Q.    If you would not mind turning back to
23 Exhibit 4, which is the document that is your
24 answers and objections to PeopleConnect's requests

Page 84

1 for admission, and can you turn to page 14.  Do you
2 see Request No. 17?
3    A.    Yes.
4    Q.    And you see that that asks you to admit
5 that you reviewed the motion to dismiss reply?
6    A.    I see that.
7    Q.    And then you see that there's a response
8 with some objections, and at the top of page 15, it
9 says, Plaintiff admits this request?
10    A.    I do.
11    Q.    And you verified that the answers to
12 these requests for admission were correct, right?
13    A.    Yes.
14    MS. RESCH:  Object to form.
15 BY MR. HALBIG:
16    Q.    So you did review a copy of
17 PeopleConnect's motion to dismiss reply?
18    A.    I most likely did.  I don't recall the
19 specifics of reviewing it at this time.
20    Q.    So how were you able to confirm that
21 your response to Request No. 17 was correct?
22    MS. RESCH:  Object to form.
23 BY THE WITNESS:
24    A.    This document would have been prepared a

Page 85

1  lot closer to the time that I would have reviewed
2  the document in question.
3  BY MR. HALBIG:
4      Q.   I'm going to show you a copy of the
5  reply -- it's going to be Defendant's Exhibit 14.
6            (WHEREUPON, a certain document was
7            marked Defendant's Deposition
8            Exhibit No. 14, for identification.)
9      MS. RESCH:  Can I have a copy, please?
10     MR. HALBIG:  Oh.
11     MS. TONE-O'KEEFE:  Sorry.
12     MS. RESCH:  As if I have not seen it before.
13  BY MR. HALBIG:
14     Q.   Mr. Boshears, do you have a copy of
15  Exhibit 14 in front of you?
16     A.   I do.
17     Q.   And do you recognize this document?
18  Have you seen this document before?
19     A.   I have.
20     Q.   This is a copy of PeopleConnect's motion
21  to dismiss reply, correct?
22     A.   I believe so.
23     Q.   After receiving a copy of this reply
24  brief, did you discuss the reply brief with anyone?

Page 86

1      A.   I can't recall any specific
2  conversations that I have had regarding this
3  document.
4      Q.   And after receiving this document, did
5  you tell your counsel that they couldn't use your
6  photographs or any information from the
7  Classmates.com website?
8      A.   No, I did not.
9      Q.   You can set that one to the side.
10           Mr. Boshears, the screenshots that we
11  were just looking at in the complaint and the
12  photographs of you that Mr. Strauss sent to you of
13  your high school yearbooks from the Classmates.com
14  website, it's your understanding that those
15  screenshots were captured by your attorneys?
16     MS. RESCH:  Object to form.
17  BY THE WITNESS:
18     A.   I'm not aware how they were collected or
19  who collected them.
20  BY MR. HALBIG:
21     Q.   Do you think it's reasonable to assume
22  that your attorneys captured them?
23     MS. RESCH:  Object to form.
24

Page 87

1  BY THE WITNESS:
2      A.   That is an assumption I can't make.
3  BY MR. HALBIG:
4      Q.   If you would not mind going back to
5  Defendant's Exhibit 4, Request for Admission No. 1
6  on page No. 7.  Sorry.  Exhibit No. 4.  And let me
7  know when you are at page 7 of Exhibit No. 4.
8      A.   I'm on page 7.  I don't see Item No. 4
9  there.
10     Q.   Sorry.  I'm on Exhibit 4, page 7.  So if
11  you are at page 7, then we are at the right place.
12     A.   Okay.
13     Q.   Do you see that there's a Request No. 1?
14     A.   Yes.
15     Q.   And that asks you to admit that your
16  attorneys captured the screenshots?
17     A.   I see that.
18     Q.   The last line of that -- of your
19  response to that request at the top of page 8, you
20  see that you wrote, Plaintiff assumes that his
21  attorneys captured the screenshots and plaintiff
22  admits this request on that assumption?
23     A.   I see that.
24     Q.   So you kind of assumed that your

Page 88

1  attorneys captured the screenshots because you
2  wrote that here, correct?
3      A.   That's correct.
4      Q.   Do you have any independent knowledge of
5  which of your attorneys captured the screenshots?
6      A.   I do not.
7      Q.   Do you have any independent knowledge of
8  what they had to do on the website to capture those
9  screenshots?
10     MS. RESCH:  Object to form.
11  BY THE WITNESS:
12     A.   I do not.
13  BY MR. HALBIG:
14     Q.   Do you have any independent knowledge of
15  when temporally in time those screenshots were
16  captured?
17     MS. RESCH:  Object to form.
18  BY THE WITNESS:
19     A.   I do not.
20  BY MR. HALBIG:
21     Q.   And, Mr. Boshears, you have never asked
22  your attorneys not to access the website, correct?
23     MS. RESCH:  Object to form.
24

Page 89

1  BY THE WITNESS:
2      A.  I never made that request.
3  BY MR. HALBIG:
4      Q.   And you have never instructed your
5  attorneys not to search the website?
6      MS. RESCH:  Object to form.
7  BY THE WITNESS:
8      A.  I never made that request.
9  BY MR. HALBIG:
10     Q.   Mr. Boshears, when you received
11 Mr. Strauss' October 11th, 2021, letter that we
12 were looking at earlier, why didn't you go on the
13 Classmates website after you received that?
14     MS. RESCH:  Object to form.
15 BY THE WITNESS:
16     A.  I can't recall.
17 BY MR. HALBIG:
18     Q.   You were interested in the investigation
19 that Mr. Strauss' firm was conducting?
20     MS. RESCH:  Object to form.
21 BY THE WITNESS:
22     A.  I was interested after reviewing the
23 letter.  I have a fairly busy job and did not have
24 the time to do any research outside of what Turke &

