The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| JOHN BOSHEARS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEOPLECONNECT, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 2:21-CV-01222-MJP<br><br>**OPPOSITION TO MOTION TO DISMISS AND COMPEL ARBITRATION**<br><br>Hon. Marsha J. Pechman |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

LEGAL STANDARD................................................................................................2

FACTUAL BACKGROUND.....................................................................................2

ARGUMENT ............................................................................................................5

     A.     Counsel Opted-Out of the Arbitration Requirement in Accordance
            with the Ninth Circuit's Opinion in this Matter...........................................6

     B.     The Facts Show Mr. Boshears Expressly Directed his Counsel to
            Pursue Litigation in Court, and Never Ratified any Agreement to
            Arbitrate. ...................................................................................................7

     C.     PeopleConnect's Terms are Void and Unenforceable under
            Washington Law. .....................................................................................15

CONCLUSION........................................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

# **TABLE OF AUTHORITIES**

**Cases**

*Barnes v. Treece*, 15 Wash. App. 437, 444 (1976) ............................................................14

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ..............................2

*Boshears v. PeopleConnect, Inc.,* No. 22-35262, 2023 WL 4946630 (9th Cir. Aug. 3, 2023) ................................................................................................................1, 2, 3, 6, 9

*Burnett v. Pagliacci Pizza, Inc.*, 196 Wash. 2d 38 (Wash. 2020) ......................................16

*Chi. Title Ins. Co. v. Wash. State Office of the Ins. Comm'r,* 178 Wash. 2d 120 (Wash. 2013) ..............................................................................................................................9

*Consumers Ins. Co. v. Cimoch*, 69 Wash. App. 313 (1993) ..............................................13

*First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ...................................................................................................................2

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) ....................................................2

*King v. Riveland*, 125 Wn. 2d 500 (Wash. 1994) ..............................................................9

*Knapke v. PeopleConnect*, Inc., 38 F.4th 824 (9th Cir. 2022)................................7, 11, 14

*Riss v. Angel*, 934 P.2d 669 (Wash. 1997)........................................................................14

*Schroeder v. Fageol Motors*, 86 Wash. 2d 256, 544 P.2d 20 (1975) ................................16

*Streck v. Taylor*, 173 Wn. 367 (Wash. 1933)....................................................................15

*Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199 (Wash. 2022) ....................................15

*Thola v. Henschell*, 140 Wash. App. 70 (2007)................................................................13

*Walker v. Pacific Mobile Homes, Inc.*, 68 Wn.2d 347, 413 P.2d 3 (1966)........................7

*Zuver v. Airtouch Commc'ns*, 153 Wash. 2d 293, 103 P.3d 753 (2004) ....................15, 17

**Other Authorities**

Restatement (Third) of Agency ....................................................................................9, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

## **<u>INTRODUCTION</u>**

This Court previously denied PeopleConnect's motion attempting to force Mr. Boshears into arbitration against his will. Dkt. 46. On appeal, the Ninth Circuit vacated this Court's ruling, saying this Court should have allowed PeopleConnect to conduct arbitration-related discovery, and that under the plain language of the Terms counsel could still opt-out on behalf of Mr. Boshears. *See Boshears v. PeopleConnect, Inc.,* No. 22-35262, 2023 WL 4946630 (9th Cir. Aug. 3, 2023). PeopleConnect has now collected its arbitration-related discovery, and the results are in: discovery has confirmed that PeopleConnect's motion to compel arbitration is meritless. PeopleConnect's second bite at the apple should yield the same result as its first. The motion should be denied.

**First,** in accordance with the language of the Terms and the Ninth Circuit's opinion, counsel opted out of the arbitration requirement on behalf of Mr. Boshears on August 21, 2023. **Ex. 1**. Thus, even were PeopleConnect correct that the Terms are binding on Mr. Boshears, counsel effectively and timely opted-out of the arbitration on Mr. Boshears' behalf, as allowed under the express language of the Terms. This fact alone defeats PeopleConnect's motion (and PeopleConnect does not mention or even attempt to address it).

