1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN BOSHEARS, individually and on
behalf of all others similarly situated,

               Plaintiff,

     v.

PEOPLECONNECT, INC.,

               Defendant.

CASE NO. C21-1222 MJP

ORDER DENYING DEFENDANT'S
MOTION TO DISMISS AND
COMPEL ARBITRATION

**INTRODUCTION**

      This Matter comes before the Court on Defendant PeopleConnect, Inc.'s Motion to Dismiss and Compel Arbitration. (Dkt. No. 85.) Having reviewed the Motion, Plaintiff John Boshears's Response (Dkt. No. 88), the Reply (Dkt. No. 93), the Parties' presentations during oral argument (Dkt. No. 95), and all supporting materials, the Court DENIES the Motion.

1

## BACKGROUND

2

**A.      PeopleConnect and the Classmates.com Terms of Service**

3      PeopleConnect owns and operates Classmates.com, a website marketing access to and

4      reprints of over 400,000 high school yearbooks (See First Amended Complaint ("FAC") ¶ 19

5      (Dkt. No. 17).) Classmates.com customers access the services in three different ways: (1) as

6      individual "Visitors," who browse the website without registering for an account; (2) as "Free

7      Members," who create a Classmates.com account by submitting their information and agreeing

8      to the company's Terms of Service; and (3) as "Paid Members," or Free Members who have then

9      purchased a subscription to Classmates.com. (Declaration of Tara McGuane ¶ 5 (Dkt. No. 87).)

10      Each tier affords the customer differing levels of access to the Classmates.com services—for

11      example, Visitors are allowed to view "limited yearbook content," while Free and Paid Members

12      may freely browse yearbooks from their own graduating high school, search for other Free and

13      Paid Members, and conduct text searches within yearbooks. (Id. ¶¶ 15–16.)

14      When registering as either a Free Member or a Paid Member, customers are presented

15      with a registration page that requires them to provide certain information, including their

16      graduating high school, year of graduation, first name, last name at time of graduation, and email

17      address. (McGuane Decl. ¶ 8.) They also must select a username and password for their

18      Classmates.com account. (Id.) Before selecting a large yellow button labeled "Submit,"

19      customers are warned that by doing so they "agree to the Classmates Terms of Service and

20      Privacy Policy," and are provided a hyperlink to both documents. (Id.)

21      The version of PeopleConnect's Terms of Service relevant to this dispute was made

22      effective on November 9, 2021. (McGuane Decl. Ex. 1 (the "TOS") at 11.) The second

23      paragraph of the TOS warns users of the following:

24

By accessing and using the Websites and Services you are agreeing to the following Terms of Service. We encourage you to review these Terms of Service, along with the Privacy Policy, which is incorporated herein by reference, as they form a binding agreement between us and you. If you object to anything in the Terms of Service or the Privacy Policy, do not use the Websites and Services. Additionally, if you access and use the Websites and Services on behalf of or for the benefit of another, you are also agreeing to these Terms of Service on their behalf, and further affirm that you have the authority to so agree. Any reference to 'you' or 'your' shall also include any such person(s).

(TOS at 1.)

The TOS also contain an arbitration provision. (See generally, TOS § 12.) The arbitration provision requires arbitration of "any and all disputes" that may arise between the person using Classmates.com and PeopleConnect. (Id.) By agreeing to the TOS, customers also "independently waive any right to bring or participate in any class action for any Disputes," (TOS § 12(E)), and affirm that dispute resolution "BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION. NEITHER PARTY SHALL BE A MEMBER IN A CLASS, CONSOLIDATED, OR REPRESENTATIVE ACTION OR PROCEEDING. . ." (TOS § 12(C)).

However, the TOS also allow for customers and their agents to opt-out of arbitration by notifying PeopleConnect via mail. (TOS § 12(D).) To be effective, an opt-out notice must be signed and "must include your name, address, phone number and email address(es) used to register with or use the Services, as well as the name, address, phone number and email address(es) of any person for whom you are opting out as their agent." (Id.) The TOS contains the following two opt-out provisions:

(1) "If opting out for yourself, this [opt-out] notice must be sent within thirty (30) days of your first use of the Services . . ."

(2) "If opting out as an agent for another user, this [opt-out] notice must be sent within (30) [sic] days of that other user's first use of the Services."

1   (TOS § 12(D).)