Page 90

1  Strauss provided to me.
2  BY MR. HALBIG:
3      Q.   So you were never curious to go and see
4  what was on the website for yourself?
5      MS. RESCH:  Object to form.
6  BY THE WITNESS:
7      A.  I relied on what they presented to me.
8      MR. HALBIG:  I think we can take a short
9  break.
10     THE VIDEOGRAPHER:  The time is 11:38 a.m., and
11 we are going off the record.
12     (WHEREUPON, a recess was had.)
13     THE VIDEOGRAPHER:  The time is 11:59 a.m., and
14 we are back on the record.
15 BY MR. HALBIG:
16     Q.   Mr. Boshears, do you know if you had a
17 college yearbook at all?
18     A.  I don't know the answer to that
19 question.
20     Q.   And when you were in high school, do you
21 recall ever signing any kind of permission forms
22 related to your yearbook?
23     A.  I can't recall.
24     MS. RESCH:  Object to form.  Counsel, I will

Page 91

1  once again put on the record that this deposition
2  is limited in scope to his authority and counsel's
3  authority during the investigation so --
4      MR. HALBIG:  Okay.
5      MS. RESCH:  Yeah, just making --
6  BY MR. HALBIG:
7      Q.   Mr. Boshears, you don't know if your
8  counsel ever agreed to terms of service on the
9  Classmates website, do you?
10     A.  I don't know.
11     Q.   You never had any conversations with
12 your counsel about the Classmates.com terms of
13 service?
14     A.  No, I don't believe so.
15     Q.   So if you did not have any conversations
16 with them about the terms of service, you never
17 told them that you could -- that they couldn't
18 agree to the terms of service on the Classmates.com
19 website, right?
20     MS. RESCH:  Object to form.  Can you read that
21 back, please?
22     (WHEREUPON, the record was read by
23      the reporter.)
24     MS. RESCH:  Can we go back to the anyone --

Page 92

1  using anyone instead of counsel?  And then I won't
2  object on privilege.
3  BY MR. HALBIG:
4      Q.   Okay.  You never told anyone that they
5  couldn't agree to the Classmates.com terms of
6  service, correct?
7      A.  That's correct.
8      MR. HALBIG:  I don't have any further
9  questions for you today.
10     THE WITNESS:  Okay.
11     EXAMINATION
12 BY MS. RESCH:
13     Q.   I just have a couple quick ones.
14     Mr. Boshears, did you ever authorize
15 anyone to agree to the PeopleConnect terms and
16 conditions on your behalf?
17     A.  No, I did not.
18     Q.   Did you ever authorize anyone to consent
19 to the arbitration agreement contained in the
20 PeopleConnect terms and conditions on your behalf?
21     A.  I did not.
22     MS. RESCH:  I have nothing further.
23     MR. HALBIG:  Yeah, I don't have any further
24 questions.

Page 93

1     MS. RESCH:  Then we are done.

2     THE VIDEOGRAPHER:  The time is 12:02 p.m., and

3 this concludes the deposition for today.

4         I would just like to ask, if anybody

5 would like to make any video orders or transcript

6 orders, to do it now.

7     MR. HALBIG:  Yeah.  We would like the video,

8 and we would also like a copy of the rough.  And if

9 you get a rush copy of the final transcript too,

10 that will be great.

11     THE REPORTER:  When do you want the final?

12     MR. HALBIG:  What is the soonest that is

13 practicable?

14     THE REPORTER:  I mean, I can just -- it is

15 87 pages.  Do you want to skip the rough and just

16 get the rush tomorrow?

17     MR. HALBIG:  Yeah.  If you can get us the

18 final tomorrow, that would be great.

19     THE REPORTER:  Okay.  Yep, that's it.  And

20 would you like a copy?

21     MS. RESCH:  Not at this time.  We'll reach

22 out.

23         FURTHER DEPONENT SAITH NOT.

24

Page 95

1                    I N D E X

2 WITNESS                    EXAMINATION

3 JOHN BOSHEARS

4   By Mr. Halbig          4

5   By Ms. Resch          92

6

7            E X H I B I T S

8 NUMBER                     PAGE

9 Boshears Deposition Exhibit No. 1      19

10 Boshears Deposition Exhibit No. 2      22

11 Boshears Deposition Exhibit No. 3      24

12 Boshears Deposition Exhibit No. 4      30

13 Boshears Deposition Exhibit No. 5      37

14 Boshears Deposition Exhibit No. 6      43

15 Boshears Deposition Exhibit No. 7      47

16 Boshears Deposition Exhibit No. 8      58

17 Boshears Deposition Exhibit No. 9      59

18 Boshears Deposition Exhibit No. 10      67

19 Boshears Deposition Exhibit No. 11      74

20 Boshears Deposition Exhibit No. 12      80

21 Boshears Deposition Exhibit No. 13      82

22 Boshears Deposition Exhibit No. 14      85

23

24

Page 94

1 STATE OF ILLINOIS )

2              ) SS:

3 COUNTY OF C O O K )

4      I, KRISTIN C. BRAJKOVICH, a Certified

5 Shorthand Reporter in and for the State of

6 Illinois, do hereby certify:

7      That the foregoing witness was by me

8 duly sworn; that the deposition was then taken

9 before me at the time and place herein set forth;

10 that the testimony and proceedings were reported

11 stenographically by me and later transcribed into

12 typewriting under my direction; that the foregoing

13 is a true record of the testimony and the

14 proceedings taken at that time.