**Second**, the facts show that Mr. Boshears is not and has never been bound by the Terms. Both theories on which PeopleConnect asserts a contract exists fail on the facts. Counsel never had implied authority to agree to the Terms on Mr. Boshears' behalf, because the agreement through which Mr. Boshears retained counsel expressly instructed counsel to pursue <u>class litigation in court</u>, an instruction that is fundamentally incompatible with agreeing to arbitrate. **Ex. 2**. (Again, PeopleConnect does not mention or even attempt to address this fact). And Mr. Boshears did not impliedly ratify the arbitration requirement Terms because the facts show that: (1) Mr. Boshears has, and at all relevant points in time had, no knowledge that counsel had agreed to any Terms or

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

agreement to arbitrate on his behalf; (2) Mr. Boshears repudiated any supposed agreement to arbitrate immediately after counsel created the account used to prepare the Complaint; (3) counsel did not purport to act on Mr. Boshears' behalf in agreeing to the Terms, and indeed expressly told PeopleConnect he was not agreeing on Mrs. Boshears' behalf; and (4) at no point in time did Mr. Boshears intend to agree to arbitrate, which is a required element of implied ratification.

**Third**, even had Mr. Boshears agreed to the Terms, the Terms are procedurally and substantively unconscionable under Washington law. Accordingly, this Court can and should rule that the Terms are unenforceable and void, both with respect to Mr. Boshears and with respect to anyone else who visits www.classmates.com.

For these reasons and as further argued below, PeopleConnect's motion should be denied.

## LEGAL STANDARD

It is PeopleConnect's burden to show that a contract to arbitrate exists between Mr. Boshears and PeopleConnect. *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023) (The party moving to compel "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence"). When determining "whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). Here, the Ninth Circuit ruled that Washington state "contract and agency law" applies to the issue of whether a contract exists. *Boshears*, 2023 WL 4946630.

## FACTUAL BACKGROUND

PeopleConnect's statement of the facts is incomplete. Its motion omits two crucial facts, both of which are independently fatal to its motion to dismiss and compel arbitration. **First**, on

August 21, 2023, counsel opted-out of the arbitration requirement on behalf of Mr. Boshears. **Ex. 1** (the "2023 Opt-Out").[1] The 2023 Opt-Out complied with the requirements for "opting out as an agent for another user" laid out in the Terms. *See Boshears v. PeopleConnect, Inc.,* No. 22-35262, 2023 WL 4946630, at *1 (9th Cir. Aug. 3, 2023) (quoting the relevant Terms). The 2023 Opt-Out contains Mr. Boshears' name, signature, address, telephone number, email address. *Cf. id.* (holding that counsel's previous opt-out on behalf of Mr. Boshears was ineffective because it did not contain these elements). Plaintiff anticipates PeopleConnect may argue the 2023 Opt-Out was untimely because it came after this lawsuit was filed. But as further explained below, any untimeliness argument has already been foreclosed by the Ninth Circuit's opinion in this matter. Under the plain language of the Terms, any opt-out made by a lawyer on behalf of a client is timely so long as it comes within thirty days of the *client's* "first use" of the website. *See id.* (Ninth Circuit's opinion in this matter quoting the relevant Terms). Mr. Boshears has never used www.classmates.com. **Ex. 1** at PCI_BOSHEARS_0000053 (signed statement from Mr. Boshears); Dkt. No. 83, Ex. 3 (response to ROG 3). PeopleConnect does not dispute this fact. Accordingly, Mr. Boshears' "first use" has yet to occur, and the thirty-day clock laid out in the Terms never commenced. The 2023 Opt-Out is therefore timely, effective, and immediately dispositive of Defendant's motion. Pursuant to the Ninth Circuit's ruling in this matter, this Court need look no further than then 2023 Opt-Out to resolve PeopleConnect's motion.

**Second**, the agreement by which Mr. Boshears retained his counsel in this case directed counsel to pursue "litigation" in the form of a "class action" in "court." **Ex. 2** (the "Class Litigation Retainer"). Mr. Boshears signed the Class Litigation Retainer on October 21, 2021. *Id.* Its signing

---

[1] All exhibits are attached to the accompanying declaration of Benjamin R. Osborn.

is the moment at which counsel's representation of Mr. Boshears began. *Id.* The Class Litigation

Retainer unambiguously directs Mr. Boshears' counsel to pursue <u>class litigation in court:</u>

- The agreement is titled "CLASS REPRESENTATIVE AGREEMENT." *Id.*

- Paragraph 1 states that counsel "shall represent John Boshears in . . . individual and *class action* claims," and that Mr. Boshears "agrees to serve as *class representative* in this *litigation to be prosecuted* by [counsel] against [PeopleConnect]." (emphasis added). The paragraph ends with the word "LITIGATION," which is written in all-caps in the original. *Id.*

- Paragraph 2 states that counsel "shall seek appointment *by the court as class counsel*," and provides that counsel "may associate with additional law firms to pursue the LITIGATION." *Id.* (italics added, all-caps in original).