2   **B.      Boshears Engages Counsel to Investigate his Potential Claims**

3          Plaintiff Josh Boshears is a citizen of Indiana, where he resides and attended high school

4   from 1995–98. (FAC ¶¶ 22, 37.) On or around October 11, 2021, Boshears received a mailed

5   solicitation from Attorney Samuel Strauss informing him that Classmates.com may "contain[]

6   information related to former students of Bedford North Lawrence High School who were in

7   attendance in the years 1995–98. (Declaration of Benjamin T. Halbig Ex. 1 (Dkt. No. 86).) The

8   solicitation includes language reading that "Turke & Strauss lawyers represent clients in class

9   action lawsuits across the country." (Halbig Decl. Ex. 1 at 5.) Prior to then, Boshears was not

10  aware of Classmates.com, let alone a user of the website. (Halbig Decl. Ex. 2 (the "Boshears

11  Dep.") at 44:12–18.)

12         On October 18, 2021, Boshears and Attorney Strauss exchanged emails and phone calls

13  regarding PeopleConnect's business practices and Boshears's "potential willingness to serve as a

14  class representative" in a legal claim against the company. (See Halbig Decl. Ex. 4; Boshears

15  Dep. at 53, 60.) Boshears assumed that prior to bringing a legal claim against PeopleConnect,

16  someone would need to "check the website to make sure [his] information actually appeared" on

17  Classmates.com. (Boshears Dep. at 56.)

18         That same day, Attorney Benjamin Osborn searched for Boshears's information and

19  likeness on Classmates.com. (McGuane Decl. ¶ 23.) To do so, Attorney Osborn used a Free

20  Member Classmates.com account, which he had created on April 16, 2021, under the alias "Ben

21  Whipple." (Id. ¶¶ 21, 23.) Attorney Osborn took four screenshots of the Classmates.com website,

22  including screenshots of pages containing Boshears's information and photographs. (Halbig

23  Decl. Ex. 5.) Attorney Strauss sent these screenshots to Boshears via email and asked Boshears

24

to "confirm[], if in fact, these [were his] high school photos." (Id.) Boshears confirmed that the photos featured his likeness and told Attorney Strauss that he "could review the information [from Classmates.com] with regards to pursuing a federal lawsuit," and that he "could use those images . . . in support of [a potential legal] claim" against PeopleConnect. (Boshears Dep. at 57–58.)

Three days later, on October 21, 2021, Boshears signed an agreement to serve as a class representative in this case. (Declaration of Benjamin R. Osborn Ex. 2 (Dkt. No. 89).) When he signed the class representative agreement ("CRA"), Boshears understood that he was authorizing his counsel "[t]o research the use of [his] personal information pursuant to a class action lawsuit in federal court," and that they would "do what was necessary in that investigation in order to bring [his] claims." (Boshears Dep. at 64–65.) The CRA would only remain effective if Boshears's claims proceeded as a class action lawsuit. (See CRA § 9.)

Attorney Osborn then created a new account on October 28, 2021, under the username Benjamin Osborn (the "Osborn Account"). (McGuane Decl. ¶ 24.) He then used the Osborn Account to search for Boshears' information on Classmates.com and take screenshots of the resulting webpages. (Id. ¶¶ 25–27.) Finally, on that same day, Attorney Osborn sent PeopleConnect an opt-out notice containing his name, address, phone number, email address, and signature, along with a note that he wished to opt out "on behalf of anyone for whom I act as an agent, including clients I represent in my capacity as an attorney." (Id. ¶ 24 & Ex. 3.)

## C.    Boshears Files Suit Against PeopleConnect

On October 29, 2021, Boshears filed this lawsuit, alleging that Classmates.com impermissibly used his persona to advertise its subscription services in violation of the Indiana Right of Publicity Act, Ind. Code. § 32-36-1-8; and as a common law tort of misappropriation of

1    his name and likeness. (FAC ¶¶ 50-61.) Boshears seeks to represent a class of similarly situated

2    Indianans. (Id. ¶¶ 42, 46.) The FAC includes at least four screenshots taken by Attorney Osborn

3    while he used the Osborn Account. (McGuane Decl. ¶¶ 26–27; FAC ¶¶ 28, 33–35.)

4    **D.      PeopleConnect's First Motion to Compel Arbitration and Ninth Circuit's Review**

5            PeopleConnect moved to dismiss Boshears's Complaint in December 2021, arguing

6    (among other things) that Boshears's attorneys had bound their client to mandatory arbitration by

7    virtue of accessing the Classmates.com service on his behalf. (See Dkt. No. 25 at 22–25.)