15      That before the conclusion of the

16 deposition, the witness has not requested a review

17 of this transcript pursuant to Rule 30(e)(1).

18      IN WITNESS WHEREOF, I have subscribed my

19 name this 11th day of January 2024.

20

21

22

23      Kristin C. Brajkovich, CSR

24      C.S.R. Certificate No. 84-3810

Page 96

1         DEPOSITION ERRATA SHEET

2

3 Our Assignment No. J10657702

4 Case Caption:  John Boshears v.

5         PeopleConnect, Inc.

6

7     DECLARATION UNDER PENALTY OF PERJURY

8

9      I declare under penalty of perjury that

10 I have read the entire transcript of my deposition

11 taken in the captioned matter or the same has been

12 read to me, and the same is true and accurate, save

13 and except for changes and/or corrections, if any,

14 as indicated by me on the DEPOSITION ERRATA SHEET

15 hereof, with the understanding that I offer these

16 changes as if still under oath.

17

18   Signed on the _____ day of

19 _____, 2024.

20

21

22

23 _____

24     JOHN BOSHEARS

Page 97

1          DEPOSITION ERRATA SHEET

2

3   Page No. _____Line No._____Change To:_____

4   Reason for Change:_____

5   Page No. _____Line No._____Change To:_____

6   Reason for Change:_____

7   Page No. _____Line No._____Change To:_____

8   Reason for Change:_____

9   Page No. _____Line No._____Change To:_____

10  Reason for Change:_____

11  Page No. _____Line No._____Change To:_____

12  Reason for Change:_____

13  Page No. _____Line No._____Change To:_____

14  Reason for Change:_____

15  Page No. _____Line No._____Change To:_____

16  Reason for Change:_____

17  Page No. _____Line No._____Change To:_____

18  Reason for Change:_____

19  Page No. _____Line No._____Change To:_____

20  Reason for Change:_____

21  Page No. _____Line No._____Change To:_____

22  Reason for Change:_____

23  SIGNATURE:_____DATE:_____

24          JOHN BOSHEARS

Page 98

1          DEPOSITION ERRATA SHEET

2

3   Page No. _____Line No._____Change To:_____

4   Reason for Change:_____

5   Page No. _____Line No._____Change To:_____

6   Reason for Change:_____

7   Page No. _____Line No._____Change To:_____

8   Reason for Change:_____

9   Page No. _____Line No._____Change To:_____

10  Reason for Change:_____

11  Page No. _____Line No._____Change To:_____

12  Reason for Change:_____

13  Page No. _____Line No._____Change To:_____

14  Reason for Change:_____

15  Page No. _____Line No._____Change To:_____

16  Reason for Change:_____

17  Page No. _____Line No._____Change To:_____

18  Reason for Change:_____

19  Page No. _____Line No._____Change To:_____

20  Reason for Change:_____

21  Page No. _____Line No._____Change To:_____

22  Reason for Change:_____

23  SIGNATURE:_____DATE:_____

24          JOHN BOSHEARS

# EXHIBIT 3

**THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JOHN BOSHEARS, on behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>   v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>                     Defendant. | Case No. 2:21-cv-01222-MJP<br><br>**PLAINTIFF JOHN BOSHEARS'S AMENDED ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES** |

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Plaintiff John Boshears ("Plaintiff") submits the following amended answers and objections to Defendant PeopleConnect, Inc.'s ("PeopleConnect" or "Defendant") First Set of Interrogatories.

## **DEFINITIONS**

1.     "Complaint" refers to the to the First Amended Complaint – Class Action filed by John Boshears in *Boshears v. PeopleConnect, Inc.*, No. 2:21-cv-01222, in the United States District Court for the Western District of Washington on October 29, 2021.

        a.   **OBJECTION**: Plaintiff objects to this definition. This lawsuit was initiated on September 7, 2021, with the filing of the class action complaint (Dkt. 1). Plaintiff will distinguish which complaint he refers to, if necessary, in his responses.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

2.     "Communication(s)" means every manner or method of disclosure, exchange of information, statement, or discussion between or among two or more persons or entities, including, but not limited to, face-to-face and telephone conversations, correspondence, memoranda, letters, facsimiles, telegrams, email messages, transcribed voice-mail messages, text messages, meetings, discussions, public or private messages exchanged on websites, releases, statements, reports, publications, or any recordings or reproductions thereof.

3.     "Documents" means any written material, whether typed, handwritten, printed or otherwise, or any photographic, photostatic, microfilm or other reproduction thereof; any data stored electronically and capable of being retrieved by computer or word processor and printed therefrom; and any recording (film, tape, videotape or other mechanical or electronic information). "Documents" includes, but is not limited to notes, memoranda, letters, telegrams, emails, text messages, circulars, releases, articles, reports, records, logs, analyses, charts, account books, drafts, summaries, diaries, transcripts, and agreements.

4.     "Including" means "including, but not limited to," and "includes" means "includes, but is not limited to."