- Paragraph 4 provides that counsel will only receive payment in the form of "a portion of the gross proceeds, as determined *by the Court*." The text also contemplates the possibility that "*the Court* augments a recovery on the merits by awarding statutory attorneys' fees." *Id.* (emphasis added).

- Paragraph 5 provides that "The amount of ATTORNEYS' fees will be approved by *the Court*." *Id.* (emphasis added).

- Paragraph 6 states relates to the "Expenses" counsel will advance, and provides they will advance "*trial costs* reasonably necessary for prosecution of the LITIGATION." (italics added, all-caps in original).

- Paragraph 9 states that counsel may withdraw from representing Mr. Boshears "In the event the LITIGATION is not certified or is no longer pursued as a class action." *Id.* (all-caps in original).

- Paragraph 10 refers to the "LITIGATION" no fewer than three times. *Id.*

- Paragraph 11 is entitled "Duties of Class Representative" and states that Mr. Boshears "hereby agrees to serve as *Class Representative.*" The paragraph also states Mr. Boshears' "duty to preserve any documents . . . related to . . . the subject matter of the LITIGATION." (italics added, all-caps in original).

Thus, the agreement by which Mr. Boshears' retained counsel expressly directs counsel to pursue "LITIGATION" on a "class" basis "in court." *See* **Ex. 2.** The Class Litigation Retainer is fatal to PeopleConnect's implied authority theory. As further explained below, an agent does not have implied authority to undertake actions that are inconsistent with the principal's express instructions. Here, in the very document by which he retained counsel, Mr. Boshears (the principal) expressly instructed his counsel (the agent) to pursue <u>class litigation in court</u>. Therefore, it is axiomatic that counsel did not have implied authority to agree to arbitrate Mr. Boshears' claims, because this would contradict Mr. Boshears' express instructions.

The Class Litigation Retainer is also fatal to PeopleConnect's ratification theory. As further explained below, implied ratification applies only where the facts demonstrate an intent to affirm the contract and acquiesce in the results attendant to the contract. The Class Litigation Retainer – along with additional evidence discussed below – shows that Mr. Boshears did not intend to acquiesce in pursuing his claims in an arbitral forum. On the contrary, the evidence shows he intended to, and instructed his counsel to, pursue class litigation in court.

## **ARGUMENT**

PeopleConnect's motion to dismiss and compel arbitration should be denied for the reasons below, each of which is independently dispositive.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

**A. Counsel Opted-Out of the Arbitration Requirement in Accordance with the Ninth Circuit's Opinion in this Matter.**

PeopleConnect's motion to compel arbitration omits a crucial and dispositive fact. On August 21, 2023, counsel opted out of the arbitration clause in the Classmates.com Terms of Service on Plaintiff Boshears' behalf, in accordance with the procedures laid out in the Terms. **Ex. 1** ("2023 Opt Out"). PeopleConnect may contend that the 2023 Opt-Out was untimely because it came when this litigation was already long underway. But the Ninth Circuit has already foreclosed this argument on contract interpretation grounds. As the Ninth Circuit wrote, the Terms expressly allow counsel to opt-out of the arbitration clause "as an agent for another user . . . within (30) [*sic*] days of that other user's first use of the Services . . ." *Boshears v. PeopleConnect, Inc.,* No. 22-35262, 2023 WL 4946630 (9th Cir. Aug. 3, 2023) (quoting the Terms). Here, the "agent" is Mr. Boshears' counsel, and the "user" is Mr. Boshears. Mr. Boshears avers that he has never visited the Classmates website. **Ex. 1** at PCI_BOSHEARS_0000053 (signed statement from Mr. Boshears); Dkt. No. 83, Ex. 3 (response to ROG 3). PeopleConnect does not dispute this fact. Accordingly, Mr. Boshears' "first use of the Services" – *i.e.*, his first visit to www.classmates.com – has yet to occur, and thus the 30-day clock defined in the Terms has yet to start ticking. Therefore, under the Ninth Circuit's opinion in this matter, counsel's opt-out on behalf of Mr. Boshears was timely and effective under the plain meaning of the Terms. *See Boshears*, 2023 WL 4946630. PeopleConnect's motion to compel arbitration must therefore be denied. This Court need look no further than the 2023 Opt Out to resolve PeopleConnect's fatally defective motion.