8    Boshears reviewed both his opposition brief and PeopleConnect's reply brief. (Boshears Decl. at

9    81, 84–85.) The Court granted in part PeopleConnect's motion to dismiss, but declined to

10   compel Boshears's claims to mandatory arbitration. (Dkt. No. 46 at 15–19.)

11           On appeal, the Ninth Circuit vacated the Court's denial of PeopleConnect's arbitration

12   demand and remanded the case back to the Court to "allow for arbitration-related discovery to

13   proceed." Boshears v. PeopleConnect, Inc., No. 22-35262, 2023 WL 4946630, at *1 (9th Cir.

14   Aug. 3, 2023). The panel provided the following guidance as to whether Boshears could have

15   been bound by his attorney's agreement to arbitrate:

16           First, the district court is instructed to apply Washington contract and agency law.
             If PeopleConnect can prove that Osborn became Boshears's agent before Osborn
17           created one or more of the member accounts, and if it can prove that Boshears
             knowingly accepted a benefit from, failed to repudiate, or exhibited conducting
18           adopting that or those member account(s), Boshears may be bound by Osborn's
             agreement to arbitrate.
19

20   Id. (cleaned up) (emphasis in original).

21           The Ninth Circuit also found that Attorney Osborn's October 28, 2021, opt-out notice

22   was "plainly ineffective as to Boshears because it did not include Boshears's signature, name,

23   address, e-mail address, or phone number." Boshears, 2023 WL 4946630, at *1. The panel also

24   noted that despite requesting that the Parties discuss PeopleConnect's opt-out provisions

1    contained in Section 12(D) of PeopleConnect's TOS, "neither party did so in a meaningful

2    manner." Id., at *2.

3        On August 21, 2023, before the Ninth Circuit issued the mandate, Attorneys Borrelli and

4    Osborn sent an opt-out notice to PeopleConnect on behalf of themselves and Boshears. (See

5    Osborn Decl. Ex. 1 (the "2023 Opt-Out").) The 2023 Opt-Out stated that Boshears "does not

6    agree to the terms or the arbitration agreement it contains," and included the names, addresses,

7    phone numbers, email addresses, and signatures of Boshears, Attorney Borrelli, and Attorney

8    Osborn (Id.) The 2023 Opt-Out alleged that Boshears had "never used www.classmates.com,"

9    and that the opt-out was therefore "timely pursuant to the Terms PeopleConnect drafted." (Id.)

10    **E.        Proceedings After Remand**

11        After the Ninth Circuit remanded, the Court permitted the Parties to engage in limited

12    discovery related to arbitration. (Dkt. No. 63.) This Order relies on the facts developed during

13    arbitration-related discovery. The Court summarizes relevant timeline as follows:

14        • **October 11, 2021**: Boshears receives an initial outreach letter from Attorney

15            Strauss. (Halbig Decl. Ex. 1.) The letter indicates that his firm, Turke & Strauss,

16            "represent clients in class action lawsuits across the country." (Id. at 5.)

17        • **October 18, 2021**: Boshears and Attorney Strauss discuss the former's

18            willingness to serve as a class representative in a class action lawsuit against

19            PeopleConnect. (Halbig Decl. Ex. 4; Boshears Dep. at 53, 60.)

20        • **October 18, 2021**: Attorney Osborn searches for Boshears on Classmates.com

21            using the previously made Whipple Account. (McGuane Decl. ¶¶ 21–23.)

22        • **October 21, 2021**: Boshears signs the CRA and instructs his attorneys to research

23            the use of his likeness on Classmates.com for purposes of being a class

24

representative. (Boshears Dep. at 64–65.) The CRA limits the scope of representation to class actions only. (CRA § 9.)

- **October 28, 2021**: Attorney Osborn creates the Osborn Account, searches for Boshears, captures at least four screenshots for use in the FAC, and sends PeopleConnect an opt-out on behalf of his clients. (McGuane Decl. ¶ 24–27.)

- **October 29, 2021**: Boshears files the FAC. (Dkt. No. 17.)

Now, PeopleConnect again moves to compel Boshears's claims to arbitration. (Dkt. No. 85.)