5.     "Relating to" means anything which: directly or indirectly concerns, consists of, pertains to, reflects, evidences, describes, sets forth, constitutes, contains, shows, underlies, supports, refers to in any way, is or was used in the preparation of, is appended to, is legally, logically, or factually connected with, proves, disproves, and/or tends to prove or disprove.

6.     "Plaintiff," "You," or "Your" means John Boshears.

7.     "Your Attorney" or "Your Attorneys" means the law firms of Turke & Strauss LLP, the Law Office of Benjamin R. Osborn, or Morgan & Morgan Complex Litigation Group and any of their partners, shareholders, members, associates, attorneys, paralegals, agents, investigators, or other individuals employed by them or acting on their behalf, who has, at any point in time, represented You or has assisted with the representation of You or investigated or assisted in the investigation of any claims on Your behalf, as well as any other law firm or individual who has, at any point in time, represented You or assisted in the representation of You

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

or investigated or assisted in the investigation of any claims on Your behalf. As used in these Interrogatories, "Your Attorney" or "Your Attorneys" is not limited to only individuals who have formally appeared on your behalf.

      a.   **OBJECTION**: Plaintiff objects to this definition as not limited to the claims and defenses in this litigation and thus seeking overbroad, unduly burdensome, and irrelevant information. Plaintiff interprets the phrase "of any claims on Your behalf" as instead saying any of the claims in this litigation on Your behalf. Plaintiff also objects to the phrase "other individuals employed by them or acting on their behalf" as vague and ambiguous, subject to multiple interpretations, irrelevant, overboard, and unduly burdensome.

8.    "Screenshots" refers to both: (i) the screenshot images that were taken from the Classmates Website that are incorporated into the Complaint at paragraphs 28–30 and 32–35; and (ii) any other screenshot images that were taken from the Classmates Website that show Your name, image or likeness.

      a.   **OBJECTION**: Plaintiff objects to part (ii) of this definition as vague and ambiguous, subject to multiple interpretations, overbroad, unduly burdensome, and seeking irrelevant information beyond the limited arbitration-related discovery ordered by this Court. Plaintiff further objects to this definition to the extent it seeks information protected by the attorney-client privilege and/or as attorney work-product. Based on these objections, Plaintiff will not respond as to part (ii).

9.    "Search" or "Searching" means searching for a particular individual on the Classmates Website as referenced in paragraphs 29 and 30 of the Complaint.

10.    "Classmates Website" refers to the website www.Classmates.com and all webpages linked or accessible through it.

11.    "Classmates Account" or "Account" refers to a registered account, including both paid for and free accounts, on the Classmates Website.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

1         12.     "Access" or "Accessed" means navigating to or using the Classmates Website,

including but not limited to, interacting with the features on the Classmates Website or viewing

any information on the Classmates Website.

         13.     "Engagement Letter" means a written letter, contract, or other agreement between

You and Your Attorney governing the scope of Your Attorney's representation of You in this

matter.

         14.     Whenever appropriate in these Interrogatories, the singular and plural forms of

words shall be interpreted interchangeably so as to bring within the scope of these Interrogatories

any matter which might otherwise be construed to be outside their scope.

## INSTRUCTIONS

         1.     If, after reasonable and thorough investigation using due diligence, You are unable

to answer any Interrogatory or any part thereof, on the ground of lack of information available to

You, please state with particularity and specificity why the information is not available, and the

efforts You undertook to provide the information requested.

         a.   **OBJECTION**: Plaintiff objects to this instruction as imposing obligations above

            and beyond the Federal Rules of Civil Procedure, with which he will comply.

         2.     If You claim any privilege or other protection as a basis for not answering any

Interrogatory or any part thereof, please set forth (a) the privilege claimed; (b) each fact which

You contend provides a basis for the invocation of the privilege; and (c) identify each person who

You believe or know is witness to such facts.

         a.   **OBJECTION**: Plaintiff objects to this instruction as imposing obligations above

            and beyond the Federal Rules of Civil Procedure, with which he will comply.

         3.     When Documents, data, knowledge, or information in your possession are

requested, such request includes knowledge of your agents, your representatives, experts, persons

consulted regarding any factual matters or opinion relating to any of the facts or issues in this

case, and unless privileged, Your Attorneys.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

a.  **OBJECTION**: Plaintiff further objects to this instruction to the extent it seeks information protected by the attorney-client privilege and/or as attorney work-product. Plaintiff objects to this instruction as seeking information outside the possession, custody, or control of Plaintiff by including these people in the instruction: "agents, your representatives, experts, persons consulted."

4.  In construing these Interrogatories, the singular includes the plural, the plural includes the singular; a masculine, feminine or neuter pronoun includes all of the genders; the words "and" and "or" shall be both conjunctive and disjunctive so as to require the admission; "any" means "any and all"; and the past tense includes the present tense and vice versa.

5.  These Interrogatories are continuing, and Plaintiff has a duty to supplement, amend, or correct any and all prior answers or responses whenever new or additional information subsequently becomes known.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:**     Identify every email address You have used at any point in time.

**ANSWER:**    The Ninth Circuit and this Court have ordered that certain arbitration-related discovery occur. *See* Dkts. 56, 63. Plaintiff only responds to provide this limited discovery as ordered by the Court. Plaintiff objects to this request as unduly burdensome and overbroad as it is not limited in temporal scope, rendering it irrelevant and not proportionate to the needs of this case at this time.