PeopleConnect cannot have it both ways. If, as PeopleConnect insists, the Terms apply to Mr. Boshears, then *all* the Terms apply, including the provision by which Mr. Boshears' counsel may opt out of the arbitration requirement on his behalf within thirty days of *Mr. Boshears'* first

use of the website. Counsel did just that. **Ex. 1.** As a result, even were this Court to find that the Terms apply to Mr. Boshears, it must also recognize that Mr. Boshears' counsel exercised his right to opt out of the arbitration requirement in the Terms on his behalf.

**B. The Facts Show Mr. Boshears Expressly Directed his Counsel to Pursue Litigation in Court, and Never Ratified any Agreement to Arbitrate.**

Should this Court elect to look beyond the 2023 Opt Out, PeopleConnect's motion should still be denied, because the facts do not support either of the legal theories on which PeopleConnect asserts an agreement to arbitrate exists between Mr. Boshears and PeopleConnect.

**Implied Authority**. PeopleConnect claims Mr. Boshears conveyed "implied actual authority" to agree to its arbitration requirement when he told his counsel to "do what was necessary" to investigate his claim. Def.'s Mot. p. 10. PeopleConnect's argument rests on the principle that "authority to perform particular services for a principal carries with it the implied authority to perform the usual and necessary acts essential to carry out the authorized services." *Walker v. Pacific Mobile Homes, Inc.*, 68 Wn.2d 347, 351, 413 P.2d 3 (1966).

The problem with PeopleConnect's argument is that Mr. Boshears expressly instructed his counsel to pursue class litigation in court, and did so in the very agreement through which he retained his counsel. *See* **Ex. 2** & discussion in Factual Background section *above*. That he instructed his counsel to "do what was necessary" to investigate his claim came lends no support to PeopleConnect's motion, because he hired his counsel for the express purpose of pursuing that claim as a class action in court. In *Knapke v. PeopleConnect*, the Ninth Circuit observed that "the contours of [plaintiff]'s agreement with [the] law firm and the limits, if any, on [the firm]'s authority to act on [plaintiff]'s behalf" are crucial to determining whether implied authority to agree to arbitration exists. *Knapke v. PeopleConnect*, Inc., 38 F.4th 824, 834 (9th Cir. 2022).

Tellingly, PeopleConnect's motion makes no mention of Mr. Boshears' agreement with his counsel, despite the Ninth Circuit's instructions in *Knapke*. This is perhaps because Mr. Boshears' "agreement with [his] law firm[s]" fatally undermines PeopleConnect's motion in this case. *See Knapke*, at 834.

Mr. Boshears signed the Class Litigation Retainer on October 21, 2021, *before* counsel created the account with which counsel gathered the screenshots that appear in the Complaint. *See* Def's Mot. P. 7 (counsel created a new account a week later, on October 28, 2021) (citing McGuane Decl. ¶24); Dkt. 32, ¶2 (signed declaration from Benjamin R. Osborn attesting that "I gathered the screenshots and photographs that appear in the Complaint using this account," *i.e.*, the account associated with email address "lobo_investigation1@yahoo.com", which the parties agree was created on October 28, 2021).[2] When counsel created the new account on October 28, 2021, he did not have implied authority to agree to arbitration on Mr. Boshears' behalf, because Mr. Boshears had previously expressly instructed him to pursue <u>class litigation in court</u>. **Ex. 2**.

At the risk of repetition, Mr. Boshears retained his counsel on October 21, 2021, with instructions to pursue "class" "LITIGATION" "in court." **Ex. 2**. Pursuing class litigation in court was thus the "authorized service" Mr. Boshears hired his counsel to perform. *See Walker*, 68 Wn.2d, at 413. Mr. Boshears's deposition testimony confirmed what is evident on the face of the Class Litigation Retainer: Mr. Boshears hired his counsel to pursue "a class action lawsuit in

---

[2] Under the Ninth Circuit's ruling in this matter, only accounts counsel created *after* he became Mr. Boshears' agent are relevant. *See Boshears v. PeopleConnect, Inc.,* No. 22-35262, 2023 WL 4946630 ("If PeopleConnect can prove that Osborn became Boshears's agent *before* Osborn created one or more of the member accounts . . . Boshears may be bound."). As discussed, counsel became Mr. Boshears' agent on October 21, 2021. Accordingly, accounts created before that date – including the October 18, 2021, account referenced in PeopleConnect's motion – are not relevant. This stands to reason, as Mr. Boshears could not possibly have authorized Mr. Osborn to agree to anything on his behalf *before* Mr. Osborn became his agent.