## ANALYSIS

**A.    Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") governs arbitration agreements in any contract affecting interstate commerce. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001). The FAA "reflect[s] both a liberal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (cleaned up). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and must enforce them according to their terms." Id. (cleaned up); see also Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).

The Court's authority to compel arbitration arises under Section 4 of the FAA. See In re Van Dusen, 654 F.3d 838, 843 (9th Cir. 2011); 9 U.S.C. § 4. The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Norcia v. Samsung Telecomm. Am., 845 F.3d 1279, 1283 (9th Cir. 2017). The Court gives the party denying the existence of an agreement to arbitrate the benefit of all reasonable doubts and inferences, see Alarcon v. Vital Recovery Servs., Inc., 706 F.

App'x 394, 394 (9th Cir. 2017) (citing Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991)), and applies ordinary state law principles governing the formation of contracts. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Norcia, 845 F.3d at 1283.

**B.      Boshears's Counsel Opted Boshears Out of the Arbitration Agreement**

Boshears argues that his claims cannot be sent to arbitration because his attorneys timely opted him out of the TOS's arbitration provision on August 21, 2023. (Opp. at 5–6, 9.) The Court agrees.

Contract interpretation is generally a question of law for the Court. Berg v. Hudesman, 115 Wn.2d 657, 663 (1990). Under Washington law, courts follow the "objective manifestation" theory of contracts. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503 (2005). This requires courts to "determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Id. (internal citation omitted). Thus, when interpreting contracts, courts should "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Id. at 504. If the language of a contract is clear and unambiguous, the Court must "enforce the contract as written; it may not modify the contract or create ambiguity where none exists." Lehrer v. State Dep't of Social & Health Servs., 101 Wn. App. 509, 515 (2000). "Language is ambiguous if, on its face, it is fairly susceptible to more than one reasonable interpretation." Mendoza v. Rivera-Chavez, 88 Wn. App. 261, 268 (1997) (quotation omitted). "Ambiguities must be construed against the drafter," and courts should not read ambiguity into a contract "where it can reasonably be avoided by reading the contract as a

1    whole." <u>Spokane Airport Bd. v. Experimental Aircraft Ass'n, Chapter 79</u>, 198 Wn.2d 476, 484

2    (2021) (quoting <u>McGary v. Westlake Inv'rs</u>, 99 Wn.2d 280, 285–87 (1983)).

3          The Classmates.com TOS contains an arbitration provision. (<u>See</u> TOS § 12.) However,

4    the TOS also provides parties with "the right to opt-out, for yourself and on behalf of anyone for

5    whom you are acting as an agent, and not be bound by this arbitration provision. . . ." (<u>Id.</u> §

6    12(D).) Specifically, parties may be opted-out of the agreement to arbitrate through the following

7    two methods:

8          (1) "If opting out for yourself, this [opt-out] notice must be sent within
              thirty (30) days of your first use of the Services . . ."

9          (2) "If opting out as an agent for another user, this [opt-out] notice must
              be sent within (30) [sic] days of that other user's first use of the
10             Services."

11    (TOS § 12(D).)

12          As a threshold matter, because the Parties dispute the meaning and application of the

13    arbitration provisions, the Court must interpret the provisions before ruling on whether the 2023

14    Opt-Out was effective. The Court finds that the first provision allows a user to opt-out of

15    mandatory arbitration on their <u>own</u> behalf. <u>See</u> <u>Boshears</u>, 2023 WL 4946630, at *2 (discussing

16    the first provision). An opt-out made under the first provision must be sent to PeopleConnect

17    within 30 days of the user's first use of Classmates.com. <u>Id.</u>; <u>see also</u> <u>Knapke v. PeopleConnect,</u>

18    <u>Inc</u>, 38 F.4th 824, 836 (9th Cir. 2022) ("Under the Terms of Service, users may opt out of

19    arbitration through written notice within thirty days of first using Classmates.com."). The Court

20    also finds that the second provision allows for an agent to opt-out of mandatory arbitration <u>on</u>

21    <u>behalf of their principal</u>. Like the first provision, opt-outs under the second provision are time-

22    restricted and only effective if made within 30 days of the other user's first use of

23    Classmates.com.

24

1    Under this plain language interpretation, the Court finds that the 2023 Opt-Out

2    effectively and timely absolved Boshears of the TOS's requirement to arbitrate his claims. Under

3    the second provision, Attorneys Borrelli and Osborn acted as agents for another user, Boshears,

4    and opted out of the arbitration agreement his behalf. The opt-out included Boshears's signature,

5    name, address, e-mail address, or phone number—all information necessary to effectively opt his

6    claims out of arbitration. See, e.g., Boshears, 2023 WL 4946630, at *1. And Boshears has never

7    used Classmates.com, so the 30-day time limit written into the provision has yet to run. (See

8    Osborn Decl. Ex. 1 at 2 ("John Boshears has never used www.classmates.com"); see also Dkt.

9    No. 71-1 at 9 (responding to an interrogatory, Boshears averred he "never registered for a

10   Classmates Account, has never used a Classmates Account to Access the Classmates Website,

11   and has never searched for information about himself on the Classmates Website.").)