Subject to and without waiving this objection, to the best of his recollection, Plaintiff has used the following email addresses:

-   jbosh@iu.edu
-   jbosh@perdue.edu
-   John.boshears@gmail.com
-   john.boshears@accenture.com
-   john.boshears@alumni.purdue.edu

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

1 **INTERROGATORY NO. 2:** Identify how many times You or Your Attorney have

2 Accessed the Classmates Website, whether You or Your Attorney ran a Search, and the date of

3 each Access and/or Search.

4     **ANSWER:** The Ninth Circuit and this Court have ordered that certain arbitration-

5 related discovery occur in this action. See Dkts. 56, 63. Plaintiff only responds to provide this

6 limited discovery as ordered by the Court. Plaintiff further objects to this Interrogatory to the

7 extent it seeks information protected by the attorney-client privilege or as attorney work-product.

8     Subject to and without waiving these objections, to the best of his recollection, Plaintiff

9 has never accessed the Classmates Website and thus has also never ran a search on the Classmates

10 Website. Plaintiff has no independent personal knowledge responsive to the remainder of this

11 Interrogatory. However, because the complaints in this litigation were prepared with the assistance

12 of his counsel and contains screenshots, Plaintiff assumes that his attorneys have accessed the

13 Classmates Website and have ran searches on the Classmates Website to prepare the Complaints

14 in this action. Plaintiff states that his counsels' access and searching of the Classmates Website

15 was not done at his request or direction, done on his behalf, and he did not authorize any person

16 to enter into an arbitration agreement on his behalf in connection with his counsels' access and

17 searching of the Classmates Website. *See* PL-BOSHEARS_000009-11; PL-

18 BOSHEARS_000012-18.

19

20 **INTERROGATORY NO. 3:** For each of the Screenshots, identify:

21     a. When the Screenshots were captured;

22     b. Each individual who captured the Screenshots or assisted in capturing the screenshots,

23         including their full name, employer, telephone number, mailing address, and email

24         address; and

25     c. To the extent any of the Screenshots were not captured by You, when you first saw or

26         otherwise became aware that the Screenshots were taken.

27

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

**ANSWER:**     The Ninth Circuit and this Court have ordered that certain arbitration-related discovery occur in this action. *See* Dkts. 56, 63. Plaintiff only responds to provide this limited discovery as ordered by the Court. Plaintiff further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or as attorney work-product.

Subject to and without waiving these objections, Plaintiff responds that he has no independent personal knowledge responsive to parts (a) and (b) of this Interrogatory. However, because the Complaints were prepared with the assistance of his counsel and contains screenshots, Plaintiff assumes that his attorneys captured the screenshots to prepare the Complaints in this action. The Screenshots were not taken at his request or direction, or taken on his behalf, and he did not authorize any person to enter into an arbitration agreement on his behalf in connection with the Screenshots. With respect to part (c) of this Interrogatory, Plaintiff first became aware of screenshots showing his high school photographs published on the Classmates website on October 18, 2021, in email correspondence that is being withheld as privileged. Plaintiff will produce a privilege log when the parties negotiate and agree to an ESI protocol.

**INTERROGATORY NO. 4:**     State whether You or any person, including but not limited to Your Attorneys, have ever registered for a Classmates Account or used a Classmates Account to Access the Classmates Website and searched for information about You and, if so, identify:

    a. The full name of the person(s) who registered the Account(s) or used the Account(s) to access the Classmates Website;

    b. The date(s) the Account(s) were registered;

    c. The date(s) the Account(s) were used the Account(s) to access the Classmates Website; and

    d. The e-mail(s) that were used to register the Account(s).

**ANSWER:**     The Ninth Circuit and this Court have ordered that certain arbitration-related discovery occur in this action. See Dkts. 56, 63. Plaintiff only responds to provide this limited discovery as ordered by the Court. This request is outside the scope of the limited

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

discovery ordered by the Court and not relevant to whether Plaintiff authorized his attorneys to enter an arbitration agreement on his behalf. Plaintiff further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or as attorney work-product. Plaintiff further objects to this interrogatory as unduly burdensome, disproportionate to the needs of the case, and outside the scope of Court-ordered discovery because it seeks information that is equally available to Defendant from its records. *See generally* Declaration of Tara McGuane (Dkt. 26).

Subject to and without waiving these objections, to the best of his recollection, Plaintiff has never registered for a Classmates Account, has never used a Classmates Account to Access the Classmates Website, and has never searched for information about himself on the Classmates Website. Plaintiff does not have personal or independent knowledge of whether anyone else has registered for a Classmates Account or used a Classmates Account to access the Classmates Website and search for information about him.

**INTERROGATORY NO. 5:** Identify each of Your Attorneys and for each, state whether You have an Engagement Letter with them and, if so, the date on which that Engagement Letter was executed by You.

**ANSWER:** The Ninth Circuit and this Court have ordered that certain arbitration-related discovery occur in this action. See Dkts. 56, 63. Plaintiff only responds to provide this limited discovery as ordered by the Court. Plaintiff objects that this Interrogatory is at least partially outside the scope of the limited discovery ordered by the Court. Plaintiff further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or as attorney work-product.

Subject to and without waiving these objections, Plaintiff is represented by attorneys at the law firms of Turke & Strauss LLP, Bursor & Fisher, P.A., Edelson PC, Morgan & Morgan, and the Law Office of Benjamin R. Osborn. Plaintiff will produce his retainer agreements. *See* PL-BOSHEARS_000003-8; PL-BOSHEARS_000012-18.