federal court." Dkt. No. 86, Ex. 2, at 64:21-65:1-2. (Mr. Boshears directed his counsel to "research the use of [his] personal information pursuant to a class action lawsuit in federal court[]"). Therefore, agreeing to arbitrate is not a "usual and necessary act essential to carry out" Mr. Boshears' instructions. *See id.* On the contrary, agreeing to arbitrate Mr. Boshears' claims would have contradicted Mr. Boshears' express instructions. Accordingly, agreeing to arbitrate Mr. Boshears' claims was (and remains) outside the scope of counsel's authority to act on Mr. Boshears' behalf. *See Chi. Title Ins. Co. v. Wash. State Office of the Ins. Comm'r,* 178 Wash. 2d 120, 138 (Wash. 2013) ("To be within the scope of one's agency, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized") (quotation omitted). Where, as here, the evidence shows the principal never intended the agent to have authority to enter an agreement to arbitrate, no implied authority exists. *See King v. Riveland*, 125 Wn. 2d 500, 507 (Wash. 1994) ("Implied authority is actual authority, circumstantially proved, which the principal is deemed to have actually *intended* the agent to possess.") (emphasis added).

That counsel did not have implied authority to agree to arbitration on Mr. Boshears' behalf is further evidenced by the fact that counsel attempted to opt-out of the arbitration clause on Mr. Boshears' behalf on October 28, 2021 (the same day counsel created the account used to support Mr. Boshears' Complaint). *See* Def's Mot. p. 7. The Ninth Circuit held this opt-out was not effective. *See* 2023 WL 4946630. But the attempted opt-out is still relevant because it evidences that: (1) Mr. Boshears' counsel did not believe he had authority to agree to arbitration on Mr. Boshears' behalf, and indeed did his best to expressly disclaim any such agreement; and (2) PeopleConnect could not have reasonably believed counsel intended to bind Mr. Boshears, because *counsel told PeopleConnect so on the same day he created the account* (and in many similar communications to PeopleConnect in parallel cases). *See* Def's Mot. p. 7. Under

longstanding principles of contract law, a contract cannot be created via actual authority – whether implied or otherwise – unless both the agent and counterparty *reasonably believe* that said authority exists. *See, e.g.*, Restatement (Third) of Agency, §2.01 ("An agent acts with actual authority when . . . the agent *reasonably believes* . . . that the principal wishes the agent so to act"); §2.03 ("Apparent authority" exists only "when a third party *reasonably believes* the actor has authority to act on behalf of the principal"). Here, that Mr. Boshears' counsel expressly disclaimed any agreement to arbitrate in a message to PeopleConnect shows that neither counsel nor PeopleConnect "reasonably believed" counsel had authority to agree to arbitrate on Mr. Boshears' behalf. Accordingly, because *neither* the agent (counsel) nor the counterparty (PeopleConnect) held a reasonable belief that counsel was authorized to agree to arbitrate, no implied authority existed and no contract was ever created on behalf of Mr. Boshears.[3]

PeopleConnect argues that Mr. Boshears must or should have known that counsel's investigation of his claim would necessarily require agreement to arbitrate. But PeopleConnect fails to cite so much as a scrap of evidence to support this proposition. In fact, the evidence shows the reverse: Mr. Boshears did not believe, and still does not believe, that visiting the website to investigate his claim would require agreeing to arbitrate. Indeed, he did not even know it would require creating an account.[4] The evidence shows that Mr. Boshears "assume[d] that his attorneys have accessed the Classmates Website and have [run] searches on the Classmates Website to prepare the Complaints," but that he "never authorized his attorneys to agree to the Classmates

---

[3] Under the agency law quoted above, lack of reasonable belief on the part of *either* counsel *or* PeopleConnect would fatally undermine PeopleConnect's theory. Here, the facts show that both are lacking.

[4] Dkt. No. 86, Ex. 3 ("Plaintiff does not have personal or independent knowledge of whether anyone else has registered for a Classmates Account or used a Classmates Account to access the Classmates Website and search for information about him.").