12   PeopleConnect argues the opt-out is ineffective for two reasons, neither of which are

13   persuasive. First, PeopleConnect claims that the TOS must be read as a whole, including the

14   section defining "you" and "your" as someone who "access[es] and us[es] the Websites and

15   Service on behalf of or for the benefit of another." (Reply at 10.) PeopleConnect claims by

16   incorporating the TOS's previous definition of "you" and "your," the term "yourself" as used in

17   the first provision "includes both the user of Classmates.com and also any person for whom that

18   user was acting on their behalf while using Classmates.com," meaning that "an agent must opt

19   out within 30 days of the agent's first use of Classmates.com on behalf of the principal." (Id.)

20   Therefore, Boshears and/or his attorneys should have opted out within 30 days of Attorney

21   Osborn's first use of Classmates.com to investigate Boshears's claims.

22   This interpretation contradicts the plain language of PeopleConnect's own TOS. As an

23   initial matter, PeopleConnect's interpretation hinges on the previous definitions of "you" and

24

1    "your," but fails to account for the fact that the TOS does not define the term "yourself." Without

2    a corresponding definition, the Court interprets "yourself" according to the ordinary, usual, and

3    popular meaning of the word. See Hearst, 154 Wn.2d at 504. "Yourself" is defined as "that

4    identical one that is you." Yourself, Merriam-Webster Dictionary, available at

5    https://www.merriam-webster.com/dictionary/yourself (last visited Sept. 2, 2024). This

6    definition aligns with the Court's conclusion that the first opt-out provision applies when a user

7    themself (or the identical one that is them) seeks to opt-out of the arbitration agreement. This

8    reading reasonably preserves the second provision as the operative means by which an agent may

9    exercise their principal's right to opt-out and not be bound by mandatory arbitration.

10          PeopleConnect attempts to salvage its interpretation of the opt-out provisions by

11   contemplating a scenario where the second provision would only be used when a "registered user

12   directly uses the services and then has an agent opt out for him or her." (Reply at 10.) The Court

13   finds this interpretation unreasonable when compared to a plain language interpretation of the

14   opt-out provisions. See Kennewick Irrigation Distr. v. United States, 880 F.2d 1018, 1032 (9th

15   Cir. 1989) ("Preference must be given to reasonable interpretations as opposed to those that are

16   unreasonable"). PeopleConnect's hypothetical scenario—where a first-time user of an online

17   yearbook aggregation service directs another to opt out of an adhesive agreement on their behalf

18   within thirty days—is not a common practice and is insufficient to justify PeopleConnect's

19   strained interpretation. PeopleConnect's interpretation would read ambiguity into a contract that

20   is clear on its face. See Spokane Airport, 198 Wn.2d. at 484. The Court declines to adopt

21   PeopleConnect's unreasonable and unjustifiable interpretation of its own TOS.

22          Second, PeopleConnect argues that Boshears' interpretation of the opt-out provision's

23   timing element—where notice must be provided within 30 days of the user's first use of the

24

1   services— is incorrect. Specifically, PeopleConnect argues that allowing counsel to effectuate an

2   opt-out on behalf of their client at any time simply because the client has never used

3   Classmates.com creates an "impermissible loophole that would defeat the opt-out provisions."

4   (Reply at 10.) But any purported loophole arises out of PeopleConnect's failure to define the

5   term "user" in its own TOS. PeopleConnect alone is to be blamed for any purported "loophole."

6   And the Court does not find any logical reason why the term "user" should be construed as

7   broadly as PeopleConnect suggests. The plain language of PeopleConnect's own terms allow for

8   an agent to opt out on behalf of another user within thirty days of the other user's first use of

9   Classmates.com. It is undisputed that when PeopleConnect received the August 2023 Opt-Out,

10  Boshears has never used Classmates.com. The Court finds that Boshears opted-out of mandatory

11  arbitration, and for this reason, the Court DENIES PeopleConnect's motion to compel

12  arbitration.