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

1

2　**INTERROGATORY NO. 6:**　　Identify each Communication You had with Your Attorney

3　up to and including September 5, 2023, including identifying:

4　　　a.　Date of the Communication;

5　　　b.　Whether the Communication was written or oral;

6　　　c.　All persons who participated in the Communication; and

7　　　d.　A summary of topics discussed in the Communication related to: (i) the factual

8　　　　　allegations in the Complaint related to the Classmates Website or Your Attorney's

9　　　　　investigation of the same; or (ii) the arguments raised by PeopleConnect regarding

10　　　　　Your obligation to arbitrate the claims You have asserted in the above-captioned

11　　　　　action.

12　**AMENDED ANSWER (10/18/23):** The Ninth Circuit and this Court have ordered that certain

13　arbitration-related discovery occur in this action. *See* Dkts. 56, 63. Plaintiff only responds to

14　provide this limited discovery as ordered by the Court. Plaintiff objects that this Interrogatory

15　seeks information outside the scope of the limited discovery ordered by the Court and is unduly

16　burdensome, disproportionate to the needs of the case at this time, and irrelevant to whether

17　Plaintiff authorized his attorneys to enter an arbitration agreement on his behalf. Plaintiff further

18　objects to this Interrogatory to the extent it seeks information protected by the attorney-client

19　privilege or as attorney work-product, particularly with respect to part (d) of the Interrogatory.

20　Based on this objection, Plaintiff will not respond to part (d). Plaintiff objects to the overbroad

21　and unduly burdensome temporal scope of "up to and including September 5, 2023" as beyond

22　the limited discovery ordered by the Court and irrelevant to whether Plaintiff authorized his

23　attorneys to enter an arbitration agreement on his behalf.

24　　　　Subject to and without waiving these objections, Plaintiff received a letter from Turke &

25　Strauss LLP dated October 11, 2021, and then emailed and talked with Sam Strauss on

26　October 18, 2021, and October 21, 2021, with the expectation that he was seeking legal advice

27　and might retain the firm to represent him in this context. Plaintiff emailed with Sam Strauss and

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

Raina Borrelli on November 12, 2021, and between November 16, 2021 and November 29, 2021 regarding PeopleConnect's questions with respect to email addresses or aliases Plaintiff used. Additionally, the November 12, 2021, email attached the Amended Complaint filed on October 29 , 2021. Plaintiff emailed with Sam Strauss and Brittany Resch on October 5, 2023, regarding the motion to dismiss briefing, and that email chain attached the motion to dismiss briefing (Dkts. 25, 30, 36). Plaintiff received a dropbox email from Turke & Strauss on March 3, 2023, with a copy of a retainer agreement for signature. Plaintiff received a dropbox email from Turke & Strauss on August 16, 2023, with a copy of a letter to PeopleConnect for signature. Plaintiff will produce the letter he received from Turke & Strauss LLP dated October 11, 2021 (*see* PL-BOSHEARS_000001-2), but all other communications are privileged.

For the avoidance of doubt, Plaintiff never authorized his attorneys to enter an arbitration agreement on his behalf, never directed his attorneys to visit the Classmates Website, never authorized his attorneys to agree to the Classmates Website's Terms of Service on his behalf, and has no independent personal knowledge as to whether, when, or how his attorneys may have visited the Classmates Website. *See* PL-BOSHEARS_000009-11; PL-BOSHEARS_000012-18.

**INTERROGATORY NO. 7:**      To the extent that any of Your responses to any of PeopleConnect's First Set of Requests for Admission served on You by PeopleConnect on September 7, 2023 are anything other than an unqualified admission, explain the basis of Your response and why the response is not an unqualified admission.

**ANSWER:**      The Ninth Circuit and this Court have ordered that certain arbitration-related discovery occur in this action. See Dkts. 56, 63. Plaintiff only responds to provide this limited discovery as ordered by the Court. Plaintiff objects that this Interrogatory seeks information outside the scope of the limited discovery ordered by the Court and is unduly burdensome, disproportionate to the needs of the case at this time, and irrelevant to whether Plaintiff authorized his attorneys to enter an arbitration agreement on his behalf. Plaintiff further objects to this Interrogatory to the extent it seeks information protected by the attorney-client

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

privilege or as attorney work-product. Accordingly, Plaintiff will not respond to this Interrogatory and refers PeopleConnect to his responses to PeopleConnect's First Set of Requests for Admission, which themselves explain the basis of his responses.


Dated: October 18, 2023                    By:    */s/ Raina C. Borrelli*
                                                   Raina C. Borrelli (*pro hac vice*)
                                                   Samuel J. Strauss, WSBA #46971
                                                   Brittany Resch (*pro hac vice*)
                                                   TURKE & STRAUSS LLP
                                                   613 Williamson St., Suite 201
                                                   Madison, Wisconsin 53703-3515
                                                   Telephone: (608) 237-1775
                                                   Facsimile: (608) 509 4423
                                                   raina@turkestrauss.com
                                                   sam@turkestrauss.com
                                                   brittanyr@turkestrauss.com

                                                   Michael F. Ram (SBN 104805)
                                                   mram@forthepeople.com
                                                   Marie N. Appel (SBN 187483)
                                                   mappel@forthepeople.com
                                                   MORGAN & MORGAN
                                                   COMPLEX LITIGATION GROUP
                                                   711 Van Ness Avenue, Suite 500
                                                   San Francisco, CA 94102
                                                   Telephone: (415) 358-6913
                                                   Facsimile: (415) 358-6923