Website's Terms of Service on his behalf." Dkt. No. 86, Ex. 3. Further, Mr. Boshears' averred in a signed letter that "he has never agreed to arbitration or any other provision of the Terms, never authorized [counsel] to agree to the Terms on his behalf, has never ratified any supposed agreement to the Terms, has never read the www.classmates.com Terms, . . . and has and continues to repudiate any supposed agreement to the Terms." **Ex. 1**.

At most, the evidence shows Mr. Boshears assumed his counsel would visit the website to investigate his claim. In fact, PeopleConnect hinges its motion on that assumption: "Plaintiff therefore, expected his attorneys would access Classmates.com to investigate whether his name and images appeared." Dkt. No. 85 p. 11. But that Mr. Boshears assumed his counsel would visit the website does not in any way imply that Mr. Boshears believed his counsel would *enter into an arbitration agreement on his behalf* while doing so. Indeed, as discussed in detail above, Mr. Boshears expected and directed his counsel to pursue this case as a class action in court. Because PeopleConnect failed to show Mr. Boshears expected his attorneys to agree to arbitration on his behalf, PeopleConnect's implied authority theory fails.

**Implied Ratification**. Similarly, PeopleConnect's implied ratification theory fails on the facts.[5] The Ninth Circuit's opinion in *Knapke* is dispositive. *See* 38 F.4th 824 (9th Cir. 2022). As the *Knapke* court observed:

> There is no evidence that [plaintiff] knew, when she filed her complaint, that [counsel] had even agreed to the Terms of Service. And were that still the state of the record following discovery, it would follow that there could be no evidence that Knapke knew that [counsel] had agreed to the Terms of Service *on her behalf*.

---

[5] PeopleConnect does not contend, and cannot reasonably contend, that Plaintiff <u>expressly</u> ratified any agreement to arbitrate. Thus, its argument rises and falls entirely on whether PeopleConnect has shown <u>implied</u> ratification.

*Id.*, at 835 (emphasis in original). This Court cited the same principal in its order denying PeopleConnect's initial motion to compel arbitration, writing that "[n]or do any facts suggest that Boshears had any knowledge, let alone 'full knowledge,' that his counsel ever agreed to arbitrate claims related to his use of the Classmates' website." Dkt. 46, at *18.

Now, after conducting discovery, PeopleConnect still fails to cite any evidence indicating Mr. Boshears "knew that [counsel] had agreed to the Terms of Service *on [his] behalf*." *See Knapke*, at 835. Again, PeopleConnect at best establishes only that Boshears "assumed" his counsel would take screenshots from the website to support his case. Dkt. No. 86, Ex. 3. And again, that Mr. Boshears expected his counsel would visit the website to gather evidence does not in any way imply he expected them to *agree to arbitration on his behalf*. On the contrary, the facts show the <u>opposite</u>: at all relevant points in time, Mr. Boshears affirmatively believed his counsel had <u>not</u> agreed to the Terms on his behalf. The evidence shows:

- When he retained his counsel on October 21, 2021, Mr. Boshears instructed them to pursue "class" "litigation" in "court," an instruction anathema to any agreeing to arbitrate. **Ex. 2.**

- Mr. Boshears "never authorized his attorneys to agree to the Classmates Website's Terms of Service on his behalf." Dkt. No. 86, Ex. 3.

- On the same day counsel created the account he used to prepare Mr. Boshears' complaint, October 28, 2021, counsel sent a letter to PeopleConnect purporting to opt-out of any agreement to arbitrate on Mr. Boshears' behalf. Def's Mot. p. 7.

- In his Complaint filed one day later, on October 29, 2021, Plaintiff alleged that "All of the screenshots displayed in this Complaint were obtained by Plaintiff's counsel using accounts for which counsel opted out of the arbitration provision." Dkt. No. 17, ¶28.

- At his deposition, Mr. Boshears testified he had no "independent knowledge" of what his attorneys did to collect screenshots from www.classmates.com and never authorized them to agree to Classmates' terms. Dkt. No. 86, Ex. 2, 88:4-19; 92:13-21. Indeed, he directed counsel to "research the use of [his] personal information pursuant to a class action lawsuit in federal court[,]" never suggesting he wanted to arbitrate his claims. *Id*. at 64:21-65:1-2.

Thus, the facts show that at the time counsel gathered the information needed to support Mr. Boshears' claim, not only did Mr. Boshears have no knowledge of any agreement to arbitrate, but Mr. Boshears *knew* his counsel had attempted to opt out of any such agreement on his behalf.