13  **C.    Boshears Did Not Provide Counsel with Authority to Bind Him to Arbitration**

14          PeopleConnect next argues that Boshears gave his attorneys implied actual authority to

15  bind him and his claims to mandatory arbitration. In the alternative, PeopleConnect claims that

16  Boshears is bound to arbitrate because he ratified his attorneys' acceptance of the TOS. The

17  Court disagrees with both lines of argument, which are independent reasons for denial of the

18  Motion.

19          On appeal, the Ninth Circuit provided the following guidance for determining the

20  question of agency:

21          If PeopleConnect can prove that Osborn became Boshears's agent before Osborn
            created one or more of the member accounts . . . and if it can prove that Boshears
22          knowingly accepted a benefit from, failed to repudiate, or exhibited conducting
            adopting that or those member account(s), Boshears may be bound by Osborn's
23          agreement to arbitrate.

24

1    Boshears, 2023 WL 4946630, at *1 (cleaned up). The Court addresses each element—along with

2    PeopleConnect's implied actual authority argument—in turn.

3         1.   **Timing of Agency Relationship**

4         PeopleConnect argues that the agency relationship between Boshears and his attorneys

5    began on October 18, 2021, as a result of the initial conversation between Attorney Strauss and

6    Boshears. The Court disagrees. The record before the Court does not demonstrate that Boshears

7    exercised a material level of control over the actions of his attorneys on October 18, 2021. See

8    Wash. Imaging Servs., LLC v. Wash. State Dep't of Revenue, 171 Wn.2d 548, 562 (2011) (a

9    showing of agency requires "facts or circumstances that establish that one person is acting at the

10   instance of and in some material degree under the direction and control of the other.") (cleaned

11   up).  Instead, it appears that the attorneys were acting in self-interest: ensuring that a potential

12   client had a valid claim under Indiana law. Boshears testified that during his initial conversation

13   with Attorney Strauss, he did not direct (or even discuss) confirmation as to whether his picture

14   appeared on Classmates.com. (See Boshears Dep. at 55.) It is true that Boshears "assumed" that

15   someone would need to check Classmates.com to confirm that his information was listed there,

16   (see id. at 56), and he told Attorney Strauss that he "could review the information" regarding a

17   potential claim, (id. at 58). But this is not enough to establish that on October 18, 2021,

18   Boshears' attorneys were acting "in some material degree under the direction and control," of

19   Boshears in such a manner sufficient to show the formation of an agency relationship capable of

20   extinguishing Boshears's right to pursue claims in court. See Knapke, 38 F.4th at 832 n.3 (citing

21   Wash. Imaging, 171 Wn.2d at 562).

22        The Court finds that Boshears and his attorneys formed an agency relationship upon

23   signing the CRA on October 21, 2021. This determination is of little consequence, however,

24

1    because it is undisputed that the Osborn Account was created on October 28, 2021, at least a

2    week after both the initial conversation and the signing of the CRA. (See Opp. at 11.) And the

3    Parties agree that the account used by Attorney Osborn on October 18, 2021, to verify that

4    Boshears's images appeared on Classmates.com was the "Whipple Account," which was created

5    on April 16, 2021, well before Boshears was even aware of PeopleConnect.com. (See McGuane

6    Decl. ¶¶ 21, 23–24; Opp. at 11 n.2.; Boshears Dep. 44:12–18.) Because the evidence shows that

7    the Osborn Account was created after Attorney Osborn became Boshears's agent, the Court's

8    analyzes the scope of Osborn's agency.

9            2.    **The Scope of the Agency Relationship**

10           PeopleConnect insists that by instructing his attorneys to do what was "necessary" to

11   investigate his claim, that Boshears provided them with the implied actual authority to agree to

12   arbitration on his behalf. The Court disagrees.

13           Under Washington law, an agent acting under implied actual authority may "perform the

14   usual and necessary acts associated with the authorized services" on behalf of their principal. See

15   Knapke, 38 F.4th at 834 (quoting Hoglund v. Meeks, 139 Wn. App. 854, 867 (2007)). "Such

16   usual and necessary acts can include agreeing to contracts." Id. (citing Chi. Title Ins. Co. v.