                                                   Benjamin R. Osborn (*pro hac vice*)
                                                   ben@benosbornlaw.com
                                                   LAW OFFICE OF BENJAMIN R. OSBORN
                                                   102 Bergen St.
                                                   Brooklyn, NY 11201
                                                   Telephone: (347) 645-0464

                                                   *Attorneys for Plaintiff and the Proposed Class*

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

# CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on October 18, 2023, I caused the foregoing to be transmitted by email to the following:

Michael Rosenberger, WSBA #17730
Mark Wilner, WSBA #31550
GORDON TILDEN THOMAS &
CORDELL LLP
600 University Street, 2915
Seattle, Washington 98101
Telephone:  206-467-6477
mrosenberger@gordontilden.com
mwilner@gordontilden.com

Debbie L. Berman (*pro hac vice*)
Wade A. Thomson (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654
Telephone:  312-222-9350
dberman@jenner.com
wthomson@jenner.com

Brent Caslin, WSBA 36145
JENNER & BLOCK LLP
515 S. Flower Street, Suite 3300
Los Angeles, California 90071-2246
Telephone:  213-239-5100
bcaslin@jenner.com

Benjamin T. Halbig (*pro hac vice*)
bhalbig@jenner.com
JENNER & BLOCK LLP
455 Market Street, Suite 2100
San Francisco, California 94105
Telephone:  628 267-6800

DATED this 18th day of October, 2023.

TURKE & STRAUSS LLP

By: /s/ Raina C. Borrelli
    Raina C. Borrelli
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

## **VERIFICATION**

I, John Boshears, state that I am the Plaintiff in this matter; I have read the within and foregoing Amended Answers and Objections to Defendant's First Set of Interrogatories, know the contents thereof, and believe the same to be true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _____

John Boshears

**TURKE & STRAUSS LLP**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Doc ID: e9bb3b87d55f5bb5b0be3b5a78547963acd7ab41

# EXHIBIT 4

| | |
|---|---|
| **From:** | Sam Strauss |
| **To:** | "Boshears, John" |
| **Subject:** | RE: [External] Classmates.com |
| **Date:** | Monday, October 18, 2021 9:42:00 AM |
| **Attachments:** | Bedford North Lawrence High School_John Boshears_1995.png |
| | image001.png |
| | Bedford North Lawrence High School_John Boshears_1996.png |
| | Bedford North Lawrence High School_John Boshears_1997.png |
| | Bedford North Lawrence High School_John Boshears_1998.png |

Good morning, John:

Thanks again for speaking with me today.

Attached, please find your high school screen shots that are currently published on the Classmates.com site.

Would you mind confirming, if in fact, these are your high school photos?

Thanks again for your time today, we will be in touch.

Sam

**Samuel J. Strauss**
*Partner*
P: 608.237.1775 | F: 608.509.4423
**Madison** 613 Williamson Street #201 | Madison, WI 53703
**Seattle** 936 N 34th Street #300 | Seattle, WA 98103
www.turkestrauss.com



The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.

**From:** Boshears, John <jbosh@iu.edu>
**Sent:** Monday, October 18, 2021 8:30 AM
**To:** Sam Strauss <Sam@turkestrauss.com>
**Subject:** Re: [External] Classmates.com

812-606-6827

On Oct 18, 2021, at 9:28 AM, Sam Strauss <Sam@turkestrauss.com> wrote:

Hi John,

I would be happy to speak with you now. What is the best number to reach you?

Sam

**Samuel J. Strauss**
*Partner*
P: 608.237.1775 | F: 608.509.4423
**Madison** 613 Williamson Street #201 | Madison, WI 53703
**Seattle** 936 N 34th Street #300 | Seattle, WA 98103
www.turkestrauss.com

[<image001.png>](#)

The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.

**From:** Boshears, John <[jbosh@iu.edu](mailto:jbosh@iu.edu)>
**Sent:** Monday, October 18, 2021 8:19 AM
**To:** Sam Strauss <[Sam@turkestrauss.com](mailto:Sam@turkestrauss.com)>
**Subject:** Re: [External] Classmates.com

Yes, we can arrange a time for a phone call. I'm free for the next 30 minutes or so, any my afternoon tomorrow is mostly open.

> On Oct 18, 2021, at 9:16 AM, Sam Strauss <[Sam@turkestrauss.com](mailto:Sam@turkestrauss.com)> wrote:
>
> This message was sent from a non-IU address. Please exercise caution when clicking links or opening attachments from external sources.
>
> Good morning, John:
>
> Thanks for your email.
> I know your preference is email, however, would it be possible to arrange a time for a brief call this week?
>
> If so, please let me know when would be most convenient.
>
> Warm regards,
> Sam
>
> Samuel J. Strauss
> Partner
> P: 608.237.1775 | F: 608.509.4423
> Madison 613 Williamson Street #201 | Madison, WI 53703
> Seattle 936 N 34th Street #300 | Seattle, WA 98103
> [www.turkestrauss.com](http://www.turkestrauss.com)
>
>
> The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.
>
> -----Original Message-----
> From: Boshears, John <[jbosh@iu.edu](mailto:jbosh@iu.edu)>
> Sent: Monday, October 18, 2021 7:59 AM
> To: Sam Strauss <[Sam@turkestrauss.com](mailto:Sam@turkestrauss.com)>
> Subject: re: [Classmates.com](http://Classmates.com)
>
> Hello Mr Strauss,

I received your letter regarding the Classmates privacy class action investigation. I attended Bedford North Lawrence High School between the years 1995-1998, and did not give any consent to disseminate my personal information. I would be happy to speak with you or answer any questions, preferably through e-mail.