Further, PeopleConnect also failed to show Mr. Boshears knew his counsel created any account on www.classmates.com, or that creating an account or agreeing to the Terms would be a necessary part of gathering the information needed to support his claim. When deposing Mr. Boshears, Classmates asked him whether he was "aware of" Classmates' motion to dismiss, but stopped short of asking whether he knew counsel had created Classmates accounts. Doc. 86, Ex. 2, 82:10-84:19. In fact, Classmates never asked about the accounts or the arbitration terms governing them. *See generally id*. In other words, no evidence shows Mr. Boshears knows they exist. Quite the opposite. Mr. Boshears denies knowing whether any such accounts exist. Dkt. No. 86, Ex. 3 ("Plaintiff does not have personal or independent knowledge of whether anyone else has registered for a Classmates Account or used a Classmates Account to access the Classmates Website and search for information about him.").

A principal cannot be bound by ratification to a contract signed by another unless the principal has "knowledge of all the material facts surrounding the transaction." *Consumers Ins. Co. v. Cimoch*, 69 Wash. App. 313, 323 (1993); *see also Thola v. Henschell*, 140 Wash. App. 70, 86 (2007) (same). Here, the evidence shows that Mr. Boshears had no knowledge whatsoever: he

did not know counsel had agreed to any Terms on his behalf, and indeed affirmatively believed his counsel had *not* agreed to any Terms. Further, he did not know his counsel had created any account or accounts to investigate his claim. Accordingly, under both *Knapke* and controlling Washington state agency law, PeopleConnect's implied ratification theory fails.

PeopleConnect's implied ratification theory fails for additional reasons as well. **First,** even were the filing of the Complaint a legally cognizable "benefit" that could bind a principal via ratification (it is not), Mr. Boshears repudiated any agreement to arbitrate immediately after counsel created the account used to investigate Mr. Boshears' claim. Under Washington law, principal cannot be bound by ratification to an agent's action if she "disaffirmed . . . within a reasonable time." *Barnes v. Treece*, 15 Wash. App. 437, 444 (1976) (quotation omitted). Here, Mr. Boshears repudiated any agreement to arbitrate in the Complaint he filed the very next day, on October 29, 2021. Dkt. No. 17, ¶28.

**Second**, PeopleConnect has failed to introduce any evidence showing that when counsel created the account on October 28, 2021, counsel intended to or professed to be agreeing to arbitration on Mr. Boshears' behalf. A principal cannot be bound by ratification to a contract entered into by an agent unless, at the time of agreement, the agent intended to or professed to act on behalf of the principal in entering the contract. *Riss v. Angel*, 934 P.2d 669, 683 (Wash. 1997) (en banc) (ratification "is the affirmance by a person of a prior act . . . which was done or professedly done on his account"); *Knapke*, 38 F.4th 824, 835 (9th Cir. 2022) ("an undisclosed principal does not become a party to a contract when the agent does not intend to act for the principal.") (quoting Restatement (Third) of Agency § 6.03 cmt. c (2006)). Here, the facts show that when counsel created the account on October 28, 2021, counsel neither intended nor professed to agree to the Terms or the arbitration requirement therein on Mr. Boshears' behalf. Indeed, as

discussed in detail above, counsel sent a letter to PeopleConnect on October 28, 2021 – the same day he created the account used to support Mr. Boshears' Complaint – in which he expressly disavowed any intent to bind Mr. Boshears.

**Third**, PeopleConnect has failed to introduce any evidence showing that Mr. Boshears "acquiesce[d] in the results attending" his supposed ratification of the arbitration agreement. *See Streck v. Taylor*, 173 Wn. 367, 368 (Wash. 1933) ("It is essential to implied ratification by the [principal] that he know the facts concerning the transaction and that he *acquiesce in the results attending it*.") (emphasis added). Here, the "results attending" Mr. Boshears' supposed ratification are straightforward: he would be compelled to dismiss this putative class action litigation before a court, and instead pursue his claim on an individual basis in an arbitral forum. The evidence shows Mr. Boshears never "acquiesced" to this result. On the contrary, as discussed in detail above, he expressly instructed his counsel to pursue this class action in court, and has consistently and vehemently contested PeopleConnect's repeated attempts to force him into the arbitral forum, including via this filing.

Thus, PeopleConnect's implied ratification theory also fails.