17   Wash. State Off. of Ins. Comm'r, 178 Wn.2d 120, 141 (2013)).

18           The Court finds that the attorneys' agreement to arbitrate exceeded the bounds of their

19   authority because it was not an act necessary to further Boshears's class action claims. Boshears

20   signed the CRA which required his claims to proceed as a class action. (Osborn Decl. ¶ 2; CRA.)

21   The CRA was effective only for the purposes of pursing a class action—if class certification was

22   denied or if Boshears sought to litigate his claims individually, he and his attorneys agreed they

23   would need to enter into a new representation agreement. (CRA § 9.) This explicit requirement

24

1  stands at odds with the class action waiver provision of the TOS which would require consumers

2  to bring their claims against PeopleConnect "ONLY IN AN INDIVIDUAL CAPACITY AND

3  NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR

4  REPRESENTATIVE PROCEEDING." (TOS § 12(E).) And Boshears maintains that he had only

5  authorized his counsel to perform the usual and necessary acts related to "research the use of

6  [his] personal information pursuant to a class action lawsuit in federal court." (Boshears Dep. at

7  64–65.) Because the representation agreement defined counsel's role as limited to pursuing a

8  class action, the Court finds that Boshears's attorneys did not have implied actual authority to

9  bind him to a waiver of any class claims.

10        Similarly, Boshears did not grant his attorneys implied actual authority to assent to

11  arbitration on October 18, 2021. The record shows that even during the preliminary

12  communications between Boshears and his counsel, Boshears expected his claims to proceed as a

13  class action in federal court. For example, during the initial call, Boshears told Attorney Strauss

14  that "he could review the information with regards to pursuing a federal lawsuit." (See Boshears

15  Dep. at 58.) And the conversation began with an initial outreach mailer from Attorney Strauss

16  which contained notice (albeit at the bottom of the page) that "Turke & Strauss lawyers represent

17  clients in class action lawsuits across the country." (Halbig Decl. Ex. 1 at 5.) Nothing in the

18  record now before the Court indicates that Boshears conveyed to his counsel the implied actual

19  authority to bind his nascent claims to arbitration in the three days before signing the CRA.

20        On this record, the Court does not find that Boshears conveyed to his attorneys the

21  implied actual authority to contract away his right to file claims in federal court. This is an

22  alternative and independent basis on which the Court DENIES the Motion.

23

24

1        3.    **No Ratification**

2        In the alternative, PeopleConnect claims that Boshears ratified his attorneys' acceptance

3    of the TOS on his behalf. The Court disagrees.

4        Even without a finding of implied actual authority, unauthorized acts of an agent may

5    still bind their principal should the principal later ratify the agent's actions. See Knapke, 38 F.4th

6    at 835. "To be charged by ratification with the unauthorized act of an agent, the principal must

7    act with full knowledge of the facts, accept the benefits of the acts, or without inquiry assume an

8    obligation imposed." Riss v. Angel, 131 Wn.2d 612, 636 (1997). The principal may ratify their

9    agent's unauthorized act in one of three ways: "(1) by receiving, accepting, and retaining benefits

10   from the contract; (2) by remaining silent, acquiescing, or failing to repudiate the contract; or (3)

11   by otherwise exhibiting conduct demonstrating adoption and recognition of the contract."

12   Knapke, 38 F.4th at 835 (citing Hoglund, 139 Wn.App. at 870 n.7).

13       PeopleConnect argues that Boshears ratified his attorneys' acceptance of the TOS in two

14   ways. First, PeopleConnect suggests that Boshears "received, accepted and retained" the benefit

15   of his attorneys' acceptance of the TOS by continuing to use the screenshots taken from the

16   Osborn Account. (Mot. at 16–17.) PeopleConnect does not claim that Boshears received any

17   benefit from his attorneys' agreement beyond the four screenshots included in the Complaint.