Thank you,
John Boshears

ATTORNEY-CLIENT PRIVILEGE
PRODUCED PURSUANT TO DKT 79

# EXHIBIT 5

| From: | Sam Strauss |
|-------|-------------|
| To: | Boshears, John |
| Subject: | Re: [External] Classmates.com |
| Date: | Thursday, October 21, 2021 8:23:26 AM |

Do you have time for a quick call?

**From:** Boshears, John <jbosh@iu.edu>
**Sent:** Thursday, October 21, 2021 8:20 AM
**To:** Sam Strauss
**Subject:** Re: [External] Classmates.com

Possibly, yes. What kind of time commitment would it involve?

> On Oct 18, 2021, at 10:51 AM, Sam Strauss <Sam@turkestrauss.com> wrote:
>
> Thanks John.
> Relatedly, any chance you would be willing to participate in the case as a witness?
> In a class action, the role is called, "class representative" and I would love to tell you what it would involve, if you are potentially interested.
> Sam
>
> **Samuel J. Strauss**
> *Partner*
> P: 608.237.1775 | F: 608.509.4423
> **Madison** 613 Williamson Street #201 | Madison, WI 53703
> **Seattle** 936 N 34th Street #300 | Seattle, WA 98103
> www.turkestrauss.com
>
> ───────────────────────────
>
> <image001.png>
>
> The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.
>
> **From:** Boshears, John <jbosh@iu.edu>
> **Sent:** Monday, October 18, 2021 9:44 AM
> **To:** Sam Strauss <Sam@turkestrauss.com>
> **Subject:** Re: [External] Classmates.com
>
> Sam,
> Yes, those are my high school yearbook photos.
> John
>
>
> > On Oct 18, 2021, at 10:42 AM, Sam Strauss <Sam@turkestrauss.com>
> > wrote:
> >
> > Good morning, John:
> > Thanks again for speaking with me today.

Attached, please find your high school screen shots that are currently published on the Classmates.com site.
Would you mind confirming, if in fact, these are your high school photos?
Thanks again for your time today, we will be in touch.

Sam

**Samuel J. Strauss**
*Partner*
P: 608.237.1775 | F: 608.509.4423
**Madison** 613 Williamson Street #201 | Madison, WI 53703
**Seattle** 936 N 34th Street #300 | Seattle, WA 98103
www.turkestrauss.com

<image001.png>

The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.

**From:** Boshears, John <jbosh@iu.edu>
**Sent:** Monday, October 18, 2021 8:30 AM
**To:** Sam Strauss <Sam@turkestrauss.com>
**Subject:** Re: [External] Classmates.com

812-606-6827


On Oct 18, 2021, at 9:28 AM, Sam Strauss <Sam@turkestrauss.com> wrote:

Hi John,
I would be happy to speak with you now. What is the best number to reach you?

Sam

**Samuel J. Strauss**
*Partner*
P: 608.237.1775 | F: 608.509.4423
**Madison** 613 Williamson Street #201 | Madison, WI 53703
**Seattle** 936 N 34th Street #300 | Seattle, WA 98103
www.turkestrauss.com

<image001.png>

The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly

prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.

**From:** Boshears, John <jbosh@iu.edu>
**Sent:** Monday, October 18, 2021 8:19 AM
**To:** Sam Strauss <Sam@turkestrauss.com>
**Subject:** Re: [External] Classmates.com

Yes, we can arrange a time for a phone call. I'm free for the next 30 minutes or so, any my afternoon tomorrow is mostly open.

> On Oct 18, 2021, at 9:16 AM, Sam Strauss <Sam@turkestrauss.com> wrote:
>
> This message was sent from a non-IU address. Please exercise caution when clicking links or opening attachments from external sources.
>
> Good morning, John:
>
> Thanks for your email.
> I know your preference is email, however, would it be possible to arrange a time for a brief call this week?
>
> If so, please let me know when would be most convenient.
>
> Warm regards,
> Sam
>
> Samuel J. Strauss
> Partner
> P: 608.237.1775 | F: 608.509.4423
> Madison 613 Williamson Street #201 | Madison, WI 53703
> Seattle 936 N 34th Street #300 | Seattle, WA 98103
> www.turkestrauss.com
>
>
> The information contained in this message is confidential and intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this message and then deleting this message from your computer.
>
> -----Original Message-----
> From: Boshears, John <jbosh@iu.edu>

Sent: Monday, October 18, 2021 7:59 AM
To: Sam Strauss <Sam@turkestrauss.com>
Subject: re: Classmates.com

Hello Mr Strauss,

I received your letter regarding the Classmates privacy class action investigation. I attended Bedford North Lawrence High School between the years 1995-1998, and did not give any consent to disseminate my personal information. I would be happy to speak with you or answer any questions, preferably through e-mail.

Thank you,
John Boshears

<Bedford North Lawrence High School_John Boshears_ 1995.png>
<Bedford North Lawrence High School_John Boshears_ 1996.png>
<Bedford North Lawrence High School_John Boshears_ 1997.png>
<Bedford North Lawrence High School_John Boshears_ 1998.png>