## C. PeopleConnect's Terms are Void and Unenforceable under Washington Law.

Even had Mr. Boshears agreed to the Terms (he did not), PeopleConnect's terms are void and unenforceable because they are unconscionable. Under Washington law, "[e]ither substantive or procedural unconscionability is sufficient to void a contract." *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199 (Wash. 2022) (citation omitted).

Here, the Terms are both procedurally and substantively unconscionable because they do not give website visitors a "meaningful choice" on whether to accept them, and because the consequences of agreement to the terms are extraordinarily harsh. *See Zuver v. Airtouch*

*Commc'ns*, 153 Wash. 2d 293, 303, 103 P.3d 753, 759 (2004) ("procedural unconscionability" exists when there is no "meaningful choice" but to accept them); *Schroeder v. Fageol Motors*, 86 Wash. 2d 256, 260, 544 P.2d 20, 23 (1975) ("Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh").

From the moment a person or their agent visits www.classmates.com, PeopleConnect contends that person has agreed to the Terms, even if the person never notices the link to the Terms or reviews them: "[b]y accessing and using the Websites and Services you are agreeing to the following Terms of Service." Dkt. No. 87, Ex. 1. Thus, visitors cannot review the Terms *at all* before they are bound, because to locate the Terms at all the visitor must first visit the website. *See id.* The Terms are therefore a contract of adhesion the visitor has no "meaningful choice" but to accept. Under Washington law, this alone is enough to render the Terms unconscionable and void. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wash. 2d 38 (Wash. 2020) ("A contract is procedurally unconscionable when a party with unequal bargaining power lacks a meaningful opportunity to bargain . . . The key inquiry is whether the party lacked meaningful choice").

Further, if a person or their agent searches the www.classmates.com site to see if their name and childhood photographs appear, PeopleConnect's Terms assert that, *simply by virtue of having performed a search,* the person whose name was searched has thereby consented to the commercial use of their name and likeness. Incredible as it seems, the relevant language from the Terms is quoted here:

> You agree that, in the event you conduct a search for yourself on the Websites, you authorize another person to conduct a search for you on the Websites, or another person conducts a search for you on the Websites on your behalf or for your benefit, **you have expressly consented to the use and display of information about you** (**including**, without limitation, **your name, image, photo, and other attributes** of your identity) on the Websites **for any and all commercial** and non-commercial **purposes**.

Dkt. No. 87, Ex. 1. By means of this provision, PeopleConnect purports to create a "heads-I-win, tails you lose" scenario. If a person never confirms PeopleConnect is using their name and likeness on www.classmates.com, they cannot sue PeopleConnect because they have not confirmed the facts. But if a person confirms Classmates is using their name and likeness on the site, they also cannot sue Classmates because they purportedly "consented" to the use.

This provision is unconscionable on its face. It leaves the visitor with "no meaningful choice" regarding whether they consent to PeopleConnect's commercial use of their name and likeness. *See Zuver*, at 759. And it is manifestly "one-side" and "overly harsh" because it forces the visitor to sacrifice their substantive right to control the commercial use of their name and likeness in the very moment that visitor discovers that right has been violated. *See Schroeder*, at 23. It is as if PeopleConnect placed Taylor Swift's name and face on a billboard, but also included a statement in fine print stating that: "Taylor Swift, by looking at this billboard, you thereby consent to our use of your name and likeness for commercial purposes." It mocks contract law to suggest this is meaningful "consent." Under the logic of PeopleConnect's Terms, if Ms. Swift (or her lawyer) were to search for her name on www.classmates.com and find that PeopleConnect is using her high school photos to advertise subscriptions, she thereby will have "consented" to PeopleConnect's use, because that is what the Terms say. This is not how contract law works.

If the Court were to enforce the Terms, no litigant could ever sue PeopleConnect for misappropriating their names and likenesses on its website. This is clearly unconscionable. Accordingly, the Terms are void and unenforceable under Washington law.

**CONCLUSION**

For the reasons set forth above, PeopleConnect's motion to dismiss and compel arbitration should be DENIED.

I certify that this memorandum contains 5,653 words, inclusive of footnotes, tables, and signature blocks.


DATED this 13th day of May, 2024.

STRAUSS BORELLI PLLC

By: */s/ Samuel J. Strauss, WSBA #46971*
Samuel J. Strauss, WSBA #46971
Email: sam@straussborrelli.com
One Magnificent Mile
980 N Michigan Avenue
Suite 1610
Chicago IL, 60611