18   (See Mot. at 16–18) (concluding that Boshears's "use of the images . . . thus demonstrates that he

19   'received, accepted and retained' the benefit of the TOS.")  The Court has previously declined to

20   recognize the use of screenshots as a ratifiable benefit. Order Denying in Part Mot. to Dismiss

21   (Dkt. No. 46), vacated in relevant part, appeal dismissed in part, No. 22-35262, 2023 WL

22   4946630 (9th Cir. Aug. 3, 2023) (citing Callahan v. PeopleConnect, Inc., No. 21-16040, 2022

23   WL 823594, at *1 (9th Cir. Mar. 18, 2022)). After the benefit of additional discovery and a

24

1    second round of briefing, the Court still finds the determination made by the <u>Callahan</u> court to be

2    persuasive. Boshears could have only been alerted to the potential consequences of his attorneys'

3    use of the screenshots well after they "had already been publicly filed [in his complaint] and had

4    become part of the litigation." <u>See Callahan</u>, 2022 WL 823594, at *1. The Court finds that the

5    screenshots at issue here not a "benefit" the acceptance of which would be sufficient to trigger

6    ratification.

7           Second, PeopleConnect argues that Boshears failed to repudiate his attorneys' actions

8    even after learning of their acceptance of the TOS and use of the screenshots. (Mot. at 17–18.)

9    But PeopleConnect fails to show that Boshears ever had knowledge that his attorneys had

10   accepted the TOS on his behalf. "Ratification by silence or acquiescence requires knowledge and

11   either 'acceptance of the benefits from the contract or prejudicial reliance by the other party.'"

12   <u>Knapke</u>, 38 F.4th at 835 (citing <u>Lockwood v. Wolf Corp.</u>, 629 F.2d 603, 609 (9th Cir. 1980)).

13   Boshears testified that he was—and continues to be—unaware as to whether his attorneys ever

14   agreed to the TOS on his behalf. (Boshears Dep. at 91.) And he similarly maintained that he had

15   no knowledge of what his attorneys did to capture the screenshots of Classmates.com. (<u>Id.</u> at 88.)

16   At best, PeopleConnect shows that Boshears <u>reviewed</u> both his opposition to the motion to

17   dismiss, (<u>id.</u> at 81), and PeopleConnect's reply brief (<u>id.</u> at 84, 85). That is not sufficient to show

18   his attorneys accepted the TOS. PeopleConnect claims that Boshears's testimony that he

19   "reviewed [the motion to dismiss] filing[s], meaning he must have seen the argument in the

20   motion that his attorneys had bound him to arbitrate." (Mot at 13.) But the burden is on

21   PeopleConnect to show "what [Boshears] <u>knew</u> and when [he] knew it." <u>Knapke</u>, 38 F.4th at

22   835. PeopleConnect does not meet that burden. Showing that Boshears's <u>review</u> of two legal

23   filings—particularly when those filings discussed myriad legal topics other than agency—is not

24

1    equivalent to him having "learned of the consequences for his claims" or having possessed "full

2    knowledge of the facts." (Mot. at 18.) Nor does it show that Boshears, as a layperson, "had

3    knowledge of facts that would have led a reasonable person to investigate further." Henderson v.

4    United Student Aid Funds, Inc., 918 F.3d 1068, 1075 (9th Cir. 2019), as amended on denial of

5    reh'g and reh'g en banc (May 6, 2019). Indeed, it was not incumbent upon Boshears to have full

6    knowledge of the facts; as a putative class representative, his responsibilities extended to an

7    "interest[] on a continuous basis in the progress of the lawsuit," but he was "not required to be

8    particularly sophisticated or knowledgeable with respect to the subject of the lawsuit." (See

9    CRA, App'x A ¶ 6.)

10        The record before the Court does not demonstrate that Boshears had the requisite

11    knowledge of his attorneys' actions such that would require repudiation. That is, PeopleConnect

12    fails to show that Boshears "knowingly accepted a benefit from [or] failed to repudiate" his

13    attorneys' acceptance. See Boshears, 2023 WL 4946630, at *1 (emphasis added). On this record,

14    the Court finds that Boshears did not ratify his attorneys' acceptance of the TOS on his behalf,

15    and so PeopleConnect cannot compel his claims to arbitration.

16        This is an alternative and independent basis on which the Court DENIES the Motion.

17                                         **CONCLUSION**

18        PeopleConnect cannot compel Boshears's claims to mandatory arbitration because he

19    was opted out according to PeopleConnect's own contract. But even if Boshears is still bound by

20    the terms, PeopleConnect fails to show that he conveyed sufficient authority to agree to arbitrate

21    his claims or that he ratified his attorneys' unauthorized actions. For these three independent

22    reasons, the Court DENIES PeopleConnect's Motion to Dismiss and Compel Arbitration.

23        The clerk is ordered to provide copies of this order to all counsel.

24

Dated September 5, 2024.

Marsha J. Pechman
United States Senior District Judge